Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorneys for Class and Named Plaintiff
KENNETH J. MOSER

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br> vs.<br><br>HEALTH INSURANCE INNOVATIONS, INC., a Delaware Corporation, NATIONAL CONGRESS OF EMPLOYERS, INC., a Delaware Corporation, UNIFIED LIFE INSURANCE COMPANY, a Texas Corporation, COMPANION LIFE INSURANCE, COMPANY,  a South Carolina Corporation, DONISI JAX, INC. a/k/a NATIONWIDE HEALTH ADVISORS, a Florida Corporation, CHARLES DONISI, an individual, EVAN JAXTHEIMER, an individual, HELPING HAND HEALTH GROUP, INC., a Florida Corporation, ANTHONY MARESCA, an individual, and MATTHEW HERMAN, an individual,<br><br>       Defendants. | Case No.:  **'17CV1127 WQHKSC**<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer<br>Protection Act of 1991**<br><br>**Jury Trial Demanded** |

- 1 -

Complaint

Plaintiff KENNETH MOSER ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this action for injunctive relief and damages against Defendants, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff at all times herein mentioned was a resident of the County of San Diego, State of California.

2.      Defendant HEALTH INSURANCE INNOVATIONS, INC ("HII") is, and at all times herein mentioned was, a Delaware corporation, doing business in the County of San Diego, State of California.

3.      NATIONAL CONGRESS OF EMPLOYERS ("NCE") is, and at all times herein mentioned was, a Delaware corporation, doing business in the County of San Diego, State of California.

4.      UNIFIED LIFE ("UNIFIED") is, and at all times herein mentioned was, a Texas Corporation, doing business in the County of San Diego, State of California.

5.      COMPANION LIFE ("COMPANION") is, and at all times herein mentioned was, a South Carolina Corporation, doing business in the County of San

Complaint

Diego, State of California.

6.     DONISI JAX, INC. a/k/a NATIONWIDE HEALTH ADVISORS ("NATIONWIDE") is, and at all times herein mentioned was, a Florida Corporation, doing business in the County of San Diego, State of California.

7.     CHARLES DONISI ("DONISI" or "Mr. Donisi") is, and at all times herein mentioned was, an individual, doing business in the County of San Diego, State of California.

8.     EVAN JAXTHEIMER ("JAXTHEIMER" or "Mr. Jaxtheimer") is, and at all times herein mentioned was, an individual, doing business in the County of San Diego, State of California.

9.     Mr. Donisi and Mr. Jaxtheimer are the sole owners and directors of DONISI JAX, INC. a/k/a NATIONWIDE HEALTH ADVISORS ("NATIONWIDE").

10.     HELPING HAND HEALTH GROUP INC ("HELPING HAND")  is, and at all times herein mentioned was, a Florida corporation, doing business in the County of San Diego, State of California.

11.     ANTHONY MARESCA ("MARESCA" or "Mr. Maresca") is, and at all times herein mentioned was, an individual, doing business in the County of San Diego, State of California.

12.     MATTHEW HERMAN ("HERMAN" or "Mr. Herman") is, and at all

Complaint

times herein mentioned was, an individual, doing business in the County of San Diego, State of California.

13.   Mr. Maresca is, and has been since January 9, 2017, the sole owner, director and officer of HELPING HAND HEALTH GROUP INC ("HELPING HAND").

14.   From its formation in September of 2016 through January 9, 2017, Mr. Herman was the sole owner, director and officer of HELPING HAND HEALTH GROUP INC ("HELPING HAND").

15.   HII, NCE, UNIFIED, COMPANION, NATIONWIDE, DONISI, JAXTHEIMER, HELPING HAND, MARESCA and HERMAN are all collectively referred to herein as Defendants.

16.   This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).

17.   At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

Complaint

## NATURE OF THE ACTION

18.     Plaintiffs bring this class action against Defendants for injunctive relief and damages and other relief available at law and in equity on behalf of themselves and members of the following class of persons dividing into two sub-classes:

Sub-Class No. 1:

*All persons and entities located within the United States of America to whose mobile phone Defendants and/or its agents transmitted a call using an automatic telephone dialing system or prerecorded voice without prior express written consent from the called party at anytime from January 28, 2015 to the present, including up to and through trial; and,*

Sub-Class No. 2

*All persons and entities located within the United States of America to whose residential telephone line Defendants and/or its agents transmitted a call using a prerecorded voice without prior express written consent from the called party at anytime from January 28,2015 to the present, including up to and through trial.*

19.     HII is the principle actor in a scheme to sell short term non-Affordable Care Act compliant medical insurance plans and other low quality insurance related services though fraud and deceit.

20.     While much of the fraud, deceit and bait and switch tactics are matters to be policed by state insurance regulators—some of whom have already taken action—all of these lies are started by making illegal telemarketing calls prohibited

Complaint

by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

21.    The modus operandi is the same for all the calls in this case, a boiler room phone salesperson working for an insurance agent, like NATIONWIDE and HELPING HANDS , who is contracted to master agent HII makes a "cold call" to an unsuspecting consumer using either pre-recorded messages or auto-dialers in order to sell the junky insurance products and "memberships" HII has bundled together, .

22.    Plaintiff pleads on information and belief that the Defendants' auto-dialers are devices that have the capacity to—and actually does—produce, store and call telephone numbers using a random or sequential number generator meeting the statutory definition of automatic telephone dialing system ("ATDS") within the TCPA.

23.    If the target answers this call, he or she will then hear either a pre-recorded message asking them to "press 1" or other numbers at various prompts during the pitch, or in some limited circumstances the victim will hear a pause while the auto-dialer connects the call to a live sales representative.

24.    During the prerecorded calls, if the victim presses the numbers at the prompts indicating they can qualify for the low quality HII insurance bundle, they

Complaint

will then be connected with a sales person who will aggressively and deceitfully attempt to sell the bundle.

25. Sales agents will routinely lie about whose insurance they are appointed to sell baiting victims with name brands like Blue Cross when their only appointment is with UNIFIED or COMPANION, and they will also lie about their qualifications, licensing, years as sellers, whether products in the bundle are mandatory or even necessary, and in many cases the telephone sales representative is not the actual agent whose name will appear on a policy.

26. If the consumer then purchases any plan HII is the master agent who takes all payments and distributes them to their downstream boiler room agents and the companies whose products make up the bundle.

27. The purchaser receives only emails from HII welcoming them to the insurance plan.

28. The bundle is always centered on a non-Affordable Care Act compliant medical insurance plan from UNIFIED or COMPANION but includes many other substandard components.

29. Purchasing a plan will require the consumer to pay a one time fee to NCE for a "membership" of dubious value since all they offer are so-called discounts on health related services, most of which are available to the general public anyway.

30.     The real purpose of the NCE membership fee is to get a few hundred dollars up front of which NCE only gets a small amount, but the majority of which HII will channel to the boiler room operators like HELPING HAND and NATIONWIDE so they can pay their phone jockeys a one-time commission while they and HII hold most or all of the valuable residual commission.

31.     The bundle also includes similar "plans" from non-insurance companies like Med-Sense and Scrip Pal which merely collect fees in exchange for giving plan holders not insurance but just discounts and coupons on some medical related things like prescriptions and eye glasses.

32.     However, again, these practices are regulated by state authorities and the gravamen of this action is the illegal calls used to sell these bundles which are made by boiler rooms like HELPING HAND and NATIONWIDE with the full knowledge and assistance of HII and its major insurance partners UNIFIED and COMPANION.

33.     The TCPA was passed in order to regulate telemarketing by prohibiting autodialed/prerecorded calls to cell phones and prerecorded calls to residential lines in the absence of prior express written consent obtained from the target before making the calls.

34.     Defendants have intentionally violated the TCPA in a so-far successful attempt to sell low quality insurance plans for years.

Complaint

## **FACTUAL DETAILS RE NAMED PLAINTIFF**

35.    Mr. Moser made a log of all the HII-selling calls from HELPING HAND and NATIONWIDE with the date and time sent and the Caller ID information in a spreadsheet, which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

36.    Mr. Moser never gave any of the Defendants express written permission to call him, nor does he have an established business relationship with HELPING HAND, NATIONWIDE nor any other Defendant.

37.    In just a short five week time span from April 6, 2017 to May 10, 2017, Defendant HELPING HAND transmitted fifteen (15) autodialed and prerecorded calls to Mr. Moser's cellular phones (858-414-6170 and 858-627-4190) and residential telephone line (858-630-5264) all using the same Caller ID Name of "Aviator Christine" to try to sell HII's bundle of insurance related services.  All of the calls complained of to the residential line were prerecorded while the calls to the cellular phones included some autodialed live calls.

38.    In just a short five week time span from April 6, 2017 to May 10, 2017, Defendant HELPING HAND transmitted thirty-five (35) autodialed and prerecorded calls to Mr. Moser's cellular phones (858-414-6170 and 858-627-4190) and residential telephone line (858-630-5264) all using the same Caller ID Name of "Health Survey I Did Online…" to try to sell HII's bundle of insurance

Complaint

related services.  All of the calls complained of to the residential line were prerecorded while the calls to the cellular phones included some autodialed live calls.

39.     During at least one of the "Aviator Christine" and "Health Survey I Did Online…" calls from HELPING HAND, Mr. Moser feigned interest to determine the true identity of the caller and relationship of the Defendants and faked buying a policy, and in both cases he was told to verify the purchase with someone from HII during the phone call and received welcome e-mails from HII and only HII thereafter.

40.     None of the HELPING HAND calls transmitted an accurate Caller ID Name identifying HELPING HAND as the calling party.

41.     In just a short five week time span from April 6, 2017 to May 10, 2017, Defendant NATIONWIDE transmitted thirty-two (32) autodialed and prerecorded calls to Mr. Moser's cellular phones (858-414-6170 and 858-627-4190) and residential telephone line (858-630-5264).  These calls all used the exact same prerecorded message and CID 310-494-2699 to try to sell HII's bundle of insurance related services.  All of these NATIONWIDE calls were prerecorded and autodialed regardless of whether they were made to Mr. Moser's residential or cellular line.

Complaint

42.     During at least one of the calls from NATIONWIDE, Mr. Moser

feigned interest to determine the true identity of the caller and relationship of the

Defendants, pushing some buttons to get through the prerecorded message before

being connected to a live sales representative.

43.     The sales representative falsely claimed his name was Michael G.

Miller and evaded stating the name of his company.

44.     Mr. Moser had to fake buying a policy since the caller would never

identify his company and no person named Michael G. Miller had a license to sell

insurance on record with the California Department of Insurance.

45.     As with the other calls, Mr. Moser was transferred to someone with

HII who identified herself as "Shiera" during the verification process.

46.     The HII representative "Shiera" identified the sales representative as

Michael Cugini and the call center/broker as NATIONWIDE.

47.     Michael Cugini does have a license to sell insurance, though his only

appointments are with HII affiliated companies including UNIFIED.

48.     After the call, Mr. Moser received all welcome e-mails from HII

thereafter.

49.     While DONISI JAX, INC. a/k/a NATIONWIDE HEALTH

ADVISORS does business primarily under the latter name, they have not

registered "Nationwide Health Advisors" as a legal trade name in their home state

Complaint

of Florida nor anywhere else so far as Plaintiff was able to determine, and thus this may not be a legal proper name for the company.

50.     Plaintiff alleges on information and belief that none of the NATIONWIDE calls transmitted an accurate Caller ID Name identifying NATIONWIDE as the calling party.

51.     Mr. Moser has detailed only the eighty-two (82) calls during the five week period mentioned above because the high volume of total calls to him makes them hard to document in detail.  Mr. Moser alleges that since early 2015 to present Defendants have made many more violative calls to Plaintiff's cellular and wireless numbers and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF HELPING HAND AND NATIONWIDE

52.     During at least one of HELPING HAND's calls to Mr. Moser, he asked the sales representative, "Jonathan" for his number and he responded that the number was, "855-325-3305 for my agency, Helping Hand Health Group."

53.     During at least one of the NATIONWIDE calls, the HII verification representative identified NATIONWIDE as the caller and all of the calls from NATIONWIDE were transmitted from the same CID 310-494-2699 and used the exact same prerecorded message on each call that was answered.

Complaint

54.     During at least one of NATIONWIDE's calls to Mr. Moser, he asked the sales representative—whose name he cannot recall—for the name of her agency and she said it was "Nationwide Health Advisors".

55.     The Better Business Bureau ("BBB") report for "Nationwide Health Advisors" in Florida confirms that they sell the exact HII bundles Mr. Moser was pitched during the calls and that the BBB received numerous complaints for telemarketing following the same pattern as the calls to Mr. Moser.  See, https://www.bbb.org/south-east-florida/business-reviews/insurance-agency/nationwide-health-advisors-in-fort-lauderdale-fl-90344592/reviews-and-complaints.

56.     The BBB report also identifies the true company name of Donisi Jax, Inc., which unlike for "Nationwide Health Advisors" is a registered company and trade name with the Florida Department of State Division of Corporations.  See, http://search.sunbiz.org/Inquiry/corporationsearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=DONISIJAX%20P1500 00776140&aggregateId=domp-p15000077614-d535c2b0-5c23-46ce-abcb-84f39a9dad8a&searchTerm=donisi%20jax&listNameOrder=DONISIJAX%20P15 0000776140.

/ / /

## LIABILITY OF DONISI, JAXTHEIMER, MARESCA and HERMAN

57.     The Florida Department of State Division of Corporations official corporate filing records list DONISI and JAXTHEIMER as the sole owners and directors of NATIONWIDE.

58.     The BBB report for NATIONWIDE lists only DONISI and JAXTHEIMER as officers, namely as President and Vice-President respectively.

59.     Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that NATIONWIDE ever employed anyone in a managerial capacity, nor any evidence that anyone other than DONISI and JAXTHEIMER ever held any managerial role at NATIONWIDE.

60.     Plaintiff alleges on information and belief that Defendants DONISI and JAXTHEIMER made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making the calls described above.

61.     The Florida Department of State Division of Corporations official corporate filing records list MARESCA as the sole owner, director and officer of HELPING HAND from January 9, 2017 to the present.

62.     The Florida Department of State Division of Corporations official corporate filing records list HERMAN as the sole owner, director and officer of

HELPING HAND from its formation in September of 2016 through January 9, 2017.

63.     Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that HELPING HAND ever employed anyone in a managerial capacity, nor any evidence that anyone other than MARESCA and HERMAN ever held any managerial role at HELPING HAND.

64.     Plaintiff alleges on information and belief that Defendants MARESCA and HERMAN made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making the calls described above.

## **LIABILITY OF HII**

65.     As mentioned above, HII is the principal orchestrator of the illegal calls and boiler room junk insurance sales scheme, and they have been cited by state insurance regulators before.

66.     Just back in April of this year ULIC had to settle "claims of unlawful, deceptive sales" practices for $2.8 million with The Attorney General of the State of Massachusetts for HII orchestrated policies, and a true and correct copy of the

Complaint

Attorney General press release announcing the settlement is attached hereto as Exhibit 2 and incorporated herein as if set forth verbatim.

67.     The Insurance Commissioner of the State of Arkansas issued a Cease And Desist and Order To Show Cause against HII in 2016, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein as if set forth verbatim.

68.     On May 9, 2016, the Securities and Insurance Commissioner of the State of Montana issued a Cease And Desist and Summary Suspension against both HII and ULIC and all their representatives licensed in the State of Montana, a true and correct copy of which is attached hereto as Exhibit 4 and incorporated herein as if set forth verbatim.

69.     The Notice of Proposed Agency Action and Opportunity for Hearing issued prior to the Montana Insurance Commissioner's Order describes in considerable detail HII's central role in organizing the insurance scheme and creating the sales environment that leads to all the deceptive and unlawful sales practices including TCPA violations.

70.     A true and correct copy of the Notice of Proposed Agency Action and Opportunity for Hearing filed by the Office of the Montana State Auditor ("Montana NPAA"), Commissioner of Securities and Insurance is attached hereto as Exhibit 5 and incorporated herein as if set forth verbatim.

71.    That document, incorporated and alleged herein verbatim, shows

HII's central role:



72.    And just as alleged above, the Montana NPAA similarly describes

how the NCE enrollment fee is used primarily to pay the boiler-room sales

people's commission so master agent HII and its sub-agents HELPING HAND and

NATIONWIDE (and their owners) can all profit from the residual commission

income.  See, Exhibit 5, Montana NPAA, p. 5.

73.    And, as alleged above, if anyone purchases one of these HII bundled

plans, their introductory e-mail and all further communications to the new

customer will be from HII.

Complaint

74.     A true and correct copy of the first e-mail received by Moser after he signed up for one of these HII plans in order to determine the relationship of the Defendants in this case is attached hereto as Exhibit 5 and incorporated herein as if set forth verbatim.

75.     HII not only creates the scheme as well as the environment engendering illegal robocalling and autodialer calling, they most certainly know their sub-agents are making such TCPA-violative calls, and have known since at least June 27, 2014.

76.     On June 27, 2014, Mr. Moser sued HII and ULIC for TCPA-violative illegal telemarketing calls he had received from their and their sub-agents up to that time.

77.     A true and correct copy of Mr. Moser's first case against HII and ULIC for TCPA violations is attached hereto as Exhibit 6 and incorporated herein as if set forth verbatim.

78.     On January 28, 2015, Mr. Moser and HII and ULIC settled these prior TCPA claims in a formal written release, a true and correct copy of which is attached hereto as Exhibit 7 and incorporated herein as if set forth verbatim.

79.     Thus, not only are HII's sub-agents like HELPING HAND and NATIONWIDE violating the TCPA's with HII's express or implied authority,

Complaint

there is simply no doubt that HII knows what its agents are doing for its benefit and ratifying their conduct after the fact.

80.     And even without all of HII's direct involvement and knowledge from prior lawsuits, any company that did even the vaguest and most cursory internet only research would almost immediately discover a multitude of TCPA-related junk call complaints against sub-agents like HELPING HAND and NATIONWIDE.

81.     Nearly every outbound Caller ID number or callback number used by HELPING HAND has complaint notes on sites like 800Notes.com from annoyed telemarketing victims.  See, e.g., http://800notes.com/Phone.aspx/1-941-405-1931 (number used for calls to Mr. Moser on May 8, 2017), and, http://800notes.com/Phone.aspx/1-941-251-8052 (number used for calls to Mr. Moser on May 4-5, 2017)

82.     And NATIONWIDE's not only has similar 800Notes.com reports on its Caller ID number referencing its true corporate name, but even its Better Business Bureau page shows junk call complaints, and its Google reviews which pop right up whenever the company name is searched show a low one star rating and most of the 22 reviews are complaints about junk calling.  See, https://www.bbb.org/south-east-florida/business-reviews/insurance-agency/nationwide-health-advisors-in-fort-lauderdale-fl-90344592, and,

Complaint

https://www.google.com/search?q=nationwide+health+advisorrs&ie=utf-8&oe=utf-8#lrd=0x88d903b9471d0207:0x1decc5eeac2aef3f,1,.

83.     As a master agent, HII would have to be brain dead or intentionally and willfully ignorant to avoid knowing that its sub-agents HELPING HAND and NATIONWIDE are routinely and brazenly breaking the TCPA laws and regulations.

## **LIABILITY OF NCE, UNIFIED AND COMPANION**

84.     UNIFIED was the primary named party in the Massachusetts Insurance Commissioner settlement for illegal deceptive practices discussed above, and was named with master agent HII in the Securities and Insurance Commissioner of the State of Montana issued a Cease And Desist and Summary Suspension. See, Exhibits 2, 4-5.

85.     UNIFIED and NCE were named in the prior lawsuit by Moser for TCPA violations committed by HII sub-agents.  See, Exhibits 6-7.

86.     And COMPANION could hardly fail to notice all of these state actions and public record lawsuits for illegal sales practices and junk calling violations if they did any reasonable due diligence regarding their new master agent partner HII, its long time insurance provider ULIC, and consistent membership fee helper NCE.

Complaint

87.     Furthermore, COMPANION as the one who appoints the handful of actually licensed agents at HELPING HAND and NATIONWIDE would have to be just as willfully ignorant as HII above to try to claim no knowledge fo what these brokerages are doing given the multitude of internet reports.

## FINAL LIABILITY ALLEGATIONS

88.     Plaintiff pleads on information and belief that HELPING HAND is explicitly hired by HII, UNIFIED, NCE, and COMPANION as their agent in order to make the illegal pre-recorded auto-dialed calls to the benefit of HII, UNIFIED, NCE, and COMPANION.

89.     Plaintiff pleads on information and belief that HII, UNIFIED, NCE, and COMPANION knows or reasonably should have known (implied agency), that HELPING HAND is making the illegal pre-recorded auto-dialed calls to the benefit of HII, UNIFIED, NCE, and COMPANION.

90.     Plaintiff pleads on information and belief that HII, UNIFIED, NCE, and COMPANION explicitly condones the actions of HELPING HAND in making the illegal pre-recorded auto-dialed calls to the benefit of HII, UNIFIED, NCE, and COMPANION by condoning their actions afterwards.

91.     Plaintiff pleads on information and belief that NATIONWIDE is explicitly hired by HII, UNIFIED, NCE, and COMPANION as their agent in order

Complaint

to make the illegal pre-recorded auto-dialed calls to the benefit of HII, UNIFIED, NCE, and COMPANION.

92.     Plaintiff pleads on information and belief that HII, UNIFIED, NCE, and COMPANION knows or reasonably should have known (implied agency), that NATIONWIDE is making the illegal pre-recorded auto-dialed calls to the benefit of HII, UNIFIED, NCE, and COMPANION.

93.     Plaintiff pleads on information and belief that HII, UNIFIED, NCE, and COMPANION explicitly condones the actions of NATIONWIDE in making the illegal pre-recorded auto-dialed calls to the benefit of HII, UNIFIED, NCE, and COMPANION by condoning their actions afterwards.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

94.     The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that a sender obtain prior express written consent before autodialing to mobile phones.

95.     Defendants have intentionally violated the TCPA in a so-far successful attempt to sell low quality insurance plans for years.

96.     Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendants must pay

for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

97.     Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

98.     During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

99.     As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 5% of his monthly phone bills in late 2016 and throughout 2017 since Defendants calls constituted 5% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

100.   Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

101.   Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

102.   **Description of the Class**:  Plaintiffs bring this class action against Defendants for injunctive relief and damages and other relief available at law and in equity on behalf of themselves and members of the following class of persons dividing into two sub-classes:

Sub-Class No. 1:

*All persons and entities located within the United States of America to whose mobile phone Defendants and/or its agents transmitted a call using an automatic telephone dialing system or prerecorded voice without prior express written consent from the called party at anytime from January 28, 2015 to the present, including up to and through trial; and,*

Sub-Class No. 2

*All persons and entities located within the United States of America to whose residential telephone line Defendants and/or its agents transmitted a call using a prerecorded voice without prior express written consent from the called party at anytime from January 28,2015 to the present, including up to and through trial.*

/ / /

103.   Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

104.   Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

105.   **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendants, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendants' call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

106.   **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the

Class, and those questions substantially predominate over any questions that may affect individual Class members.   Common questions of fact and law include, but are not limited to, the following:

a.   Whether Defendants transmitted autodialed or prerecorded calls to numbers assigned to cellular telephone services  without prior express written consent from the owners of those lines.

b.   Whether Defendants transmitted prerecorded telemarketing calls to residential phone lines without prior express written consent from the owners of those lines.

c.   Whether the transmission of the calls mentioned in (a) or (b), above was done willfully or knowingly by Defendants.

d.   Whether agency relationships giving rise to TCPA liability exist amongst and between HII, NCE, UNIFIED, COMPANION, NATIONWIDE, DONISI, JAXTHEIMER, HELPING HAND, MARESCA and HERMAN.

107.   **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since Defendants' have repeatedly called the Class to sell their low quality insurance products.   Named Plaintiff Moser's prior settlement with HII and other Defendants merely shows the

knowledge of those defendants and is not evidence of a required element of the TCPA claims common to all class members.

108. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling complex litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

109. **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class

Complaint

action conserves the resources of the parties and of the judicial system and protects the rights of the class member.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

110.   Adjudication of individual class member's claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### AUTODIALED/PRERECORDED CALL TO WIRELESS NUMBERS
### (On Behalf of the First Plaintiff Sub-Class)

111.   Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

112. Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

113.   Subdivision (b) (1) (A) (iii) of Section 227 of Title 47 of the United States Code  makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded

voice...to any telephone number assigned to a paging service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.".

114.   Plaintiffs allege on information and belief that Defendants use devices and software to make prerecored and auto-dialed calls that records the numbers to be called and then calls them without human intervention.

115.   Defendants have been calling Plaintiffs' numbers assigned to a wireless service, using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiff's express permission on multiple occasions since January 28, 2015.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivision (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

116.   Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b) (1) (A) (iii).  Plaintiffs may recover injunctive relief as well as actual damages or $500.00 per violation, whichever is greater.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

Complaint

## SECOND CAUSE OF ACTION: TCPA VIOLATION
### PRERECORDED MARKETING CALLS TO RESIDENTIAL NUMBERS
### (On Behalf of the Second Plaintiff Sub-Class)

117.   Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

118.   Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

119.   Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

120.   Defendants have called Plaintiffs' residential telephone lines, using an artificial or prerecorded voice to deliver a message, without Plaintiffs' express permission on multiple occasions since January 28, 2015.  These calls are the only calls known to Plaintiffs at this time and Plaintiffs state on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendants have made many more violative calls to Plaintiffs' residential telephone lines. These calls were not made for any emergency purpose, nor were these calls exempt

Complaint

under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

121.    Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b) (1) (B). Plaintiffs may obtain relief in the form of injunctive relief, or Plaintiffs may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1.    For an award of $500.00 for each violation of 47 U.S.C. § 227;
2.    For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

3.    For an award of $500.00 for each violation of 47 U.S.C. § 227;
4.    For an award of $1,500.00 for each such violation found to have been willful;

/ / /
/ / /
/ / /
/ / /

On ALL CAUSES OF ACTION:

5.   For attorney's fees pursuant to all applicable federal and state statutes including without limitation California Code of Civil Procedure § 1021.5, California Civil Code §1770, & etc.;

6.   For costs of suit herein incurred; and

7.   For such further relief as the Court deems proper.


DATED: June 5, 2017                    **PRATO & REICHMAN, APC**


                                       /s/Christopher J. Reichman, Esq.
                                       By: Christopher J. Reichman, Esq.
                                       **Prato & Reichman, APC**
                                       Attorneys for Plaintiff,
                                       Kenneth J. Moser

Complaint