Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorneys for Class and Named Plaintiff
KENNETH J. MOSER

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>vs.<br><br>HEALTH INSURANCE INNOVATIONS, INC., et. al.<br><br>Defendants. | Case No.: 17-cv-1127-WQH-KSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT HEALTH INSURANCE INNOVATIONS INC.'S MOTION TO DISMISS AND MOTION TO STRIKE THE FIRST AMENDED COMPLAINT**<br><br>**Hearing Date: August 28, 2017**<br>(No oral argument unless requested by the Court.) |

- 1 -

OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . 5

II. STATEMENT OF FACTS . . . . . . . . 5

III. ARGUMENT REGARDING MOTION TO DISMISS . . . 5
A. Standard Of Review: FRCP 12(B)(6) . . . . . . 5
B. The FAC States Cause Of Action Against HII . . . . . 6

III. ARGUMENT REGARDING MOTION TO STRIKE . . . 8
A. Standard Of Review: FRCP 12(f) . . . . . . . 8
B. None Of The Language In The FAC Should Be Struck As
   Immaterial Or Impertinent . . . . . . . . 8
C. Class Definitions May Not Be Struck Because There Is No
   "Fail-Safe" Class Problem In The Ninth Circuit . . . . 11

V. REQUEST FOR LEAVE TO AMEND . . . . . . 15

VI. CONCLUSION . . . . . . . . . 16

## TABLE OF AUTHORITIES

### Cases

U.S. Supreme Court

*Bell Atl. v. Twombley*, 550 U.S. 544 (2007) . . . . . . 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . 6

U.S Circuit Courts

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2nd Cir. 2010) . . . 7

*Carolina Ca. Ins. Co. v. Team Equipment, Inc.*,
   741 F.3d 1082 (9th Cir. 2014) . . . . . . . 7

*Dafforn v. Rousseau Associates, Inc.*, 669 F.3d 802 (7th Cir. 2012) . . 14

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993) . . . 13

*Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871, 877-79 (9th Cir. 2014),
   *aff'd*, 136 S.Ct. 663 (2016) . . . . . . . . 9,10

*In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012) . . . . . 13

*Kamar v. RadioShack Corp.*,
   375 F. App'x 734 (9th Cir. 2010) (unpublished) . . . . 11-14

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1995) . . . . . 6

*Melgar v. CSK Auto, Inc.*,
   681 Fed.Appx. 605 (9th Cir. 2017) (unpublished) . . . . 14

*Mendocino Environmental Center v. Mendocino County*,
   14 F.3d 457 (9th Circ. 1994) . . . . . . . 5,10

*Messner v. Northshore University HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) . . . . . . . 14

*Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999) . . 13

*Randleman v. Fidelity National Title Insurance Co.*,
   646 F.3d 347 (6th Cir. 2011) . . . . . . . 14

*Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059 (8th Cir. 2000) . . 8

*Thomas v. Taco Bell Corp.*,
    582 Fed.Appx. 678 (9th Cir. 2014)(unpublished) . . . . 10

*Vizcaino v. U.S. District Court for the Western District of Washington*,
    173 F.3d 713 (9th Cir. 1999), amended, 184 F.3d 1070 (9th Cir. 1999) . 12-14

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) . . 8

*Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532 (6th Cir. 2012) .14,15

Federal Communications Commission Rulings

*In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574 (F.C.C. 2012) . . . 9, 10

U.S. District Courts

*Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.*,
    870 F.Supp.2d 1015 (D HI 2012) . . . . . . . 10

*Krakauer v. Dish Network, LLC*, 2017 WL 2242952 (M.D. N.C. 2017) . 10

*Oracle America, Inc. v. Micron Tech., Inc.*,
    817 F.Supp.2d 1128 (N.D. Cal. 2011) . . . . . . 11

*Oracle Corp. v. DrugLogic, Inc.*, 807 F.Supp.2d 885 (N.D. Cal. 2011) . 8

*Rosales v. FitFlop USA, LLC,* 882 F.Supp.2d 1168 (S.D. Cal. 2012) . . 10

*Saylavee LLC v. Hockler* 228 FRD 425 (D CT 2005) . . . . 9

*Smith v. Washington Post Co.*, 962 F.Supp.2d 79, 84-85 (D DC 2013) . . 8

*U.S. v. Dish Network LLC*, 2017 WL 2427297 (C.D. Ill. 2017) . . . 10

**Other**

F.R.C.P. 12 . . . . . . . . . . 5,8,9,15

Erin L. Geller, *The Fail-Safe Class as an Independent Bar to*
    *Class Certification*, 81 Fordham L. Rev. 2769, 2775 (2013) . . 11

# I. INTRODUCTION

This opposition is brought by Plaintiff, Kenneth Moser ("Plaintiff" or "Mr. Moser"), along with all others who are similarly situated, against the motion to dismiss and motion to strike filed by HEALTH INSURANCE INNOVATIONS, INC. ("HII") to Plaintiff's First Amended Complaint ("FAC"). HII has brought this motion under the Federal Rules of Civil Procedure ("F.R.C.P.") 12(f) and under F.R.C.P. 12(b)(6). However, HII provides no argument as to why they are entitled to relief under either of these two rules. In fact, even a cursory examination of the FAC reveals that they are not entitled to any relief under F.R.C.P. 12(f) or F.R.C.P. 12(b)(6). This opposition is based on all of the documents so far filed in this case as well as all documents submitted herewith.

# II. STATEMENT OF FACTS

This case was filed by Mr. Moser, on behalf of himself and all others similarly situated, against all of the defendants listed in the caption and a summons was issued on June 5, 2017. The Complaint alleges damages under the Telephone Consumer Protection Act ("TCPA") for illegal marketing telephone calls. An amended complaint was filed on June 7, 2017. After proper service, HII has responded to the FAC by filing a motion to strike under F.R.C.P. 12(f) and a motion to dismiss under F.R.C.P. 12(b)(6).

# III. ARGUMENT REGARDING MOTION TO DISMISS

## A. STANDARD OF REVIEW: FRCP 12(B)(6)

In reviewing a 12(b)(6), the Court must accept as true all material allegation in the complaint, as well as reasonable inferences to be drawn from such allegations. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 460 (9th Circ. 1994). To be a material allegation, "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. v. Twombley*, 550 U.S. 544, 555 (2007) ("*Twombley*"). "Asking for plausible grounds to infer [the key facts] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Id.*, 550 U.S. at 556, 127 S.Ct. 1955, *see also*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("*Iqbal*")

## B. THE FAC STATES CAUSE OF ACTION AGAINST HII

In a turnabout from the usual defense practice HII here does not decry the FAC as short on facts, but instead uses a host of adjectives like "prolix", "formalistic" and "irrelevant" to try to claim the Complaint is too long on facts. HII on the one hand says that the long complaint with factual exhibits attached is too confusing for them to figure out. But on the other hand **HII readily admits that they understand, "the gravamen of the allegations in the Complaint are telephone calls allegedly made in violation of the TCPA"**. [Motion to Dismiss, Memorandum of Points And Authorities ("HII Memo P&A"), 2:1-2]. HII then somehow contends that having such a wealth of facts somehow makes a complaint less plausible under the new *Twobley*/*Iqbal* view of Rule 8. Plaintiff is unsure how having lots of factual allegations can hurt plausibility, and Defendants never give any concrete examples referring to any actual text in the FAC. **In fact, HII never once quotes or cites to any part of the FAC to identify any pleading failure**. [HII Memo P&A, 4:26 – 6:2 (not one quote or citation to any part of the FAC argued to be objectionable or confusing)].[1]

---

[1] HII's argument cites to the usual well known authorities regarding pleading standards, and Plaintiff agrees with most of them as statements of the law with the purely academic caveat that *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1995) is off-point since it deals with heightened pleading standards for Constitutional torts and its age coming before the most recent revisions to the F.R.C.P. and the Supreme Court's decisions in *Twombley* and *Iqbal*. However, it is largely academic since for all the citations to law, HII's argument never once ties these authorities to any part of the FAC or part missing from the FAC that these authorities would require.

Even though Defendants do expressly admit that they are aware of the gravamen of the FAC, out of an abundance of caution, Plaintiff gives the following examples of specific acts of the various parties which are plead with great particularity in the "Factual Details Re Named Plaintiff" section of the FAC. Additionally, the allegations geared to the law at issue are equally obviously in the two "Cause of Action" sections. [FAC, 9:7 – 13:12, and 29:10 – 32:5].

Defendants claim that they are confused about the allegations of which Defendant did what, but the "Factual Details Re Named Plaintiff" section quite clearly identifies which particular Defendant took each action directed at the named plaintiff. The FAC clearly specifies that Defendants Nationwide and Helping Hand were the call centers making the calls in order to sell the products that HII, Unified and the other Defendants had bundled together. [FAC, 9:7 – 13:12]. The FAC clearly states that call transfers to HII employees were made during the illegal telemarketing calls. [See, e.g., FAC 12:8-12]. As if that were not enough to plead the usual vicarious liability of agents in TCPA actions, the FAC includes sections detailing the liability of each and every Defendant. [FAC 13:14 – 22:2]. The section labeled "Liability of HII", not only alleges a wealth of facts regarding the extent of "master agent" HII's control over its "agents" Helping Hand and Nationwide, it includes exhibits of various Insurance Commission reports detailing the interaction of HII and its agents and the level of control exerted over them. [Id.]. The FAC goes even further detailing a prior settlement agreement between the named plaintiff and HII for the exact same type of illegal calling done through agents to show that there is no possible way HII could evade notice of the illegal conduct of its insurance sales agents. [FAC, 19:3-28]. Finally, the FAC makes direct information and belief allegations regarding agency liability of HII and the Defendants behind the call centers. [] The Ninth Circuit approves information and belief pleading where the facts are solely in the possession or knowledge of the Defendants. *Carolina Ca. Ins. Co. v. Team Equipment, Inc.*, 741

F.3d 1082, 1086 (9th Cir. 2014), *see also*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010).  A wealth of facts like this greatly exceeds the mere plausibility pleading standard, and if HII cannot figure out it is being sued as the master agent and organizer of a sales ring predicated on the use of illegal telemarketing, it is through no fault of the FAC.

Defendant HII motion to dismiss on Rule grounds should be dismissed because it fails to cite to any part of the FAC or identify any particular question it has that goes unanswered by the FAC, which actually presents a wealth of factual detail and clearly meets the notice pleading standards for federal complaints.

### III. ARGUMENT REGARDING MOTION TO STRIKE

#### A. STANDARD OF REVIEW: FRCP 12(f)

F.R.C.P. 12(f) allows a party to move to strike any "insufficient defense or any redundant, immaterial, impertinent or scandalous matter." F.R.C.P. 12(f); *see Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-974 (9th Cir. 2010) ("*Whittlestone*").  Motions to strike are disfavored.  *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000); *Oracle Corp. v. DrugLogic, Inc.*, 807 F.Supp.2d 885, 896 (N.D. Cal. 2011)("*Oracle Corp.*").  In addition, F.R.C.P. 12(f) motions should not be used to test the legal sufficiency or merits of an affirmative claim or to procure the dismissal of all or part of a complaint.  *See*, *Whittlestone, supra,* 618 F.3d at 973-974; *see also*, *Smith v. Washington Post Co.*, 962 F.Supp.2d 79, 84-85 (D DC 2013); *Oracle Corp., supra,* 807 F.Supp.2d at 896.

#### B. NONE OF THE LANGUAGE IN THE FAC SHOULD BE STRUCK AS IMMATERIAL OR IMPERTINENT

The thrust of HII's F.R.C.P. 12(f) motion to strike is HII's displeasure with Plaintiff's characterization of the products that HII sells and the associated exhibits

that support those characterizations. [Memo P&A, 6-7:5-19.] In its motion, HII unsuccessfully attempts to show that these characterizations fall within the categories of language that can be struck though F.R.C.P. 12(f). [Memo P&A, 6:7-21] However HII fails to meet the high standards of F.R.C.P. 12(f).

A motion to strike generally will not be granted simply because an allegation is offensive. *See*, *Saylavee LLC v. Hockler* 228 FRD 425, 426 (D CT 2005) ("Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates"). HII is mistaken in its statement in the Memorandum that, "Consequently, there is no essential or important relationship between Plaintiff's TCPA claims in the Complaint and general grievances about the politics and availability of health insurance, emails to third parties, unrelated state inquiries, and the settlement of another lawsuit." [Memo P&A, 7:11-14.] In fact in their motion, HII gives almost no reasoning to support why the language that is requested to be struck is redundant, immaterial, impertinent, or scandalous. [Memo P&A, 7:9-19.] Plaintiff has a valid reason for including this information.

Under the TCPA the seller of a product that hired or was involved in the marketing, but did not physically make the illegal calls, can be liable for the illegal calls. *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6584 (F.C.C. 2012); *see also, Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871, 877-79 (9th Cir. 2014), *aff'd*, 136 S.Ct. 663 (2016). Many times this needs to be proven though circumstantial evidence. The allegations as to the methods used by HII to market and sell their products and the dubious quality of those products supports the argument that they are willing to engage in illegal telephone marketing or pay marketers to do so. The fact that HII is willing to deceive consumers as to the quality of their products lends support that HII would also be willing to pay third party marketers to make illegal telephone calls to push those low quality products. These allegations are not

- 9 -

OPPOSITION TO MOTION TO DISMISS

wildly pulled out of the air, but are in fact supported by the exhibits that are attached to the FAC. [FAC, Exhibits 2, 4, 5]. Not only are all material allegations in the complaint assumed to be true, further Plaintiff is entitled to any reasonable inferences to be drawn from such allegations. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 460 (9th Circ. 1994). The inference that a company that uses deception and illegal tactics to sell a low quality product would also use illegal telemarketing to do so is not just reasonable, it is obvious. While HII may not like this allegation, it certainly is relevant at the pleading stage and does not meet the standard under F.R.C.P. 12(f) of insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

As to the previous lawsuit, HII argues that the previously settled TCPA lawsuit between themselves and Mr. Moser is irrelevant to this litigation. That is not the case. While settlement certainly does not imply liability, knowledge of the actions taken by sales agents making illegal telemarketing calls is highly relevant to agency liability in TCPA cases. *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6584; *see also, Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871, 877-79 (9th Cir. 2014), *aff'd*, 136 S.Ct. 663 (2016); *see also*, *Thomas v. Taco Bell Corp.*, 582 Fed.Appx. 678, 679 (9th Cir. 2014)(unpublished); *see also*, *Krakauer v. Dish Network, LLC*, 2017 WL 2242952 (M.D. N.C. 2017). The fact that a prior suit was filed, that HII was aware of it, and knowingly settled those claims is directly relevant to HII's knowledge of what their marketing agents were and are doing. These facts put HII on notice that they should have been investigating what their sale agents were doing. As stated in the recent Dish Network TCPA case, "Dish's reckless decision to use anyone with a call center without any vetting or meaningful supervision demonstrates a disregard for the consuming public." *U.S. v. Dish Network LLC*, 2017 WL 2427297, *135 (C.D. Ill. 2017).

A motion to strike should only be granted if "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."

OPPOSITION TO MOTION TO DISMISS

*Illinois Nat'l Ins. Co. v. Nordic PCL Const., Inc.,* 870 F.Supp.2d 1015, 1039 (D HI 2012) ; *Rosales v. FitFlop USA, LLC,* 882 F.Supp.2d 1168, 1179 (S.D. Cal. 2012); *Oracle America, Inc. v. Micron Tech., Inc*. 817 F.Supp.2d 1128, 1132 (N.D. Cal. 2011) ("A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action".)

The previous suit is unquestionably relevant to HII's knowledge of what its sales agents were doing, which shows the scope of the agency they explicitly or implicitly gave those agents. It should not be stricken since there is far more than the slightest doubt that the allegations and the non-confidential settlement agreement exhibit are relevant.

Clearly the Plaintiff has provided the necessary reasoning that these allegations are included in the complaint and therefore HII's motion to strike should be denied.

## C.  CLASS DEFINITIONS MAY NOT BE STRUCK BECAUSE THERE IS NO "FAIL-SAFE" CLASS PROBLEM IN THE NINTH CIRCUIT

The Ninth Circuit has never denied class certification for the so-called "fail-safe" class definition issue, and has made rulings that explicitly and impliedly deny that there is any such issue.  HII's reliance on *Kamar* is seriously misplaced since the case is unpublished and upheld rather than denied certification of a so-called "fail-safe" class and cast serious doubt on whether such a class could ever really exist. *Kamar v. RadioShack Corp.,* 375 F. App'x 734 (9th Cir. 2010) (unpublished) ("*Kamar*").[2]  Published Ninth Circuit rulings—along with the holding in Kamar itself—stand for the principle that a truly "fail-safe" class is

---

[2] HII's motion brief at 8:17-18 impermissibly fails to designate *Kamar* is an unpublished decision and quotes it in tandem with a Sixth Circuit case (*Randleman*) without noting the well document split between these circuits on the so-called "fail-safe" issue.  *See*, *e.g*.,  Erin L. Geller, *The Fail-Safe Class as an Independent Bar to Class Certification*, 81 Fordham L. Rev. 2769, 2775 (2013) (detailed analysis of split between 6th and 7th Circuits against 5th and 9th Circuits).  Plaintiffs assume that this is simply a mistake in legal research rather than an attempt to mislead the Court, but note this issue out of an abundance of caution.

almost impossible real world litigation.  Finally, The entirety of the "fail-safe" argument is not yet ripe given that it is an issue for class certification, not pleadings phase motions.

In theory, a so-called "fail-safe" class is one where the class is defined in a way that the liability of the defendant would have to be proved for the class to be ascertainable.  *See*, *Kamar*, 375 F.App'x at 734 (unpublished).  An obvious example would be a class defined as "All individuals harmed by Company X's negligent dumping of hazardous waste."  As a practical matter the problem with a so-called "fail-safe" class is that the class could not be ascertained or given notice without first establishing liability.  But, as a practical matter, this theoretical issue disappears since the legal claim nexus must be used in the class definition because the legal claim is what brings the class together, and the notice issue is easily managed by real-world courts so as to not prejudge liability. The Ninth Circuit is more attuned to pragmatic case management rather than an overwhelmingly academic and theoretical issue.

Defendants arguing the new "fail-safe" theory often refer to the class definition they are attacking as "circular" since it defines the class by facts relating to the legal claim at issue.  The Ninth Circuit has held that this is not "circular" in their first and only published opinion, ruling against the "fail-safe" premise in *Vizcaino v. U.S. District Court for the Western District of Washington*, 173 F.3d 713 (9th Cir. 1999), amended, 184 F.3d 1070 (9th Cir. 1999) ("*Vizcaino*").  In that employment law case, the putative class was defined as former contractors who met the legal definition of employees but were denied employee benefits due to defendant's position that they were independent contractors.  *Id*.  The Ninth Circuit ruled that there was no circular definition issue since it was obviously implicit that the class was made up of persons "who *claim* to have been (or to be) common law employees", not just those ultimately adjudicated to have been employees.  *Id*. at

722 (emphasis in original). The Ninth Circuit agreed with and quoted the Fifth Circuit, which later explicitly rejected the "fail-safe" notion on this basis:

> "This [circularity] argument is meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action. These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims will not defeat class membership." *Id.*, *quoting*, *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993).

The Ninth Circuit ruled that linking a class by their common legal claim is not circular but rather a simple statement of the fact that the claim is what unites the class. They easily put the cart back behind the horse by noting that every class implicitly is made up of persons who *claim* to have been wronged by a defendant's conduct, not all persons ultimately adjudicated to be wronged.[3]

As a published opinion *Vizcaino* is precedential and would control over the unpublished *Kamar* cited by defendants if they were inconsistent. The opinions however are consistent, which is why both rule in favor of certifying classes argued to be "circular" or "fail-safe". *Kamar* notes that the "fail-safe appellation" is just a name for the theoretical problem that would occur if a class is defined "defined in a way that precludes membership unless the liability of the defendant is established." *Kamar*, 375 Fed.Appx. at 736 (unpublished). But *Kamar* rules no such theoretical problem exists in the real world class before it by doing exactly what the *Vizcaino* did—namely finding that it is implicit that the class is made up of those who claim the same violation of their statutory rights. *Id*. *Kamar* even goes farther and notes that the supposed concern of defendants that persons not wronged by them will not be bound is spurious since the finding they were not

---

[3] And, obviously, the Fifth Circuit agrees with the Ninth that there is no so-called "fail-safe" issue since the circularity argument is without merit in reality. See, *Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999); *In re Rodriguez*, 695 F.3d 360 (5th Cir. 2012).

OPPOSITION TO MOTION TO DISMISS

harmed is dispositive in itself. *Id*. Thus, *Kamar* neatly follows and even expands on the published *Vizcaino* ruling that a class definition is not circular because it references the very *claim* that binds the class together since it is obvious and implicit that the class is a class of *claim*ants, not persons who have reached final adjudication.

The Ninth Circuit just this year noted, "that our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe." *Melgar v. CSK Auto, Inc*., 681 Fed.Appx. 605, 606 (9th Cir. 2017) (unpublished) ("*Melgar*"). The use of the phrase "disapprove of the premise" in *Melgar* is illustrative since it connotes that the Ninth Circuit simply does not see the so-called "fail-safe" problem as being any real problem at all. This comports with the holdings of *Vizcaino* and *Kamar*. .

The notion of a class being "fail-safe" has really only been entertained quite recently and only by the Sixth and Seventh Circuits and even then only problematically and certainly only at the class certification—not the pleading—stage. *See*, *Randleman v. Fidelity National Title Insurance Co.*, 646 F.3d 347 (6th Cir. 2011), *Messner v. Northshore University HealthSystem*, 669 F.3d 802 (7th Cir. 2012). HII neglects the limited extent of these so-called "fail-safe" holdings, which merely require the class definition to be re-stated to explicitly include the fact that the class is persons who claim, rather than persons who are, entitled to relief.[4] Even then and even if we were in the Sixth Circuit, the simple fact that HII is arguing that the class is not entitled to relief in their motion to dismiss necessarily defeats the argument that the class is fail-safe,. This is the exact holding of the seminal Sixth Circuit "fail-safe" case, *Young v. Nationwide Mutual Insurance Co*., 693 F.3d 532, 538 (6th Cir. 2012). Young held that in the Sixth Circuit a fail-safe "is prohibited in large part because it would fail to provide the

---

[4] The Seventh Circuit has expressly articulated that courts should work to amend fail-safe classes during certification rather than denying class certification. *See*, *Messner v. Northshore University HealthSystem, supra*, 669 F.3d at 824, and, *Dafforn v. Rousseau Associates, Inc*., 669 F.3d 802 (7th Cir. 2012).

final resolution of the claims of *all* class members that is envisioned in class action litigation." Young held that because Defendants there argued that they were not ultimately liable to many of the class members, it "proves the point. This is not a proscribed fail-safe class." *Id*. So, even in one of the circuits where a "fail-safe" is thought to possible, the Defendants cannot argue that they are not liable for some other reason without puncturing their fail-safe theory.

All of the decisions above and other circuit court cases discussing the so-called "fail-safe" issue arise from class certification motions, not pleading phase motions. This is because the issue—if there even is one—is not ripe before class certification because it is asking certification questions and requires certification analysis, not Rule 12(b) analysis. And that is especially true in TCPA cases, where the Defendant will claim a definition including language about possible consent is "fail-safe" at the pleading phase, but if the language is amended out will try to raise the possibility of individual consent defenses as a bar to typicality creating a 'damned if you do and damned if you don't' situation.

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny the motion or deem it unripe prior to class certification.

## V. REQUEST FOR LEAVE TO AMEND

Should the Court decide to dismiss the FAC, Plaintiff requests leave to amend which should be granted liberally. Every subject of HII's motion is capable of resolution by amendment and they have not argued that amendment would be futile.

/ / /
/ / /
/ / /
/ / /
/ / /

OPPOSITION TO MOTION TO DISMISS

/ / /

/ / /

## VI. CONCLUSION

Based on the above, Plaintiff requests that the Court deny HII's motion to dismiss and motion to strike in its entirety.

DATED: August 11, 2017  **PRATO & REICHMAN, APC**

<u>/s/Christopher J. Reichman, Esq.</u>
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Kenneth J. Moser