# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

KENNETH J. MOSER,
individually and on behalf of all
others similarly situated,

                          Plaintiff,

   v.

HEALTH INSURANCE
INNOVATIONS, INC., a
Delaware corporation;
NATIONAL CONGRESS OF
EMPLOYERS, INC., a
Delaware corporation;
UNIFIED LIFE
INSURANCE COMPANY,
INC., a Texas corporation;
COMPANION LIFE
INSURANCE COMPANY, a
South Carolina corporation;
DONISI JAX, INC., a Florida
corporation; CHARLES
DONISI, an individual; EVAN
JAXTHEIMER, an individual;
HELPING HAND HEALTH
GROUP, INC., a Florida
corporation; ANTHONY
MARESCA, an individual;
and MATTHEW HERMAN,
an individual;

                         Defendants.

CASE NO. 3:17-cv-1127-WQH-KSC

ORDER

HAYES, Judge:

    The matters before the Court are (1) the Motion to Dismiss and Motion to Strike filed by Defendant Health Insurance Innovations, Inc., (ECF No. 21); (2) the Motion

to Dismiss filed by Defendant Unified Life Insurance Company, (ECF No. 22); (3) the Motion to Strike filed by Defendant Unified Life Insurance Company, (ECF No. 24); and (4) the Motion to Dismiss and Motion to Strike filed by Defendants Donisi Jax, Inc., Charles Donisi, and Evan Jaxtheimer (ECF No. 38).

## I. Procedural History

On June 7, 2017, Plaintiff Kenneth J. Moser filed a First Amended Complaint (ECF No. 3) (the "FAC"). In the FAC, Moser brings claims under the Telephone Consumer Protection Act of 1991 (the "TCPA") against Health Insurance Innovations, Inc. ("HII"); Unified Life Insurance Company ("Unified"); Donisi Jax Inc. a/k/a Nationwide Health Advisors ("Nationwide"); Charles Donisi; Evan Jaxtheimer; and five other defendants.

On June 21, 2017, HII filed a Motion to Dismiss and Motion to Strike (ECF No. 21) and Unified filed a Motion to Dismiss (ECF No. 22) and a Motion to Strike (ECF No. 24). Moser filed responses to these three motions on August 14, 2017. (ECF Nos. 28-30). Unified filed replies in support of its Motion to Dismiss and Motion to Strike on August 18, 2017. (ECF Nos. 33, 34). HII filed a reply in support of its Motion to Dismiss and Motion to Strike on August 21, 2017. (ECF No. 35).

On August 25, 2017, Nationwide, Charles Donisi, and Evan Jaxtheimer (the "Nationwide Defendants") filed a Motion to Dismiss and Motion to Strike (ECF No. 38). Moser filed a response to the Nationwide Defendant's Motion to Dismiss and Motion to Strike on September 18, 2017. The Nationwide Defendants filed a reply in support of its Motion on September 25, 2017.

## II. Primary Allegations

"HII is the principle actor in a scheme to sell . . . medical insurance plans and other . . . insurance[-]related services . . . by making illegal telemarketing calls prohibited by the TCPA." FAC at ¶¶ 20-21. HII contracts with multiple insurers, including Unified, "to market and administer insurance products." *Id.* at ¶¶ 34, 74. HII "bundle[s]" those "insurance products" and hires "boiler rooms like . . . Nationwide"

to "'cold call' [] unsuspecting consumer[s] using either pre-recorded messages or auto-dialers in order to sell the . . . insurance products . . . ." *Id.* at ¶¶ 22, 34. "HII . . . know[s] their sub-agents are making such TCPA-violative calls, and have known since at least June 27, 2014." *Id.* at ¶ 78. If a consumer purchases a plan during one of these phone calls, the consumer "receives emails and coverage documents from HII welcoming them to the insurance plan." *Id.* at ¶ 29. HII "takes all payments [for plans sold during these phone calls] and distributes them to their downstream boiler room agents and the companies whose products make up the bundle." *Id.* at ¶ 28.

From April 6, 2017 to May 10, 2017, Moser received eighty-two calls from Helping Hand and Nationwide "try[ing] to sell HII's bundle of insurance[-]related services" that violated the TCPA. *Id.* at ¶ 39, 41, 44.

> [F]rom April 6, 2017 to May 10, 2017, Defendant Nationwide transmitted thirty-two (32) autodialed and prerecorded calls to Mr. Moser's cellular phones (858-[xxx-xxxx] and 858-[xxx-xxxx]) and residential telephone line (858-[xxx-xxxx]). These calls all used the exact same prerecorded message and CID 310-[xxx-xxxx] to try to sell HII's bundle of insurance related services. All of these Nationwide calls were prerecorded and autodialed.

*Id.* at ¶ 44.

> The BBB report for Nationwide lists only Donisi and Jaxtheimer as officers, namely as President and Vice-President respectively. Plaintiff has searched public records . . . and can find no record that Nationwide ever employed anyone in a managerial capacity, nor any evidence that anyone other than Donisi and Jaxtheimer ever held any managerial role at Nationwide.

*Id.* at ¶¶ 61-62. "Donisi and Jaxtheimer made the violative calls [to Moser from Nationwide], ordered them made, knew the calls . . . were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making the calls . . . ." *Id.* at ¶ 63.

"During at least one of the calls from Nationwide, Mr. Moser feigned interest to determine the true identity of the caller and relationship of the Defendants." *Id.* at ¶ 45.

> Mr. Moser was transferred to someone with HII who identified herself as 'Shiera' during the verification process. The HII representative 'Shiera' identified the sales representative as Michael Cugini and the call center/broker as Nationwide. Michael Cugini does have a license to sell insurance, though his only appointments are with HII[-]affiliated companies including Unified. After the call, Mr. Moser received all welcome e-mails from HII . . . .

*Id.* at ¶¶ 48-51.

Helping Hand and Nationwide are "explicitly hired by HII, Unified, NCE, and Companion . . . to make the illegal pre-recorded auto-dialed calls to the benefit of HII, Unified, NCE, and Companion." *Id.* at ¶¶ 91, 94. "[T]he illegal calls used to sell the[] bundles [] are made by boiler rooms like Helping Hand and Nationwide with the full knowledge and assistance of HII and its major insurance partners Unified and Companion." *Id.* at ¶ 34. "HII, Unified, NCE, and Companion explicitly condone the actions of [Helping Hand and Nationwide] in making the illegal pre-recorded auto-dialed calls to the benefit of HII, Unified, NCE, and Companion." *Id.* at ¶¶ 93, 96.

> Plaintiffs bring this class action against Defendants . . . on behalf of [himself] and members of the following class of persons dividing into two sub-classes:
>
> Sub-Class No. 1:
>
> All persons and entities located within the United States of America to whose mobile phone Defendants and/or its agents transmitted a call using an automatic telephone dialing system or prerecorded voice without prior express written consent from the called party at anytime from January 28, 2015 to the present, including up to and through trial; and,
>
> Sub-Class No. 2
>
> All persons and entities located within the United States of America to whose residential telephone line Defendants and/or its agents transmitted a call using a prerecorded voice without prior express written consent from the called party at anytime from January 28, 2015 to the present, including up to and through trial.

*Id.* at ¶ 19.

### III.  The Motion to Dismiss the Nationwide Defendants

The Nationwide Defendants move to dismiss Moser's claims against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2).  (ECF No. 38 at 5).  Moser contends that this Court has specific jurisdiction over the Nationwide Defendants.  (ECF No. 39 at 9-21).

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as here, the parties have submitted declarations and exhibits in support of their motion and opposition, *see* ECF Nos. 38-1 through 38-3 and 39-1 through 39-10, the Court considers both the allegations in the plaintiff's complaint and the declarations and exhibits submitted by the parties.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  The Court accepts as true all uncontroverted allegations in the plaintiff's complaint, and "draw[s] reasonable inferences from the complaint in favor of the plaintiff." *Fiore v. Walden*, 688 F.3d 558, 574-75 (9th Cir. 2012), *rev'd on other grounds*, 134 S. Ct. 1115 (2014).  However, the Court does not accept as true allegations that are contradicted by factual material submitted by the parties.  *Mavrix*, 647 F.3d at 1223 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).  "[T]he court resolves all disputed facts in favor of the plaintiff . . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

> Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits. California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same. For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Mavrix*, 647 F.3d at 1223 (citations and quotation omitted).

Whether a court has specific jurisdiction over a defendant depends on the relationship between the defendant's contacts with the forum state and the cause of action. *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (citing *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977)). For a court to have specific jurisdiction over a non-resident defendant,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix*, 647 F.3d at 1227–28 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden of satisfying the first two prongs of the test. . . . If the plaintiff succeeds . . . , the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

In tort cases, courts determine whether the first prong of this test has been met by asking "whether a defendant purposefully direct[ed] his activities at the forum state." *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). Courts make that determination by "applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* "The 'effects' test . . . requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Mavrix*, 647 F.3d at 1228 (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). Because cases brought under the TCPA sound in tort, the Court will employ the effects test to determine

whether it has specific jurisdiction over the Nationwide Defendants. *See Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. C13-01347-JCC, 2014 WL 12103245, at *2 (W.D. Wash. Nov. 4, 2014); *Luna v. Shac, LLC,* No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014).

## A. Nationwide

The Nationwide Defendants contend that the Court does not have personal jurisdiction over Nationwide. (ECF No. 38 at 5-11). The Nationwide Defendants contend that the Court does not have specific jurisdiction over Nationwide because the alleged fact that Nationwide "made calls to phone numbers with a California-based area code (858) does not in and of itself demonstrate that Nationwide purposefully placed calls knowing it would likely reach a California resident located in California." *Id.* at 10. Moser contends that "[t]his exact defensive theory has been presented and exhaustively analyzed in three District Courts within the Ninth Circuit and every single one of them [correctly] rejected the theory." (ECF No. 39 at 11).

The FAC alleges that "Nationwide transmitted thirty-two (32) autodialed and prerecorded calls to Mr. Moser's cellular phones (858-[xxx-xxxx] and 858-[xxx-xxxx]) and residential telephone line (858-[xxx-xxxx])" (the "Nationwide Calls"). (ECF No. 3 at ¶ 44). The Declarations submitted by the Nationwide Defendants do not contradict this assertion. *See* ECF Nos 39-1, 39-2, and 39-3. 858 is a California area code. (ECF No. 39-1 at ¶ 2).

The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by calling a phone number with a forum state area code.[1]

---

[1] *See Drew v. Lexington Consumer Advocacy, LLC*, No. 16-CV-00200-LB, 2016 WL 1559717, at *3 (N.D. Cal. Apr. 18, 2016); *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. C13-01347-JCC, 2014 WL 12103245, at *2 (W.D. Wash. Nov. 4, 2014); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1057 (D. Or. 2014); *Heidorn v. BDD Marketing & Management Company, LLC*, Case No. C–13–00229 JCS, 2013 WL 6571629, 8 (N. D. Cal. August 19, 2013); *j2 Global Communications, Inc. v. Blue Jay, Inc.*, No. C–08–4254–PJH, 2009 WL 29905, at *10 (N.D. Cal. Jan. 05, 2009).

In such a case, the plaintiff's TCPA claim "arises out of or relates to the defendant's forum-related activities[] and [] the exercise of jurisdiction comport[s] with fair play and substantial justice, i.e. it [is] reasonable." *Mavrix*, 647 F.3d at 1227–28 (9th Cir. 2011).[2] The Court concludes that it has personal jurisdiction over Nationwide.

**B. Donisi and Jaxtheimer**

The Nationwide Defendants contend that the Court does not have specific jurisdiction over Donisi and Jaxtheimer. (ECF No. 38 at 12-15). The Nationwide Defendants contend that "Plaintiff's assertion that Messrs. Donisi and Jaxtheimer 'made the [Nationwide Calls], ordered them made, knew [they] were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making [them]' [is] too conclusory to withstand a motion to dismiss." *Id.* at 14 (citing ECF No. 3 at ¶ 63). The Nationwide Defendants contend that this Court does not have specific jurisdiction over Donisi and Jaxtheimer because "Plaintiff has not alleged . . . facts showing that Messrs. Donisi and Jaxtheimer . . . had direct, personal participation in or personally authorized the conduct alleged to have violated the statute." *Id.*

Moser contends that the FAC alleges that Donisi and Jaxtheimer have sufficient contacts with the State of California for the Court to exercise specific jurisdiction. (ECF No. 39 at 17). Moser relies on allegations in the FAC that "indicate that Mssrs. Donisi and Jaxtheimer are the sole officers and managers [of Nationwide]" and the allegation that Donisi and Jaxtheimer "made the [Nationwide Calls], ordered them made, knew [they] were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making [them]." *Id.* at 18 (citing ECF No. 3 at ¶¶ 61-63).

A defendant employee's contacts with the forum state "are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's

---

[2] *See* cases cited in footnote 1.

17-cv-1127-WQH-KSC

contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). "[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person. Rather, there must be a reason for the court to disregard the corporate form." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (citations omitted). A sufficient reason to disregard the corporate form exists when a corporation's officer or director allegedly authorized, directed, or participated in the alleged tort. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (quoting *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F.Supp. 841, 852 (N.D. Cal. 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982)).

Donisi is the President of Nationwide. (ECF No. 38-1 at 2). Jaxtheimer is Nationwide's Vice President. (ECF No. 38-3 at 3). Moser has alleged facts that support a reasonable inference that Donisi and Jaxtheimer are the only two people that have held managerial positions at Nationwide.[3] However, the Court cannot exercise jurisdiction over Donisi and Jaxtheimer solely on the grounds that they are Nationwide's only managers. *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (citations omitted).

The FAC includes only one allegation that describes Donisi and Jaxtheimer's involvement with the Nationwide Calls. Moser "alleges on information and belief that Donisi and Jaxtheimer made the [Nationwide Calls], ordered them made, knew [they] were being made and did nothing, or were willfully and recklessly ignorant of the fact their company was making [them]." ECF No. 3 at ¶ 63. The Court is not required to accept conclusory allegations as true even if they are made on "information and belief"

---

[3] Moser alleges that he "has searched public records such as federal employer Identification Number registries and can find no record that Nationwide ever employed anyone in a managerial capacity, nor any evidence that anyone other than Donisi and Jaxtheimer ever held any managerial role at Nationwide." (ECF No. 3 at ¶ 62). Accepting this uncontroverted allegation as true, it is reasonable to infer that Donisi and Jaxtheimer are the only two people who have held managerial positions at Nationwide.

17-cv-1127-WQH-KSC

and the facts are solely within the possession of the defendants. *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013). This allegation does not contain factual material that would permit the Court to disregard Nationwide's corporate form and assert jurisdiction over Donisi and Jaxtheimer as individuals. Moser has not fulfilled his "burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).[4] The Court concludes that, based on the allegations in the FAC, it does not have personal jurisdiction over Donisi and Jaxtheimer.

## IV. Motions to Dismiss HII and UTIC

HII and ULIC each move to dismiss Moser's claims against them for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 21-1 at 7-10; ECF No. 22 at 7-12). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation omitted).

Moser contends that Unified and HII are liable for eighty-two calls that he allegedly received from Helping Hand and Nationwide (the "Calls") under a theory of

---

[4] The Court does not have general jurisdiction over Donisi and Jaxtheimer as both are residents of Florida, (ECF Nos. 38-1 and 38-3 at ¶ 2), and neither is properly considered "at home" in California, *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

agency liability. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir. 2017) (quoting *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd sub nom. Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc*., 853 F.3d 1020, 1029 (9th Cir. 2017)). "Not all relationships in which one person provides services to another satisfy the definition of agency." *Id.* (quoting Restatement (Third) Of Agency § 1.01).

> For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent. One theory of agency, actual authority, arises through the principal's assent that the agent take action on the principal's behalf. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.

*Id.* (citations, quotations, and alterations omitted).

The following ten factors are relevant to whether or not a person providing services under contract qualifies as an agent:

> 1) the control exerted by the employer,
> 2) whether the one employed is engaged in a distinct occupation,
> 3) whether the work is normally done under the supervision of an employer,
> 4) the skill required,
> 5) whether the employer supplies tools and instrumentalities [and the place of work],
> 6) the length of time employed,
> 7) whether payment is by time or by the job,
> 8) whether the work is in the regular business of the employer,

9) the subjective intent of the parties, and
10) whether the employer is or is not in business.

*Id.* (alteration in original) (quoting *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010)). The extent of control exercised by the principal is the most important factor. *Id.* (quoting *Bonds*, 608 F.3d at 504 (9th Cir. 2010)).

Another means by which a principal can become liable for acts taken by an agent is via ratification. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006).[5] "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2).

## A. HII

HII contends that Moser's claim against HII should be dismissed because the FAC "lump[s] all Defendants together" and "is barren of any material allegations directed specifically at HII's conduct pertinent to a TCPA claim." (ECF No. 21-1 at 8). Moser contends that the FAC "alleges a wealth of facts regarding the extent of 'master agent' HII's control over its 'agents' Helping Hand and Nationwide." (ECF No. 28 at 7).

Moser makes a number of allegations that specifically detail HII's participation in the alleged TCPA violations. Moser alleges that "HII is the principle actor in a scheme to sell . . . insurance related services . . . by making illegal telemarketing calls prohibited by the [TCPA]." (ECF No. 3 at ¶¶ 20-21). Moser alleges that HII contracts with "boiler room phone salesperson[s]" to "cold call . . . unsuspecting consumers" in an attempt to sell "insurance products and 'memberships' HII has bundled together." *Id.* at ¶ 22. Moser alleges that HII "know[s] their sub-agents are making such TCPA-

---

[5] The Ninth Circuit has cited with approval the discussion of vicarious liability in the Restatement (Third) of Agency. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016).

violative calls, and ha[s] known since at least June 27, 2014." *Id.* at ¶ 78. Moser alleges that, when a salesperson sells a plan, HII "takes all payments and distributes them to their downstream boiler room agents and the companies whose products make up the bundle." *Id.* at ¶ 28.

Moser alleged that he received eighty-two calls from Helping Hand and Nationwide that violated the TCPA (the "Calls"). *Id.* at ¶¶ 39, 41, 44. Moser alleges that the Calls were attempts to sell HII's bundle of insurance-related services. *Id.* Moser alleges that he was transferred to a HII representative during a Call that he received from Helping Hands on April 19, 2017. *Id.* at ¶ 40. Moser alleges that, when he "faked buying a policy" during a Call from Helping Hands, he "was told to verify the purchase with someone from HII during the sales call itself and received welcome emails and coverage documents from HII thereafter." *Id.* at ¶ 42. Moser alleges that "he was transferred to someone with HII" during a Call that he received from Nationwide and that he received a welcome email from HII following that Call. *Id.* at ¶¶ 45, 48, 51.

Moser has alleged facts, that, when accepted as true, make it plausible that Nationwide and Helping Hand were acting as HII's agents when they made the Calls. HII's motion to dismiss is denied.

**B. Unified**

Unified contends that Moser's claim against Unified should be dismissed because Moser's FAC "fails to set forth any facts from which it can be shown that he—or those upon whose behalf he purports to bring this action—is or are entitled to relief from Unified for violating the any aspect of the TCPA." (ECF No. 22 at 7). Unified specifically contends that "Moser failed to properly allege the requisite agency relationship between Unified and any third party caller." *Id.* at 9. Moser contends that "[t]he FAC more than adequately alleges the vicarious liability of Unified." (ECF No. 30 at 5).

Moser alleges on information and belief that Unified, HII, NCE, and Companion hired Helping Hand and Nationwide to make the Calls for the benefit of Unified, HII, NCE, and Companion. (ECF No. 3 at ¶¶ 91, 94). Moser alleges that Helping Hand and Nationwide made the Calls with Unified's "full knowledge and assistance." *Id.* at ¶ 34. Moser alleges on information and belief that Unified, HII, NCE, and Companion "explicitly condone the actions of [Helping Hand and Nationwide] in making the [C]alls . . . by condoning their actions afterwards." *Id.* at ¶¶ 93, 96. These allegations are not merely "a formulaic recitation of the elements" of an agency relationship, and therefore are not conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009).

The Court of Appeals has stated that a plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). The facts concerning whether Unified hired Helping Hand and Nationwide to make the Calls, and whether Unified condoned the Calls after they had occurred, are peculiarly within the possession and control of Unified, Helping Hand, and Nationwide. The Court does not devalue any of these allegations because they are made on "information and belief." (ECF No. 3 at ¶¶ 91, 93, 94, 96).

Accepting these allegations as true, it is plausible that Nationwide and Helping Hand were acting as Unified's agents when they made the Calls. Unified's motion to dismiss is denied.

**V. Motions to Strike**

Under Rule 12(f), "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Redundant" matter is needlessly repetitive. *See California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). "Immaterial" matter "has no essential or important relationship to the claim for relief or the defenses being pleaded."

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711. Scandalous matter "cast a cruelly derogatory light on a party or other person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Motions to strike should only be granted when it is "clear that it can have no possible bearing on the subject matter of the litigation," *Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc.,* 870 F. Supp. 2d 1015, 1039 (D. Haw. 2012) and should not be used "to dismiss a claim . . . on the basis it is precluded as a matter of law," *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010).

## A. Impertinent and Immaterial Language

HII and Unified move to strike certain allegations in the FAC as well as certain exhibits attached to the FAC on the grounds that they are immaterial and impertinent. (ECF No. 21-1 at 10-11; ECF No. 24 at 8-13). Specifically, either HII, Unified, or both move to strike (1) paragraphs 21 through 34, (2) paragraphs 68 through 86, and (3) exhibits 2 through 8. *Id.*

Paragraph 21 of the FAC alleges that "lies" about HII's insurance-related services "are started by making illegal telemarketing calls." (ECF No. 3 at ¶ 21). Paragraphs 22 through 34 describe the alleged telemarketing scheme in detail, including the relationship between the parties, the technology involved, the products being sold, the process followed during the Calls, the follow-up to the Calls, and the manner in which profits from any sales made during the Calls are distributed. *See id.* at ¶¶ 22-34. Paragraph 68 of the FAC alleges that "HII is the principal orchestrator of the illegal calls and boiler room junk insurance sales scheme, and they have been cited by state insurance regulators before." *Id.* at ¶ 68. Paragraphs 76 and 77 relate to the introductory emails that are sent after a person purchases insurance during a Call. *Id.*

at ¶ 76, 77. Exhibit 6 is an email sent from the email address "support@hiiinsurancesolutions.com" that Moser alleges is "the first email [he] received after he signed up for one of the[] HII plans." *Id.* at ¶ 77. These matters may be relevant to Moser's TCPA claims. Accordingly, the Court declines to strike paragraphs 21 through 34, 68, 76, and 77 of the FAC, as well as Exhibit 6.

Paragraphs 78 through 82 relate to a lawsuit Moser previously filed against HII and Unified that settled in January 2015. *See* ECF No. 3 at ¶¶ 78-82. Exhibit 7 is a copy of the lawsuit, which includes claims for violations of the TCPA. *See* ECF No. 3-7. Exhibit 8 is a copy of the settlement agreement. *See* ECF No. 3-8.

Paragraph 69 of the FAC alleges that "in April of this year Unified had to settle 'claims of unlawful, deceptive sales' practices . . . with . . . Massachusetts for HII orchestrated policies." *Id.* at ¶ 69. Exhibit 2 is a press release acknowledging the settlement between Unified and Massachusetts and stating that Unified engaged "unlawful, deceptive sales of health insurance." (ECF No. 3-2 at 1).

Paragraph 70 of the FAC alleges that "[t]he Insurance Commissioner of the State of Arkansas issued a Cease And Desist and Order To Show Cause against HII in 2016." (ECF No. 3 at ¶ 70). Exhibit 3 is a copy of that cease and desist letter. *See* ECF No. 3-3. The Arkansas cease and desist letter orders HII to "cease and desist from the sale, solicitation, or advertising of any health plans or medical insurance in this state using unlicensed agents or entities." *Id.* at 2.

Paragraphs 71 and 72 of the FAC relate to a cease and desist letter issued by Montana against HII and Unified. *See* ECF No. 3 at ¶¶ 71-72. Exhibit 4 is a copy of that cease and desist letter. *See* ECF No. 3-4. The Montana cease and desist letter orders HII and Unified to "immediately cease and desist from selling, negotiating, transacting, administering, or otherwise tak[ing] part in or benefit[ing] from any insurance transaction in, to, or from Montana." *Id.* at 2.

Allegations concerning the Moser lawsuit and settlement, the Massachusetts

settlement, the Arkansas cease and desist letter, and the Montana cease and desist letter may be relevant to the amount of attention Unified and HII did or should have paid to their sales practices. The amount of attention Unified and HII paid to their sales practices may be relevant to the extent of their knowledge of and involvement in the alleged marketing scheme that included the Calls. The extent of Unified and HII's knowledge of and involvement in the alleged marketing scheme that included the Calls may be relevant to whether Unified and HII can be held vicariously liable for the Calls. Consequently, the Court declines to strike paragraphs 69 through 75 and 78 through 82 of the FAC and Exhibits 2, 3, 4, 7, and 8.

Paragraphs 73 through 75 of the FAC relate to a Notice of Proposed Agency Action and Opportunity for Hearing issued by Montana prior to its cease and desist letter. *See* ECF No. 3 at ¶¶ 73-75. Exhibit 5 is a copy of that Notice. *See* ECF No. 3-5. The Notice contains detailed allegations of fact concerning an "HII Scheme." *Id.* at 4. For example, paragraph 5 of the Notice alleges that HII "solicited insurers to underwrite . . . policies, and then organized an extensive operation of insurance producers to sell those policies. Typically, the insurance producers . . . will employ numerous sales representatives in a call center-style operation to actually sell the insurance products . . .." *Id.* The Court declines to strike paragraphs 73 through 75 of the FAC and Exhibit 5 because they may be relevant to Moser's TCPA claims.

Paragraphs 83 through 86 of the FAC relate to public complaints that have been filed against Helping Hand and Nationwide and HII's ability to access those complaints. The Court declines to strike paragraphs 83 through 86 because they may be relevant to Moser's TCPA claims, particularly the extent of HII's knowledge of the alleged marketing scheme that included the Calls.

In sum, the Court declines to strike paragraphs 21 through 34 and 68 through 86 of the FAC, as well as exhibits 2 through 8.

**B. Scandalous Language**

Unified moves to strike certain descriptive words and phrases because they are "scandalous" and "serve no purpose other than to inflame the ire of the ultimate fact-finder," (ECF No. 24 at 10), specifically: (1) "lies" (ECF No. 3 at ¶¶ 21, 27); (2) "victims," *Id.*; (3) "junky," *Id.* at ¶ 22; (4) "low quality," *Id.* at ¶¶ 25, 36; (5) "substandard," *Id.* at ¶ 30; (6) "of dubious value," *Id.* at ¶ 31; and (7) "junk insurance," *Id.* at ¶ 68.

The Court declines to strike the words "lie(s)" and "victims" from paragraphs 21 and 27 because they are not scandalous and are material to the allegations in those paragraph. *See id.* at ¶ 21 ("[T]he[] lies are started by making illegal telemarketing calls prohibited by the [TCPA] which gives victims . . . a private right of action . . . ."); *id.* at ¶ 27 ("Sales agents will routinely lie about whose insurance they are appointed to sell baiting victims with name brands like Blue Cross when their only appointment is with HII affiliates like Unified or Companion . . . .").

Moser uses the words and phrases "junky," "low quality," "substandard," "of dubious value," and "junk" to describe the insurance products that sales agents attempt to sell during the Calls. *See id. at* ¶¶ 22, 25, 30, 31, 36, and 68. The Court declines to exercise its authority under Rule 12(f) to strike these negative characterizations of the insurance products allegedly discussed during the Calls. The Court cannot yet conclude that it is clear that the quality of the products discussed on the Calls can have no possible bearing on Moser's TCPA claims.

## C. Allegations of Fraud

Unified moves to strike Moser's allegations that the sales tactics employed during the Calls involve fraud and deceit on the grounds that those allegations fail to comply with Rule 9(b). (ECF No. 24 at 11-12). Specifically, Unified moves to strike the words "through fraud and deceit" from paragraph 20, the words "fraud, deceit and bait and switch" from paragraph 21, and the words "aggressively and deceitfully" from paragraph 25.

Rule 9(b) states, in relevant part, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 12(f) gives district courts the authority to strike "any redundant, immaterial, impertinent, or scandalous matter" in a complaint. The fact that an allegation of fraud does not satisfy Rule 9(b)'s particularity requirement does not mean that it is "redundant, immaterial, impertinent, or scandalous." Rule 9(b). Consequently, Rule 12(f) does not give district courts the authority to strike an allegation because it fails to comply with Rule 9(b). *See Yursik v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO, 2011 WL 5592888, at *4 (E.D. Cal. Nov. 16, 2011) (denying defendants' motion to strike allegations for failing to comply with Rule 9(b) on the grounds that it "improperly challenges the sufficiency of the pleading" without making "any argument that the claims are redundant, immaterial, impertinent, or scandalous"). The Court declines to strike Moser's allegations that the sales tactics used on the Calls involve fraud and deceit.

**D. References to Unified**

Unified moves to strike all references to Unified in the FAC on the grounds that Moser "has not shown any basis upon which the Court can conclude that he is entitled to any relief from Unified for the claims asserted [in the FAC]." (ECF No. 24 at 14). The Court declines to strike all references to Unified because "Rule 12(f) . . . does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010).

Unified specifically moves to strike "including Unified" from paragraph 50 of the FAC on the grounds that "there is no basis upon which Plaintiff can reasonably conclude that Unified had any involvement whatsoever with either the phone call [described in paragraphs 45 through 51 of the FAC], or the product that he purchased as a result of the call." (ECF No. 24 at 14). Rule 12(f) does not authorize courts to strike baseless allegations, just those that are "redundant, immaterial, impertinent, or

17-cv-1127-WQH-KSC

scandalous."[6]  The Court declines to strike the words "including Unified" from paragraph 50 of the FAC.

### E. Sub-Class Allegations

Nationwide and HII move to strike Moser's sub-class allegations on the grounds that the alleged classes are "fail-safe" and therefore not certifiable.  Courts disfavor motions to strike class allegations because issues related to class allegations are generally more appropriately resolved on a motion for class certification.  *See Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235 –36 (S.D. Cal. 2009); *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008).  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court."  *Cal. Dep't. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)).  The Court concludes that Defendant's motion to strike class allegations is premature at this stage of the proceedings.  The class issues raised by Nationwide and HII are more appropriately considered at the class certification proceedings.  *See Lyons*, 718 F. Supp. 2d at 1236 (noting that courts rarely grant motions to dismiss class allegations before discovery).  Defendant's motion to strike class allegations is denied.

## VI. Conclusion

IT IS HEREBY ORDERED that:

(1)  the Motion to Dismiss and Motion to Strike filed by HII (ECF No. 21) is DENIED;

(2)  the Motion to Dismiss filed by Unified (ECF No. 22) is DENIED;

(3)  the Motion to Strike filed by Unified (ECF No. 24) is DENIED; and

(4)  the Motion to Dismiss and Motion to Strike filed by the Nationwide Defendants (ECF No. 38) is GRANTED as to Moser's claims against Donisi and Jaxtheimer and DENIED in all other respects.  Moser's claims against Donisi and Jaxtheimer are

---

[8] Unified filed a Request for Judicial Notice to support its assertion that there is no basis to conclude that Unified was involved in the Call described in paragraphs 45 through 51 of the FAC. The Court denies Unified's Request for Judicial Notice because courts do not consider the basis of an allegation when deciding a Rule 12(f) motion to strike.

hereby DISMISSED without prejudice.  If Moser wishes to file a second amended complaint, he must file a Motion for Leave to File an Amended Complaint.

DATED:  January 5, 2018

_William Q. Hayes_
**WILLIAM Q. HAYES**
United States District Judge

21