Christopher J. Reichman SBN 250485
chrisr@prato-reichman.com
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971

Matt Malone (SBN 221545)
mjm@rocklawcal.com
Jeffrey Cereghino (SBN 099480)
jbc@rocklawcal.com
ROCK LAW LLP
101 Montgomery Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 433-4949
Facsimile: (415) 520-0308

*Attorneys for Plaintiff Kenneth J. Moser*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER,<br><br>individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH INSURANCE INNOVATIONS, INC., et al., a Delaware Corporation, et al.,<br><br>Defendants. | Case No.: 17cv1127-WQH(KSC)<br><br>**DECLARATION OF MATT J. MALONE IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTES** |

I, Matt J. Malone, declare as follows:

1. I am an attorney licensed to practice law in the state of California and am admitted to practice before this Court. I am a partner with the law firm of ROCK LAW LLP, counsel of record for Plaintiff Kenneth J. Moser ("Plaintiff"). I make this declaration from my own personal knowledge, and could and would competently testify to the following if called

upon to do so.

2. Responses to the discovery requests at-issue in this motion were served on July 5 via mail. This firm associated in as co-counsel for Plaintiff on July 11, 2018.

3. I handled the meet-and-confer efforts on behalf of Plaintiff at the same time as I was coming up to speed on the case. On August 13, 2018, I sent a meet and confer letter to counsel for Jonisi Dax, Inc. A true and correct copy is attached as Exhibit A.

4. On August 17, 2018, I sent a copy of the proposed motion itself, in compliance with this Court's Chambers' Rules on Civil Pretrial Procedure.

5. The parties met-and-conferred by phone on August 21, 2018, in a conversation I personally attended, and reached several areas of agreement. Accordingly, the parties jointly requested this Court extend its 45-day deadline for any motions to compel to allow the parties to conclude these efforts and hopefully reduce the disputed issues. Meet-and-confer efforts continue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at San Francisco, California, this 27th day of August, 2018.

By: */s/ Matt Malone*
Matt Malone
*Attorneys for Plaintiff and the Proposed Class*

**EXHIBIT A**



August 13, 2018

*Via Email [jmeeker@nossaman.com]*

Jennifer L. Meeker
Nossaman, LLP
777 South Figueroa St., 34th Floor
Los Angeles, CA 90017

RE: *Moser* v. *Health Insurance Innovations, Inc.* -- **Meet and Confer Letter RE Discovery**

Dear Ms. Meeker:

      I write to meet and confer regarding potential written discovery disputes pursuant to Judge Crawford's Civil Chambers Rule, Article V, Section B.  The dispute concerns the response of your client, Donisi Jax, Inc., to Plaintiff's First Set of Requests For Production ("Requests") and Interrogatories.   Further to the Rule, please provide dates and times you are available this week for a telephonic conference.

1. **Failure To Comply With F.R.C.P. 34(b)(2)(B)(C) – All Requests**

    Federal Rule of Civil Procedure 34(b)(2)(C) orders that: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."   The Committee Notes on Rules for the 2015 Amendment state that this is the purpose for the rule: "This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."  Thus, the purpose of the rule is, of course, to discourage boilerplate privilege objections.  HII's responses repeatedly interpose objections concerning privilege, attorney work product, and privacy, but none of the responses state whether or not any documents have been withheld based on the objections or not.  Without knowing if any documents have been withheld, Plaintiff cannot assess the validity of the privilege claim.

      Absent the required statement whether documents have been withheld, Plaintiff cannot analyze the validity of the objection or determine whether a motion to compel is appropriate.  Plaintiff requests the Responses be amended to state whether any documents have been withheld and the particular objection relied upon.

2. **Protective Order**

In multiple responses to Requests for Production, Defendants asserts that it will only produce documents upon entry of a protective order by the Court. While that motion is pending, there are certain places where asserting the requirement is improper and documents may nonetheless be produced. Specifically:

- *Interrogatory No. 3* [sic – the second so-numbered Interrogatory]: "IDENTIFY any PERSON OR entity to which YOU transmit, receive, OR distribute any leads OR lead information for the period of January 28, 2014 to present." Vendor names and addresses are not confidential. The response does not provide the full amount of information to satisfy the definition of "IDENTIFY," which includes contact information. That information is needed immediately given the short class discovery window.

- *Interrogatory No. 4*: "IDENTIFY all 'call centers' to which YOU transfer or receive transfers from concerning any phone calls about sales, telemarketing, lead generation or any other service associated with selling insurance products." Again, the identity of any such call center is not confidential or otherwise the kind of information that would be subject to a protective order. The response does not provide the full amount of information to satisfy the definition of "IDENTIFY," which includes contact information.

3. **Request for Production Nos. 10, 11, 12, 19, and 20**

*Request No. 10*: All DOCUMENTS evidencing any transfer of any leads or lead information to or from any PERSON or entity that is not a direct employee of YOU for the period of January 28, 2014 until present.

*Request No. 11*: All DOCUMENTS evidencing any transfer or receipt of more than 1,000 telephone numbers to any PERSON OR entity that is not a direct employee of YOU for the period of January 28, 2014 until present.

*Request No. 12*: All DOCUMENTS which evidence any payments made to any third party "call centers" for the period of January 28, 2014 until present.

*Request No. 19*: All DOCUMENTS which evidence any agreements, contracts, terms of service or other services between YOU AND any "call centers" for the period of January 28, 2014 until present.

*Request No. 20*: ALL DOCUMENTS All DOCUMENTS which evidence any agreements, contracts, terms of service or other services between YOU AND any lead generator for the period of January 28, 2014 until present.

*Response To Request For Production No. 10*: [after objections] Subject to and without waiving the foregoing objections, Plaintiff was transferred to Defendant via the third party live transfer vendor, HIC Lead Network Inc. Defendant will thus produce the agreements with the third party lead vendors that provide live transfer leads to Defendant upon the entry of a protective order by the Court."

*Response to Requests Nos. 11, 12, 19, 20*: After objections, Defendant refers back to the Response to Interrogatory No. 10.

*Disputed Issues*: Defendant has unilaterally narrowed the inspection demand to "agreements." Request No. 10 demands all documents evidencing the transfer of leads or lead information for the entirety of the class the period. Defendant now admits that that it uses outside parties like XenCALL who transfer "warm leads" to it—a euphemism for HIC Lead Network telemarketing in cold calling campaigns then transferring the minority who show any interest to Donisi-Jax. Regardless of the attempts to pre-argue agency, the demand seeks documents evidencing all the telemarketing "warm leads" Defendant received, not just the one involving the named plaintiff. The request is central to all class certification factors, most especially numerosity. A full response must be made, which would include all documents evidencing the lead transfers and all phone records showing the "warm transfer" telemarketing calls.

In referring to this answer in response to Requests Nos. 11, 12, 19, and 20, Defendant fails to properly respond for the same reason. Responses must be complete in and of themselves. The requests are not limited to the named plaintiff and would include documents related to the lead transfers, not just agreements with a single vendor. In particular, No. 12 requires payment records, not agreements.

### 4. Request for Production No. 18

*Request No. 18*: All DOCUMENTS relating to YOUR internal "Do Not Call" list.

*Response*: After objections, "Defendant responds that it will produce its internal 'Do Not Call' list upon the entry of a protective order by the Court."

*Disputed Issues*: the response is incomplete. The demand seeks all documents relating to this list, not merely the list itself. These would include any documents evidencing Defendant's policies and procedures for creating, maintaining, or altering the list itself.

### 5. Request for Production No. 25

*Request No. 25*: All DOCUMENTS" evidencing all "telephonic activity" of Michael Cugini on April 27, 2017.

*Response*: After objections, Defendant refers back to the response to Special Interrogatory No. 8.

*Disputed Issues*: Responses must be full and complete in and of themselves and may not reference other responses. The response to Interrogatory No. 8 is a list of calls, and does not include documents evidencing the activity. Further, it only includes the calls with Mr. Moser, and no other telephonic activity of Mr. Cugini/Miller on April 27, 2017. Full response must be made, including all documents evidencing the lead transfers and, without limitation, all phone records showing the "warm transfer" telemarketing calls fielded by Mr. Cugini/Miller on that date. Defendant must either produce the documents requested or state under oath that no such documents exist.

**6.   Request For Production No. 26**

*Request No. 26*: All DOCUMENTS evidencing all YOUR telephonic activity for the period of January 28, 2014 until present. [For the purpose of this REQUEST "telephonic activity" includes all outbound AND inbound calls.

*Response*: [objections w/o statement as to whether documents may have been withheld omitted]  Based upon the foregoing objections, and in particular, the objection based on proportionality, Defendant will not respond to this request as presently stated. Defendant is an insurance agency incorporated on September 14, 2015. Its business is to sell insurance. Defendant contracts with third party lead vendors to provide leads to Defendants of persons who have requested to be contacted by insurance agents. For instance, Plaintiff was transferred to Defendant live by the third party live transfer lead generator, HIC Lead Network Inc. Defendant's agreements with third party lead generators require the third parties generate leads in compliance with the Telephone Consumer Protection Act. All outbound calls made by Defendant are made to customers who have requested that a live agent call them to discuss insurance. There is thus human interaction in every outbound call by Defendant.

*Disputed Issues*: The boilerplate objections are meritless. This case concerns improper telephone calls, so call records are relevant. Nor is the request for such records vague. Phone numbers are not confidential. The request seeks no privileged document and, in any event, Defendant has not provided any log supporting the privilege assertion.

Though the request is not vague or ambiguous, Plaintiff will clarify that he seeks phone records like the typical monthly bills and call detail reports as well as sales lead tracking reports such as call logs kept in lead tracking databases like most sales operations use. These are neither difficult nor burdensome to produce. Defendant claims that it uses s XenCALL as its cloud-based predictive dialer. According to its own advertising (https://www.xencall.com/company): "The XenCALL predictive dialer CRM delivers a rich feature list, including extensive reporting, analytics, and API-integration options, to provide you the freedom to customize a complete and modern call center solution that works best

for you." Additionally, phone bills and call details sheets are prepared in normal course by a company's phone carrier and transmitted to them periodically—usually monthly. Turning over such basic records kept in the normal course of business is no major burden, and the same goes for any sales lead management information which is equally a normally kept and maintained record. In any event, since this case is case entirely about telemarketing and the records requests are the documents showing the telephonic activity of the Defendant, any possible disproportion in effort is justified.

I look forward to hearing from you on a time for a telephonic conference.

Sincerely,

Matt J. Malone