UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>HEALTH INSURANCE INNOVATIONS, INC., a Delaware corporation, et al.,<br><br>               Defendants.<br><hr>AND RELATED COUNTERCLAIMS. | Case No.: 17cv1127-WQH(KSC)<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE (RE: PLAINTIFF'S INTERROGATORIES AND DOCUMENT REQUESTS TO DEFENDANT DONISI JAX)**<br><br>**[Doc. No. 83.]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute. [Doc. No. 83.] In the Joint Motion, plaintiff seeks an order compelling defendant Donisi Jax to provide further, substantive responses to certain document requests and interrogatories. Donisi Jax objects to these written discovery requests on various grounds. [Doc. No. 83, at pp. 2-21.] For the reasons outlined more fully below, the Court finds that

/ / /

plaintiff's request for an order compelling Donisi Jax to provide further responses to certain interrogatories and document requests must be GRANTED in part and DENIED in part.

## *Background*

### I. *The First Amended Complaint.*

The original class action Complaint was filed on June 5, 2017. [Doc. No. 1.] Plaintiff then filed a First Amended Complaint on June 7, 2017. [Doc. No. 3.] The First Amended Complaint includes two causes of action for violations of the Telephone Consumer Protection Act ("TCPA"). [Doc. No. 3, at pp. 29-31.] In the first cause of action, plaintiff alleges that defendants violated the TCPA by making multiple, unauthorized calls to his cellular telephone using an automatic dialing system or artificial, pre-recorded voice starting on January 28, 2015. [Doc. No. 3, at p. 30.] The second cause of action alleges that defendants violated the TCPA by making multiple, unauthorized telephone calls to plaintiff's residential telephone line using an artificial or pre-recorded voice to deliver a message beginning on January 28, 2015. [Doc. No. 3, at p. 31.]

According to the First Amended Complaint, defendant Health Insurance Innovations, Inc. (HII) is the "principle actor in a scheme to sell short term non-Affordable Care Act compliant medical insurance plans and other low quality insurance related services through fraud and deceit." [Doc. No. 3, at p. 5.] The scheme allegedly begins when agents under contract to HII make cold calls to consumers using an automatic dialing system and a pre-recorded message. During the pre-recorded message, the consumer can respond to prompts, such as "press 1." [Doc. No. 3, at p. 6.] The consumer will then be connected with a sales person "who will aggressively and deceitfully attempt to sell the [insurance] bundle." [Doc. No. 3, at pp. 6-7.] Although the First Amended Complaint explains that state regulators are involved in policing these practices, the autodialed/pre-recorded calls to cellular telephones and residential lines are also actionable because they violate the TCPA. [Doc. No. 3, at pp. 8-9.]

Plaintiff used a spreadsheet to make a log of all of the autodialed/pre-recorded sales calls he received and attached it as Exhibit 1 to the First Amended Complaint. The

spreadsheet shows the dates and times of the calls and the associated caller identification information.  [Doc. No. 3, at p. 9.]  The First Amended Complaint also includes a fairly detailed summary of the calls.  For example, the First Amended Complaint alleges that plaintiff received fifteen autodialed, pre-recorded calls to his cellular telephones and his residential line from defendant Helping Hand during the period April 6, 2017 through May 10, 2017.  [Doc. No. 3, at pp. 9-13.]

Plaintiff also alleges in the First Amended Complaint that he received thirty-two autodialed, pre-recorded calls from defendant Nationwide Health Advisors between April 6, 2017 and May 10, 2017.  During at least one of these calls, plaintiff "feigned interest to determine the true identity of the caller" and was connected to a live sales representative.  [Doc. No. 3, at p. 11.]  He then "had to fake buying a policy since the caller would never identify his company. . . ."  [Doc. No. 3, at p. 12.]  After signing up for an insurance plan to determine the identity of the parties responsible for the autodialed calls, plaintiff received an e-mail from defendant HII.  A copy of the e-mail is attached as Exhibit 6 to the First Amended Complaint.  [Doc. No. 3, at pp. 18-19; Doc. No. 3-3, at pp. 1-2 (Exhibit 6).]  Plaintiff believes he has been receiving calls from the defendants in violation of the TCPA since "early 2015," but he has not documented all of the calls, so some of the specific dates and times of calls are unknown without the aid of discovery.  [Doc. No. 3, at p. 13.]  On June 27, 2014, in a separate case, plaintiff sued defendants HII and Unified Life Insurance Company, but the action was later settled.  [Doc. No. 3, at p. 19.]  A copy of the settlement is attached as Exhibit 8 to the First Amended Complaint.  [Doc. No. 3-8 (Exhibit 8).]  The First Amended Complaint also alleges there are a number of outstanding "junk call complaints" against the defendants.  [Doc. No. 3, at pp. 20-21.]

The class allegations section of the First Amended Complaint indicates that plaintiff plans to seek certification of two sub-classes of plaintiffs:  (1) those who have received unauthorized, auto-dialed calls on their cellular telephones from defendants since January 28, 2015; and (2) those who have received unauthorized, auto-dialed calls on the residential telephone lines since January 28, 2015.  [Doc. No. 3, at p. 25.]

## II. *Representations by Donisi Jax About Its Business and Contacts with Plaintiff.*

In support of its positions taken in the Joint Motion, Donisi Jax provided the following explanatory information about its business and its contact with plaintiff:

> Defendant Donisi Jax is an insurance agency that contracts with third party lead vendors to develop leads to sell health insurance policies. [Donisi Jax] receives leads from these third party lead vendors in two ways. The first way [Donisi Jax] receives leads is through a direct sale. A direct sale is when a vendor transfers phone numbers of consumers who have expressed interest in purchasing an insurance policy and then [Donisi Jax's] agents make live phone calls to the consumers. In our case, Plaintiff was **not** contacted by [Donisi Jax] through a direct sale lead. [Doc. No. 83, at p. 2.]

> The second way [Donisi Jax] receives leads is through a live transfer. A live transfer is when the third party lead vendor calls the consumer itself. If the consumer expresses interest in buying an insurance policy that fits the type of policy sold by Donisi Jax, the customer can be transferred live by the third party lead vendor to an agent working for [Donisi Jax]. Here, Plaintiff was transferred to [Donisi Jax] by a third party lead vendor through a live transfer. [Doc. No. 83, at p. 3.]

> The lead transfer vendors are not captive agents of Donisi Jax. Thus, the lead transfer vendor that transferred plaintiff Moser to Donisi Jax could just as easily have sent plaintiff Moser to a different and wholly unrelated insurance agency that the lead transfer vendor also does business with. [Doc. No. 83, at p. 3 n.1.]

> Donisi Jax vehemently denies that any of its lead vendors are its agents. Donisi Jax's relationship with each and every one of its lead vendors are the result of arm[']s-length business transactions, and Donisi Jax does not assert any control over the vendors. Indeed, with respect to the lead vendor that transferred plaintiff to Donisi Jax, the contract between the parties specifically states that each party will comply with law and Donisi Jax has no right to audit the vendor. [Doc. No. 83, at p. 13 n.2.]

## *Discussion*

### I. *Scope of Discovery.*

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

If a party fails to answer written interrogatories or produce documents in response to written requests, the party seeking discovery may move for an order compelling disclosure. Fed.R.Civ.P. 37(a)(3)&(4). "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

Under Rule 26(b)(2)(C), "the court must limit . . . discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(i)&(ii). In addition, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of the disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . ." Fed.R.Civ.P. 26(C)(1)(A)-(G).

Federal Rule of Civil Procedure 33 states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(1)(3). In other words, parties have an obligation to respond to interrogatories to the fullest extent possible. "The grounds for objecting to an

interrogatory must be stated with specificity." Fed.R.Civ.P. 33(b)(4). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). For example, objections must explain how an interrogatory is overly broad or unduly burdensome. *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002).

Federal Rule of Civil Procedure 34 provides that a party responding to a document request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. . . ." Fed.R.Civ.P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed.R.Civ.P. 34(b)(2)(B).

## II. *Interrogatories Seeking Identification of Third Party Lead Vendors.*

> ***Interrogatory No. 3*** seeks the identity of "any person or entity to which [Donisi Jax] transmit[s], receive[s], or distribute[s] leads or lead information for the period January 28, 2014 to the present." [Doc. No. 83, at p. 4.]

> ***Interrogatory No. 4*** seeks the identity of "all 'call centers' to which [Donisi Jax] transfer[s] or receive[s] transfers from concerning any phone calls about sales, telemarketing, lead generation or any other service associated with selling insurance products." [Doc. No. 83, at p. 5.]

> "Call centers" refers to "any third party person or entity whose primary function involves making more than 1,000 outbound calls per month whether it be for sales purposes, telemarketing, or any other purpose typically involving the making of outbound calls." [Doc. No. 83, at pp. 5, 9.]

Donisi Jax made non-specific, boilerplate objections to Interrogatory Nos. 3 and 4, but did not explain its reasons for making any of these objections. For example, Donisi Jax did not explain how Interrogatory Nos. 3 and 4 are overly broad, unduly burdensome,

6

or disproportionate to the needs of the case. [Doc. No. 83, at pp. 9-10.] Donisi Jax did respond that it would "produce the agreements with the third party lead vendors that provide live transfer leads to [Donisi Jax] upon the entry of a protective order by the Court." [Doc. No. 83, at pp. 4, 6.]

In the Joint Motion, plaintiff has two complaints about Donisi Jax's responses to Interrogatory Nos. 3 and 4. First, plaintiff argues that the identities of vendors and call centers are not confidential, so Donisi Jax should have produced the requested information without waiting for the entry of a confidentiality Protective Order. In this regard, there is no dispute for the Court to resolve. When the instant Joint Motion was filed, the parties' Joint Motion for a Protective Order to govern the exchange of confidential information between the parties was pending. [Doc. No. 75.] While the instant Joint Motion was pending, the Court entered a confidentiality Protective Order. [Doc. No. 100.] Under the Protective Order, any party can designate documents or information as "confidential" based on a "good faith belief" that "the unrestricted disclosure of such information could be potentially prejudicial to the business or operations of such party." [Doc. No. 100, at p. 3.] The Court has no reason to believe Donisi Jax does not have a good faith basis for restricting access to the identities of lead vendors or call centers at this point in the litigation. There is also no reason for the Court to believe Donisi Jax's responses to Interrogatory Nos. 3 and 4 were inadequate under the circumstances or that Donisi Jax will not produce the agreements now that a confidentiality Protective Order is in the Court's record.

Second, plaintiff argues that Donisi Jax's responses to Interrogator Nos. 3 and 4 are incomplete because they do not include contact information for vendors and call centers. However, the Court notes that Federal Rule 33(d) does permit a party responding to interrogatories to cite business records where requested information can be located. Without more, it appears that Donisi Jax's responses to Interrogatory Nos. 3 and 4 are

/ / /

/ / /

adequate under Federal Rule 33(d).[1]  As a result, there is only a dispute here if the agreements Donisi Jax said it would produce in response to Interrogatory Nos. 3 and 4 do not include contact information for vendors and call centers.  [Doc. No. 83, at p. 4.] Therefore, under the circumstances presented, the Court finds that plaintiff's request for an order compelling Donisi Jax to provide further responses to Interrogatory Nos. 3 and 4 must be DENIED without prejudice.  Plaintiff can raise these issues again if Donisi Jax does not produce the agreements it said it would produce in response to Interrogatory Nos. 3 and 4 and/or if Donisi Jax produces the agreements with its vendors and call centers without disclosing contact information.

## III.  *Document Requests Re Agreements with Third Party Lead Vendors.*

> *Document Request No. 19* seeks:  "All documents which evidence any agreements, contracts, terms of service or other services between [Donisi Jax] and any 'call centers' for the period of January 28, 2014 until the present." [Doc. No. 83, at pp. 8-9.]

> "Call centers" refers to "any third party person or entity whose primary function involves making more than 1,000 outbound calls per month whether it be for sales purposes, telemarketing, or any other purpose typically involving the making out outbound calls."  [Doc. No. 83, at pp. 5, 9.]

> *Document Request No. 20* seeks:  "All documents which evidence any agreements, contracts, terms of service or other services between [Donisi Jax] and any lead generator for the period of January 28, 2014 until the present." [Doc. No. 83, at p. 10.]

---

[1]  Federal Rule of Civil  Procedure 33(d) states as follows:  "If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:  (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."  Fed. R. Civ. P. 33(d).

In its responses to these document requests, Donisi Jax made non-specific, boilerplate objections. For example, Donisi Jax's responses state that these document requests are overly broad, unduly burdensome, and disproportionate to the needs of the case. However, the responses do not explain how these document requests are overly broad, unduly burdensome, or disproportionate. [Doc. No. 83, at pp. 9-10.] Donisi Jax did provide the following substantive response to these requests: "Plaintiff was transferred to defendant via the third party live transfer vendor, HIC Lead Network Inc. Defendant will thus produce the agreements with the third party lead vendors that provide live transfer leads to defendant upon the entry of a protective order by the Court." [Doc. No. 83, at pp. 7, 9-10.]

In the Joint Motion, Donisi Jax argues that Document Request Nos. 19 and 20 are "vastly overbroad and disproportionate to the needs of the case." [Doc. No. 83, at p. 13.] "[I]n essence and reality," Donisi Jack contends that these discovery requests "implicate [Donisi Jax's] entire business" and seek access to documents and information that are wholly irrelevant. [Doc. No. 83, at p. 13 (emphasis in original).] On the other hand, Donisi Jax does not dispute that plaintiff is entitled to "some information" in response to the above-referenced discovery requests. [Doc. No. 83, at p. 14 (emphasis in original).] Donisi Jax argues that the Court should find its responses should be "limited in light of the facts of this case and in consideration of proportionality" to documents and information "concerning live leads from the same vendor that transferred plaintiff to Donisi Jax." [Doc. No. 83, at pp. 14-15.] In this regard, Donisi Jax represents that it is in the process of determining what types of reports it is able to provide using its software. [Doc. No. 83, at pp. 14-15 n.3.]

Plaintiff complains that Donisi Jax "unilaterally" limited the scope of its responses to Document Request Nos. 19 and 20 to the agreements with its third party lead vendors that provide live transfer leads to Donisi Jax even though these document requests seek production of a much broader range of documents. [Doc. No. 83, at p. 4.] For example, plaintiff contends that responsive documents "would also include correspondence relative

9

to those agreements that evidence them." [Doc. No. 83, at pp. 9-11.] In conclusory fashion, plaintiff argues that responsive documents, such as agreements, "correspondence relative to those agreements," and "phone records," are "central to class certification factors, most especially numerosity." [Doc. No. 83, at pp. 7, 9-11.]

Federal Rule 34(b)(1)(A) states that a request for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34(b)(1)(A). "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009). *See also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-650 (10th Cir. 2008) (indicating that "sweeping requests" should be discouraged and that requests for production should be narrowly tailored "for production of the fewest documents possible").

"When a request is overly broad on its face, the party seeking the discovery has the burden to show the relevancy of the request." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 542 (D. Kan. 2006). Generally, a discovery request without temporal or other reasonable limitations is objectionable on its face as overly broad. *See, e.g., Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014); *Johnson v. Kraft*, 236 F.R.D. at 541-542. A document request or interrogatory is also overly broad or unduly burdensome on its face if it: "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006). On the other hand, a discovery request will not be objectionable as overly broad if it uses an omnibus term to modify "a sufficiently specific type of information or group of documents." *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261-262 (E.D. Wisc. 2013). For example, in a wrongful employment termination action, a document request would be objectionable as overly broad if it sought all documents and e-mails referring or relating to the plaintiff and/or the allegations in the complaint or the defendant's

defenses. *Id.* By contrast, a more specific document request in the same case would not be objectionable as overly broad if it sought production of all documents referring or relating to the defendant's decision to eliminate plaintiff's job. *Id.* at 262.

"Despite the overly broad nature of [a discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." *Moses v. Halstead*, 236 F.R.D. at 672. "This rule does not apply, however, and the Court will not compel further response, when inadequate guidance exists to determine the proper scope of the [discovery request]." *Id.* In addition, "[a] responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013).

Here, the Court agrees with Donisi Jax that Document Request Nos. 19 and 20 are "vastly overbroad." [Doc. No. 83, at p. 13.] These requests are overly broad because they seek production of documents using the omnibus term "which evidence" to apply to a broad, general category or group of documents (i.e., "any agreements, contracts, terms of service or other services between [Jonisi Jax] and any 'call centers'" or "any lead generator") rather than to a more specific or narrowly tailored set of documents or information.

Plaintiff does not explain how or why the very broad range of documents it has requested in response to Document Request Nos. 19 and 20 would be relevant to class certification issues, such as numerosity. Nor is the relevance of such a broad range of documents obvious in light of the allegations in the First Amended Complaint and the explanatory information provided by Donisi Jax about its business and contacts with plaintiff. The parties' Joint Motion does not indicate plaintiff has attempted to narrow the scope of these requests by agreeing to any reasonable limitations during the meet and confer process. Instead, plaintiff merely argues that defendant is interpreting the requests too narrowly by not agreeing to also produce "documents evidencing agreements and contracts" for all of its lead vendors, as well as "correspondence relative to those

agreements that evidence them." [2] [Doc. No. 83, at p. 10-11.] Without more, it is simply not possible for Donisi Jax or the Court to determine what documents should be produced in response to this type of "sweeping," "all-encompassing" set of requests. *In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. at 157. *See also Regan-Touhy v. Walgreen Co.*, 526 F.3d at 649-650.

Under the circumstances presented, the Court finds that Donisi Jax acted reasonably by responding that it would produce "the agreements with the third party lead vendors that provide live transfer leads to [Donisi Jax]. . . ." [Doc. No. 83, at p. 7.] In the Joint Motion, Donisi Jax explains why it limited its responses to Document Request Nos. 19 and 20 in this manner. Essentially, Donisi Jax explains that, as written, these requests are "vastly overbroad" because they "implicate" its "entire business." [Doc. No. 83, at p. 13 (emphasis in original).] In addition, Donisi Jax does not believe it should be required to produce responsive documents as to its lead vendors that provide direct sale leads, because plaintiff was transferred to Donisi Jax by a third party lead vendor through a live transfer. "Claims regarding calls that are transferred live to Donisi Jax involve different questions of fact than direct sales calls, and plaintiff's claim that he was called by a third party lead vendor that transferred him live to Donisi Jax are not typical to the claims involving direct sales

---

[2]    Particularly when a party stands on overly broad requests and does not make a reasonable attempt to narrow them or to adequately explain the need for such a broad range of documents and/or information, the Court will not "rewrite a party's discovery request[s] to obtain the optimum result for that party. That is counsel's job." *Medicinova Inc. v. Genzyme Corp.*, No. 14CV2513-L(KSC), 2017 WL 2829691, at 6 (S.D. Cal. June 29, 2017); *Bartolome v. City and County of Honolulu*, WL 2736016, at 14 (D. Hawaii 2008). *See also Kilby v. CVS Pharmacy, Inc.*, No. 09CV2051-MMA(KSC), 2017 WL 1424322, at 4 (S.D. Cal. Apr. 19, 2017); *Sanchez Ritchie v. Sempra Energy*, No. 10CV1513-CAB(KSC), 2015 WL 12914435, at 3 (S.D. Cal. Mar. 30, 2015).

calls." [Doc. No, 8, at pp. 3, 14.][3] Accordingly, based on the information as presented by the parties in the Joint Motion, the Court finds that Donisi Jax provided plaintiff with an adequate response to Document Request Nos. 19 and 20. Therefore, the Court finds that plaintiff's request for an order compelling Donisi Jax to provide further responses to Document Request Nos. 19 and 20 must be DENIED.

## IV. *Records Detailing Leads Received by Donisi Jax from Third Party Vendors*.

> ***Document Request No. 10***: "All documents evidencing any transfer of any leads or lead information to or from any person or entity that is not a direct employee of [Donisi Jax] for the period of January 28, 2014 until the present." [Doc. No. 83, at p. 6.]

> ***Document Request No. 11***: "All documents evidencing any transfer or receipt of more than 1,000 telephone numbers to any person or entity that is not a direct employee of [Donisi Jax] for the period of January 28, 2014 until the present." [Doc. No. 83, at p. 7.]

In its responses to Document Request Nos. 10 and 11, Donisi Jax made non-specific, boilerplate objections. For example, Donisi Jax's responses state that these document requests are overly broad, unduly burdensome, and disproportionate to the needs of the case. However, the responses do not explain how these document requests are overly broad, unduly burdensome, or disproportionate. [Doc. No. 83, at pp. 7-8.] Donisi Jax did provide the following substantive response to Document Request Nos. 10 and 11: "Plaintiff was transferred to defendant via the third party live transfer vendor, HIC Lead Network Inc. Defendant will thus produce the agreements with the third party lead vendors

---

[3] Because plaintiff "was transferred live to Donisi Jax by one particular lead vendor" (*i.e.*, HIC Lead Network Inc.) Donisi Jax also argues that "it is highly questionable whether information relating to transfers from any other lead vendor can be used to support a class in this case at all." [Doc. No. 83, at pp. 4, 14.] However, at this point in time, the Court finds that "agreements with the third party lead vendors that provide live transfer leads to Donisi Jax" are relevant under the standard set forth in Federal Rule 26(b)(2) and must be produced in response to Document Request Nos. 19 and 20.

that provide live transfer leads to defendant upon the entry of a protective order by the Court." [Doc. No. 83, at pp. 7, 9-10.]

Plaintiff complains that Donisi Jax "unilaterally" narrowed its responses to these requests to disclosure of its agreements with third party lead vendors who transfer leads using a "live transfer" method when these requests seek a much broader class of documents. [Doc. No. 83, at p. 7-8.] Although plaintiff's argument is somewhat unclear, it appears that plaintiff seeks documents showing all of the leads that were transferred to Donisi Jax from third party lead vendors during the relevant time period. [Doc. No. 83, at p. 7.] In conclusory fashion, plaintiff argues that Document Request Nos. 10 and 11 are "central to all class certifications factors, most especially numerosity. A full response must be made, which would include all documents evidencing the lead transfers and all phone records showing the 'warm transfer' telemarketing calls." [Doc. No. 83, at pp. 7-8.]

Plaintiff also seems to be seeking the same or similar documents in response to Document Request No. 26, which reads as follows:

> ***Document Request No. 26***: "All documents evidencing all [of Donisi Jax's] telephonic activity for the period January 28, 2014 until the present." [Doc. No. 83, at p. 11.] "Telephonic activity" refers to "all outbound and inbound calls." [Doc. No. 83, at p. 11.]

Donisi Jax also made non-specific, boilerplate objections to Document Request No. 26 but provided the following substantive response:

[Donisi Jax] will not respond to this request as presently stated. [Donisi Jax] is an insurance agency incorporated on September 14, 2015. Its business is to sell insurance. [Donisi Jax] contracts with third party lead vendors to provide leads to [Donisi Jax] of persons who have requested to be contacted by insurance agents. For instance, plaintiff was transferred to [Donisi Jax] live by the third party live transfer lead generator, HIC Lead Network Inc. [Donisi Jax's] agreements with third party lead generators require the third parties generate leads in compliance with the Telephone Consumer Protection Act. All outbound calls made by [Donisi Jax] are made to customers who have

requested that a live agent call them to discuss insurance. There is thus human interaction in every outbound call by [Donisi Jax].

[Doc. No. 83, at pp. 11-12.]

With respect to Document Request No. 26, plaintiff argues in the Joint Motion that "call records" are relevant because this case is about "improper telephone calls," so Donisi Jax must produce "typical monthly bills and call detail reports," "sales lead tracking reports," and "call logs kept in lead tracking databases like most sales operations use." [Doc. No. 83, at p. 12.] Without support, plaintiff also argues that these documents are "neither difficult nor burdensome to produce" as they are "basic records kept in the normal course of business." [Doc. No. 82, at p. 12.] In addition, plaintiff argues that Donisi Jax should be able to produce "phone bills and call detail sheets" as they "are prepared in the normal course by a company's phone carrier and transmitted to them periodically." [Doc. No. 83, at p. 12.] Because the case involves "improper telephone calls" and "telemarketing," plaintiff also contends that production of these business records cannot be considered overly burdensome or disproportionate to the needs of the case. [Doc. No. 83, at p. 12.]

Donisi Jax does not dispute that "<u>some</u> information is properly discoverable" in response to these requests. [Doc. No. 83, at p. 14 (emphasis in original).] However, Donisi Jax argues that Document Request Nos. 10, 11, and 26 are "vastly overbroad," "disproportionate to the needs of this case," and "in essence and reality, implicate defendant's <u>entire</u> business." [Doc. No. 83, at p. 13 (emphasis in original).] Therefore, Donisi Jax contends that the Court should limit production of documents responsive to Document Request Nos. 10, 11, and 26 based on proportionality and the particular facts and circumstances at issue here. [Doc. No. 83, at p. 14.]

For the reasons outlined in the previous section, the Court agrees with Donisi Jax's contention that Document Request Nos. 10, 11, and 26 are "vastly overbroad." [Doc. No. 83, at p. 13.] Plaintiff did make some attempt to narrow the scope of these requests by explaining that he seeks disclosure of phone bills and other records or reports generated

15

in the normal course of business showing all of the leads that were transferred to Donisi Jax by outside parties. [Doc. No. 83, at p. 7-8, 12.] However, plaintiff does not address Donisi Jax's arguments that leads received via the direct sale method are not relevant. According to Donisi Jax, the scope of these requests should be limited to leads received using the live transfer method, because plaintiff was transferred to Donisi Jax by a third party lead vendor through a live transfer. Plaintiff has not offered any reason why "leads made through direct sales" are relevant to the matters at issue in the lawsuit, even though it bears the burden of doing so. [Doc. No. 83, at p. 14.] Therefore, based on the information as presented, the Court finds that "leads made through direct sales" do not meet the relevance standard in Federal Rule 26(b)(2), so it is unnecessary for Donisi Jax to produce documents in response to Document Request Nos. 10, 11, and 26 that include information about leads received through the direct sales method.

Donisi Jax also argues that discovery in response to Document Request Nos. 10, 11, and 26 should be further limited to the "one particular lead vendor" that actually transferred plaintiff to Donisi Jax. Without support, Donisi Jax argues that "it is highly questionable whether information relating to transfers from any other lead vendor can be used to support a class in this case at all." [Doc. No. 83, at p. 14.] However, the Court finds that this second limitation suggested by Donisi Jax goes too far. Based on the information currently before the Court, relevance is obvious as to leads received by Donisi Jax from all third party live transfer lead vendors during the relevant time period. Accordingly, to the extent possible, the Court finds that Donisi Jax must produce a document or documents that include the telephone numbers for all live transfer leads received from all of its third party live transfer lead vendors for the relevant time period. The names and/or other identifying information associated with any such telephone numbers may be redacted from the list, because this information is not relevant to class certification issues. *See, e.g., Knutson v. Schwan's Home Serv., Inc., No.* 12cv964-GPC(DHB), 2013 WL 11070939, at p. 2 (S.D. Cal. July 23, 2013). Despite plaintiff's argument to the contrary, it is not necessary for Donisi Jax to produce monthly telephone

bills or other reports detailing all incoming and outgoing calls for the relevant time period. Based on the information currently before the Court, production of all telephone bills or other reports detailing all incoming and outgoing calls during the relevant time period would be overly burdensome and disproportionate to the needs of the case, because many calls detailed in any such reports would be irrelevant.

In sum, plaintiff's request for an order compelling Donisi Jax to provide further responses to Document Request Nos. 10, 11, and 26 is GRANTED in part and DENIED in part. The Court finds that plaintiff's request must be GRANTED to the extent it seeks an order compelling Donisi Jax to produce a list or lists of telephone numbers for all live transfer leads received from all of its third party live transfer lead vendors for the relevant time period. Plaintiff's request is DENIED to the extent it seeks an order compelling Donisi Jax to produce any other documents, such as telephone bills, or other documents or reports detailing all of its incoming and outgoing telephone calls for the relevant time period.

**V.** ***Payments to Third Party Vendors.***

> ***Document Request No. 12***: "All documents which evidence any payments made to any third party 'call centers' for the period of January 18, 2014 until the present." [Doc. No. 83, at p. 15.]

In its responses to Document Request No. 12, Donisi Jax made non-specific, boilerplate objections. For example, Donisi Jax objects to this request as overly broad, unduly burdensome, and disproportionate to the needs of the case. In addition, Donisi Jax objects to this request on the ground that it seeks production of documents that are irrelevant. [Doc. No. 83, at p. 15.] However, Donisi Jax reiterated that it would "produce the agreements with the third party lead vendors that provide live transfer leads to [Donisi Jax] upon the entry of a protective order by the Court." [Doc. No. 83, at p. 7, 14.]

Plaintiff has not even attempted to explain the relevance of payments made by Donisi Jax to third party call centers. [Doc. No. 83, at pp. 15-17.] Without more, the

relevance of payments made by Donisi Jax to third party call centers is not obvious, and the Court will not attempt to determine relevance on plaintiff's behalf. Therefore, the Court finds that plaintiff has not met its burden of establishing relevance.

As mentioned above, a party opposing discovery must clarify, explain, and support its objections with "competent evidence." *Lofton v. Verizon*, 308 F.R.D. at 281. Although not supported by a declaration or other evidence estimating the time and cost of providing a full or partial response, Donisi Jax argues that this request is overly burdensome and disproportionate to the needs of the case, because it would be "extremely difficult" to provide a full and complete response to this request. [Doc. No. 83, at p. 16.] To retrieve information about payments to call centers would require Donisi Jax to "dig through thousands of pages of bank statement and records. . . ." [Doc. No 83, at p. 17.] Given plaintiff's failure to establish the relevance of payments to call centers, Donisi Jax requests that the Court deny plaintiff's request for an order compelling Donisi Jax to provide a full and complete response to Document Request No. 12.

Based on the foregoing, the Court finds that plaintiff's request for an order compelling Donisi Jax to provide a further response to Document Request No. 12 must be DENIED for failure to establish relevance. In addition, based on the information currently before the Court, it appears that requiring Donisi Jax to provide a further response to Document Request No. 12 would be overly burdensome and disproportionate to the needs of the case.

## VI. *Do Not Call List*.

**Document Request No. 18**: "All documents relating to [Donisi Jax's] internal 'Do Not Call' List." [Doc. No. 83, at p. 17.]

In response to Document Request No. 18, Donisi Jax made a number of non-specific, boilerplate objections. For example, Donisi Jax objects to this request as seeking documents that are irrelevant, confidential, and/or privileged. [Doc. No. 83, at p. 17.]

/ / /

However, Donisi Jax also responded that it would "produce its internal 'Do Not Call' list upon the entry of a protective order by this Court." [Doc. No. 83, at p. 17.]

In the Joint Motion, plaintiff argues that Donisi Jax's response is inadequate, because the request "seeks all documents relating to this list, not merely the list itself." [Doc. No. 83, at p. 17.] For the reasons outlined in the proceeding sections, this request is overly broad. On the other hand, plaintiff argues that Donisi Jax must produce "documents evidencing [Donisi Jax's] policies and procedures for creating, maintaining, or altering the list itself." [Doc. No. 83, at p. 17.] Thus, it appears that plaintiff has indicated a willingness to limit the scope of this overly broad request to the Do Not Call List and Donisi Jax's "policies and procedures for creating, maintaining, or altering the list itself." [Doc. No. 83, at p. 17.] In response, Donisi Jax represents in the Joint Motion that it "conducts all of its training in person; internal communication is done verbally instead of in writing; and [Donisi Jax's] employees do not have work email accounts. No responsive documents—other than the 'Do Not Call' list itself—exists." [Doc. No. 83, at p. 18.]

With respect to the Do Not Call List, there is no dispute for the Court to resolve at this time. Donisi Jax represented that it would disclose its Do Not Call List once a confidentiality Protective Order was entered. As noted above, the Court entered a confidentiality Protective Order in this case, so by the time this Order is entered, Donisi Jax should have already produced its Do No Call List. Therefore, under the circumstances presented, the Court finds that plaintiff's request for an order compelling Donisi Jax to provide a further response to Document Request No. 18 must be DENIED without prejudice. Plaintiff can raise this issue again if Donisi Jax does not produce the Do Not Call List as agreed.

On the other hand, the Court finds that Donisi Jax's response to Document Request No. 18 is incomplete. If the information provided by Donisi Jax in the parties' Joint Motion (*i.e.*, that no other responsive documents exist) were combined with its prior response to this request, the Court would find that Donisi Jax provided plaintiff with an

17cv1127-WQH(KSC)

adequate response to Document Request No. 18. However, simply including key responsive information in the Joint Motion is not enough. Plaintiff is entitled to a full and complete response to Document Request No. 18 that is signed pursuant to Federal Rule of Civil Procedure 26(g).[4] Therefore, the Court finds that plaintiff's request for an order compelling Donisi Jax to provide a further response to Document Request No. 18 must be GRANTED.

## VII. *Particular Telephone Activity.*

> ***Document Request No. 24***: "All documents evidencing all 'telephonic activity' of Michael Cugini on April 27, 2017." [Doc. No. 83, at p. 18.]

Donisi Jax made generalized, boilerplate objections to Document Request No. 24 and referred to its response to Special Interrogatory No. 8. [Doc. No. 83, at p. 18.] However, the response to Special Interrogatory No. 8 is not included in the parties' Joint Motion, so Donisi Jax's response to this request is somewhat unclear. According to Donisi Jax and plaintiff in the Joint Motion, Donisi Jax's response to Special Interrogatory No. 8 includes details about telephone activity with plaintiff on April 27, 2017, including telephone activity between plaintiff and Mr. Cugini on April 27, 2017. [Doc. No. 83, at p. 18-19.]

In the Joint Motion, plaintiff argues that Donisi Jax's response to Document Request No. 24 is inadequate, because Donisi Jax has not produced all responsive

---

[4]  Rule 26(g)(1) requires that each disclosure be signed by at least one attorney of record. By signing, the attorney certifies that to the best of his or her knowledge, information and belief "formed after a reasonable inquiry" each disclosure is complete and correct as of the time it is made and that the response is not interposed for any improper purpose such as to cause unnecessary delay or needlessly increase the cost of litigation. Fed.R.Civ.P. 26(g)(1)(A)&(B)(i)-(iii). Rule 26(g)(3) states that if a certification violates this rule "without substantial justification" the court "must impose" an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. Fed.R.Civ.P. 26(g)(3). The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation. Fed.R.Civ.P. 26(g)(3).

documents, which should include "all documents evidencing any lead transfers and, without limitation, all phone records showing the 'warm transfer' telemarketing calls fielded by Mr. Cugini/Miller" on April 27, 2017. [Doc. No, 83, at p. 19.] In other words, plaintiff is requesting that Donisi Jax produce documents detailing Mr. Cugini's "complete telephone activity on April 27, 2017." [Doc. No. 83, at p. 19.] Based on the information currently before the Court, the relevance of the requested documents is unclear. However, Donisi Jax does not make a viable challenge to relevance and only states that responsive documents will be included in responses to other document requests. As plaintiff contends, Donisi Jax must either state that the documents will be produced or state that no such documents exist (*see* Fed.R.Civ.P. 34(b)(2)(B)) and sign its responses pursuant to Federal Rule of Civil Procedure 26(g). Therefore, the Court finds that plaintiff's request for an order compelling Donisi Jax to provide a further response to Document Request No. 24 must be GRANTED.

## VIII. *Relevant Time Period.*

The Court notes that Interrogatory Nos. 3 and 4, as well as the other discovery requests at issue in the parties' Joint Motion, seek responses from Donisi Jax for the time period January 28, 2014 to the present. [Doc. No. 83, at pp. 4-5.] Although Donisi Jax objects to all of the discovery requests at issue as overly broad, unduly burdensome, and disproportionate to the needs of the case, neither party specifically addresses the time period at issue. [Doc. No. 83, at pp. 1-21.] The First Amended Complaint alleges that plaintiff received calls in violation of the TCPA between April 6, 2017 and May 10, 2017. He also alleges that he documented each of the calls he received during this time period. [Doc. No. 3, at pp. 9-13.] Although no specific facts or documentation are alleged, plaintiff claims he has been receiving calls from defendants "since early 2015." [Doc. No. 3, at p. 13.] The proposed class period alleged in the First Amended Complaint is January 28, 2015 to the present. [Doc. No. 3, at p. 5.] In the Joint Motion, Donisi Jax represented that it was incorporated on September 14, 2015. [Doc. No. 83, at p. 11.]

17cv1127-WQH(KSC)

Based on this information, it is apparent that plaintiff seeks discovery for more than three years before he began documenting calls he allegedly received from defendants, as well as for the one year period prior to the beginning of the proposed class period. Without more, it appears that the relevant time period is either September 14, 2015 or April 6, 2017 to the present, rather than January 28, 2014 to the present. However, since the parties did not address this issue, the Court declines to order Donisi Jax to respond to discovery requests for the period January 28, 2014 to the present and will leave it to counsel to meet and confer to reach agreement on the relevant time period for the discovery requests at issue in the parties' Joint Motion. Once again, it is counsel's responsibility to attempt to narrow or explain overly broad discovery requests, and if there is no apparent attempt to do so, the Court will not rewrite a party's discovery request to obtain the best result for that party.

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's request for an order compelling defendant Donisi Jax to provide further responses to certain interrogatories and document requests is GRANTED in part and DENIED in part as follows:

1.  Plaintiff's request for an order compelling Donisi Jax to provide further responses to Interrogatory Nos. 3 and 4 is DENIED without prejudice. Donisi Jax agreed to produce its agreements with third party lead vendors once a confidentiality Protective Order was entered. The Court recently entered a Protective Order. Plaintiff may request the Court's assistance once again if Donisi Jax does not produce the agreements with its third party lead vendors that provide live transfer leads and/or does not disclose contact information for these vendors and any associated call centers.

2.  Plaintiff's request for an order compelling Donisi Jax to provide further responses to Document Request Nos. 19 and 20 is DENIED. Under the circumstances presented, the Court finds that Donisi Jax provided an adequate response to these requests.

17cv1127-WQH(KSC)

3.      Plaintiff's request for an order compelling Donisi Jax to provide further responses to Document Request Nos. 10, 11, and 26 is GRANTED in part and DENIED in part.  Plaintiff's request is GRANTED to the extent it seeks an order compelling Donisi Jax to produce a document or documents that list the telephone numbers for all leads received from all of its third party live transfer lead vendors during the relevant time period.  Donisi Jax must produce the list to plaintiff ***no later than November 30, 2018***.  Plaintiff's request is DENIED to the extent it seeks an order compelling Donisi Jax to produce any other documents, such as telephone bills, or other documents or reports detailing all of its incoming and outgoing telephone calls during the relevant time period.

3.      Plaintiff's request for an order compelling Donisi Jax to provide a further response to Document Request No. 12 is DENIED for failure to establish relevance and because it appears it would be overly burdensome and disproportionate to require Donisi Jax to compile the requested information.

4.      Plaintiff's request for an order compelling Donisi Jax to provide a further response to Document Request No. 18 is GRANTED in part and DENIED in part. Plaintiff's request for an order compelling production of its Do Not Call List is DENIED without prejudice.  Donisi Jax represented it would produce its Do Not Call List once a Protective Order was entered.  The Court recently entered a Protective Order.  Plaintiff may raise this issue again only if Donisi Jax does not produce the Do Not Call List.  As outlined more fully above, plaintiff's request for an order compelling Donisi Jax to provide a complete response to Document Request No. 18 addressing the existence of any documents setting forth its policies and procedures about the Do Not Call List is GRANTED.  Donisi Jax shall provide plaintiff with a full and complete response to Document Request No. 18 that complies with Federal Rules of Civil Procedure 26(g) and 34(b)(2)(B) ***no later than November 30, 2018***.

5.      Plaintiff's request for an order compelling Donisi Jax to provide a full and complete response to Document Request No. 24 is GRANTED.  As outlined more fully

above, Donisi Jax shall provide plaintiff with a full and complete response to Document

Request No. 24 that complies with Federal Rules of Civil Procedure 26(g) and

34(b)(2)(B) **_no later than November 30, 2018_**.

     IT IS SO ORDERED.

Dated:  November 9, 2018

Hon. Karen S. Crawford
United States Magistrate Judge