1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KENNETH J. MOSER, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

HEALTH INSURANCE INNOVATIONS, INC., a Delaware corporation, et al.,

Defendants.

AND RELATED COUNTERCLAIMS.

Case No.:  17cv1127-WQH(KSC)

**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE:**

**DOCUMENT REQUESTS AND INTERROGATORIES SERVED ON PLAINTIFF BY DEFENDANT HEALTH INSURANCE INNOVATIONS, INC. (HII)**

**[Doc. No. 87.]**

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute.  [Doc. No. 87.]  In the Joint Motion, defendant Health Insurance Innovations, Inc. ("HII") seeks an order compelling plaintiff to provide further, substantive responses to certain document requests and interrogatories.  Plaintiff objects to these written discovery requests on various grounds.  [Doc. No. 83, at pp. 2-21.]  For the reasons outlined more fully below, the Court finds that HII's request for an order compelling plaintiff to provide

1

further responses to certain discovery requests must be GRANTED in part and DENIED in part.

### *Background*

The original class action Complaint was filed on June 5, 2017.  [Doc. No. 1.]  Plaintiff then filed a First Amended Complaint on June 7, 2017.  [Doc. No. 3.]  The First Amended Complaint includes two causes of action for violations of the Telephone Consumer Protection Act ("TCPA").  [Doc. No. 3, at pp. 29-31.]  Under the TCPA, it is unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . ."  47 U.S.C. § 227(b)(1)(A).  It is also unlawful under the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)."  47 U.S.C.§ 227(b)(1)(b).

In the first cause of action, plaintiff alleges that defendants violated the TCPA by making multiple, unauthorized calls to his cellular telephone using an automatic dialing system or artificial, pre-recorded voice starting on January 28, 2015.  [Doc. No. 3, at p. 30.]  The second cause of action alleges that defendants violated the TCPA by making multiple, unauthorized telephone calls to plaintiff's residential telephone line using an artificial or pre-recorded voice to deliver a message beginning on January 28, 2015.  [Doc. No. 3, at p. 31.]

According to the First Amended Complaint, defendant Health Insurance Innovations, Inc. (HII) is the "principle actor in a scheme to sell short term non-Affordable Care Act compliant medical insurance plans and other low quality insurance related services through fraud and deceit."  [Doc. No. 3, at p. 5.]  The scheme allegedly begins when agents under contract to HII make cold calls to consumers using an automatic dialing system and a pre-recorded message.  During the pre-recorded message, the consumer can

2

respond to prompts, such as "press 1."  [Doc. No. 3, at p. 6.]  The consumer will then be connected with a sales person "who will aggressively and deceitfully attempt to sell the [insurance] bundle."  [Doc. No. 3, at pp. 6-7.]  Although the First Amended Complaint explains that state regulators are involved in policing these practices, the autodialed/pre-recorded calls to cellular telephones and residential lines are also actionable because they violate the TCPA.  [Doc. No. 3, at pp. 8-9.]

Plaintiff used a spreadsheet to make a log of all of the autodialed/pre-recorded sales calls he received and attached it as Exhibit 1 to the First Amended Complaint.  The spreadsheet shows the dates and times of the calls and the associated caller identification information.  [Doc. No. 3, at p. 9.]  The First Amended Complaint also includes a fairly detailed summary of the calls.  For example, the First Amended Complaint alleges that plaintiff received fifteen autodialed, pre-recorded calls to his cellular telephones and his residential line from defendant Helping Hand during the period April 6, 2017 through May 10, 2017.  [Doc. No. 3, at pp. 9-13.]

Plaintiff also alleges in the First Amended Complaint that he received thirty-two autodialed, pre-recorded calls from defendant Nationwide Health Advisors between April 6, 2017 and May 10, 2017.  During at least one of these calls, plaintiff "feigned interest to determine the true identity of the caller" and was connected to a live sales representative.  [Doc. No. 3, at p. 11.]  He then "had to fake buying a policy since the caller would never identify his company. . . ."  [Doc. No. 3, at p. 12.]  After signing up for an insurance plan to determine the identity of the parties responsible for the autodialed calls, plaintiff received an e-mail from defendant HII.  A copy of the e-mail is attached as Exhibit 6 to the First Amended Complaint.  [Doc. No. 3, at pp. 18-19; Doc. No. 3-3, at pp. 1-2 (Exhibit 6).]  Plaintiff believes he has been receiving calls from the defendants in violation of the TCPA since "early 2015," but he has not documented all of the calls, so some of the specific dates and times of calls are unknown without the aid of discovery.  [Doc. No. 3, at p. 13.]  On June 27, 2014, in a separate case, plaintiff sued defendants HII and Unified Life Insurance Company, but the action was later settled.  [Doc. No. 3, at p. 19.]  A copy of the

settlement is attached as Exhibit 8 to the First Amended Complaint.  [Doc. No. 3-8 (Exhibit 8).]  The First Amended Complaint also alleges there are a number of outstanding "junk call complaints" against the defendants.  [Doc. No. 3, at pp. 20-21.]

The class allegations section of the First Amended Complaint indicates that plaintiff plans to seek certification of two sub-classes of plaintiffs:  (1) those who have received unauthorized, auto-dialed calls on their cellular telephones from defendants since January 28, 2015; and (2) those who have received unauthorized, auto-dialed calls on the residential telephone lines since January 28, 2015.  [Doc. No. 3, at p. 25.]

### ***Discussion***

**I.    *Scope of Discovery.***

In *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), the Ninth Circuit indicated that the following are elements of a TCPA claim:  (1) the defendant called a cellular telephone; (2) the call was made with an automatic telephone dialing system ("ATDS"); and (3) the recipient of the call did not give prior express consent.  *Id.* at 1043.  However, the *Meyer* case was decided in the context of a motion for preliminary injunction (*id.* at 1040), and the Ninth Circuit later stated in *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), that "prior express consent is an affirmative defense, not an element of a TCPA claim."  *Id.* at 1044 n.3.

"Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed.R.Civ.P. 26(b)(1).

If a party fails to answer written interrogatories or produce documents in response to written requests, the party seeking discovery may move for an order compelling disclosure.  Fed.R.Civ.P. 37(a)(3)&(4).  "While the party seeking to compel discovery

4

has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

Under Rule 26(b)(2)(C), "the court must limit . . . discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(i)&(ii). In addition, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of the disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . ." Fed.R.Civ.P. 26(C)(1)(A)-(G).

Federal Rule of Civil Procedure 33 states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. (b)(1)(3). In other words, parties have an obligation to respond to interrogatories to the fullest extent possible. "The grounds for objecting to an interrogatory must be stated with specificity." Fed.R.Civ.P. 33(b)(4). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). For example, objections must explain how an interrogatory is overly broad or unduly burdensome. *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002).

Federal Rule 34(b)(1)(A) states that a request for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P.

34(b)(1)(A).  Federal Rule 34(b)(2)(B) also provides that a party responding to a document request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.  The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. . . ." Fed.R.Civ.P. 34(b)(2)(B).  "An objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Fed.R.Civ.P. 34(b)(2)(B).  "[B]oilerplate objections to Rule 34 document requests are inappropriate."  *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 528 (S.D.W. Va. 2007).

## II.     *Request for a Forensic Examination of Plaintiff's Electronic Devices.*

Pursuant to Federal Rule of Civil Procedure 34, defendant HII requested that plaintiff produce for inspection and copying "all servers, computers, tablets, cellular and landline telephones, routers, wireless network equipment, reporting systems, databases and the equivalent containing electronically stored information and information contained on such systems."  [Doc. No. 87, at p. 9.]  The request specifically seeks inspection of any cellular or residential telephone or other device that uses or has used the telephone numbers identified by plaintiff in the First Amended Complaint.  The time period included in this request is January 1, 2013 through the present.  [Doc. No. 87, at pp. 9-10.]

Defendant HII argues there are several reasons why it should be permitted to inspect all of plaintiff's devices.  First, HII argues there is information on these devices that is directly relevant to the claims and defenses raised in the parties' pleadings.  [Doc. No. 87, at p. 11.]  According to HII, an inspection of plaintiff's devices would show whether he actually received the phone calls alleged in the First Amended Complaint. HII argues it does not have to rely on the veracity of the "written call log sheet" attached as an exhibit to the First Amended Complaint.  In addition, HII denies that it made any calls to plaintiff, and to the extent plaintiff is attempting to impose liability on HII based

6

on an agency theory, HII argues it is entitled to discover the identities of the party or parties who did make the subject calls to plaintiff.  [Doc. No. 87, at pp. 5, 12-13.]  Citing Sections 227(b)(1)(A) and 227(b)(10(B) of the TCPA, plaintiff argues that "[r]eceipt of the call is not an element of a TCPA violation," so it is unnecessary for HII to examine plaintiff's devices to confirm receipt of the alleged calls."  [Doc. No. 87, at p. 15.]  However, the authorities cited are not enough to convince the Court that evidence tending to show a plaintiff did not receive autodialed or prerecorded voice calls would be irrelevant in a TCPA case.

Second, HII argues there may be information on plaintiff's devices supporting one or more of its affirmative defenses, such as consent or inequitable conduct.  According to HII, plaintiff could have consented to receiving the calls identified in the First Amended Complaint by visiting certain websites, providing his telephone number, and clicking on consents or acknowledgments.  [Doc. No. 87, at p. 14.]  HII also suspects that plaintiff may have deliberately taken steps "to manufacture TCPA violations" and his devices would contain proof that he did so.  [Doc. No. 87, at p. 13.]  As a result, HII wants to inspect any cell phones that use or have used the cellular and residential telephone numbers identified in the First Amended Complaint for the following information: telephone calls received, caller ID information, recordings of any relevant calls, "opt in or opt out," consents or withdrawals, and landing pages or other communications showing plaintiff provided his numbers "for consumer goods and services."  [Doc. No. 87, at p. 14.]  HII also wants "to conduct a full forensic examination of plaintiff's computer without restrictions" for the following information:  "browsing history and interaction with websites to determine whether plaintiff provided consent to receive phone calls using an automated telephone dialing system or prerecorded message."  [Doc. No. 87, at pp. 14-15.]

Plaintiff objects to HII's request to inspect all of his devices as "massively overbroad, unduly burdensome, not proportional, [and] irrelevant. . . ."  [Doc. No. 87, at p. 10.]  He does not believe it is proportional or necessary to inspect "every electronic

device" he owns, particularly when he has already produced his own notes for the calls alleged in the First Amended Complaint and "*__will__* produce his carrier's monthly phone bills with the call detail reports for each month after a protective order [is entered]." [Doc. No. 87, at p. 15-16 (emphasis added).]  In plaintiff's view, his monthly phone bills are enough to identify the phone numbers used to make the relevant calls.  Plaintiff also argues that an inspection of all of his devices is disproportional to the needs of the case based on deposition testimony by a representative of defendant Donisi Jax.  According to plaintiff, a representative of defendant Donisi Jax testified in his deposition that if Donisi Jax was involved in any of the alleged calls to plaintiff, it would be easy for Donisi Jax to obtain "call information and purported consents" for any such calls.  [Doc. No. 87, at p. 16.]  Therefore, plaintiff argues there is simply no good reason for an inspection of every device he owns.  [Doc. No. 87, at pp. 19-20.]  Assuming plaintiff does or has produced his monthly phone bills with the call detail reports and other means are available to discover evidence relevant to the issue of consent, the Court agrees that defendant HII's request to inspect all of plaintiff's electronic devices is overly broad and disproportional to the needs of the case at this time.

Finally, plaintiff claims there are privilege and privacy issues, because the requested devices contain e-mails communications with counsel and irrelevant personal information that is protected by the right to privacy.  However, plaintiff expressed a willingness to "discuss a significantly narrowed inspection of the devices that contain relevant information. . . ."  [Doc. No. 87, at p. 11.]  In this regard, plaintiff states in the Joint Motion that he would agree to inspection by a "mutually agreeable," licensed, bonded third party expert pursuant to a "non-disclosure agreement" who would protect irrelevant private or personal information on the devices, and only turn over legitimately relevant, non-personal information to HII.  [Doc. No. 87, at pp. 11, 15.]  HII did indicate in the Joint Motion that it was willing to "limit the inspection" of plaintiff's devices to those identified in the First Amended Complaint.  [Doc. No. 87, at pp. 13.]  In addition, HII is willing to "limit the inspection to 2 days" by a forensic expert "to alleviate any

temporary inconvenience the inspection may cause" and to put privacy and privilege protocols in place to ensure protection of irrelevant information.  [Doc. No. 87, at p. 15.]  However, even with the proposed limits, HII still seeks an order compelling a very broad, direct inspection of plaintiff's devices [Doc. No. 87, at pp. 13-14] that is unjustified based on the facts and circumstances presented.

Rule 34(a)(1) permits a party to request inspection of "electronically stored information" that is "stored in any medium from which information can be obtained . . ." as long as the request is "within the scope of Rule 26(b)."  Fed.R.Civ.P. 34(a)(1).  However, "[i]nspection . . . of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. . . . Rule 34(a) with regard to documents and electronically stored information ***is not meant to create a routine right of direct access to a party's electronic information system***, although such access might be justified in some circumstances.  Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."  Fed.R.Civ.P. 34 advisory committee's note (2006 amendment) [emphasis added].  In other words, "Rule 34(a) does not give the requesting party the right to conduct the actual search."  *In re Ford Motor Co.*, 345 F.3d 1315, 1317 (11th Cir. 2003).  "Like the other discovery rules, Rule 34(a) allows the responding party to search his records to produce the required, relevant data."  *Id.*

"Forensic examination is generally regarded as a drastic step. . . ."  *Motorola Solutions., Inc. v. Hytera Commc'ns Corp.*, 314 F. Supp. 3d 931, 939 (N.D. Ill. 2018).  "[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures."  *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008).  "[S]ome kind of direct access might be permissible in certain cases."  *Id.*  For example, direct access could be appropriate if there is a "factual finding" by the Court of "improper conduct on the part of the responding party" or

intentional destruction of relevant electronic evidence. *John B. v. Goetz*, 531 F.3d 448, 460-461 (6th Cir. 2008); *In re Ford*, 345 F.3d at 1317.[1]

Here, there are insufficient facts to support an order compelling plaintiff to turn over all or even some of his electronic devices so that HII can have them examined and inspected by a forensics expert. In support of the request, HII does represent that plaintiff testified in his deposition that his computer automatically deletes his browsing history. [Doc. No. 87, at p. 14.] Standing alone, however, this is not enough to justify a full scale forensic examination of all or even some of plaintiff's electronic devices. Pursuant to Federal Rule of Civil Procedure 37(e), sanctions or curative measures are not available unless and until it can be shown there was: (1) a duty to preserve particular electronic information "in the anticipation or conduct of litigation;" (2) a failure to take reasonable steps to do so; (3) loss of electronic evidence that could not be restored or replaced through other discovery; (4) prejudice to any opposing party from the loss of the information. Fed.R.Civ.P. 37(e). Thus far, the Court has no reason to believe plaintiff had a duty to preserve the browsing history on his computer; that any relevant browsing

---

[1]    In *Advante International Corporation v. Mintel Learning Technology*, No. C05-01022-JW(RS), 2006 WL 1806151 (N.D. Cal. 2006), for example, the defendant filed a motion to compel a forensic examination of the plaintiffs' computer system. The defendant argued that a forensic examination was warranted because the plaintiffs were concealing evidence, misrepresenting facts, and engaging in misconduct. *Id.* at 1. The District Court denied the motion, explaining as follows: "Had [defendant] made the same basic accusations in an earlier age, its claims of incomplete document production, inconsistencies, or even perjury and destruction of evidence, would not automatically entitle it to an order permitting it to enter [plaintiffs'] offices to rummage through filing cabinets and desks. The relief [defendant] is asking for here is no different and no more warranted. Furthermore, notwithstanding the breadth of accusations [defendant] has leveled, it has not presented specific, concrete evidence of concealment or destruction of evidence sufficient to conclude that a forensic examination of the vast scope it proposes is warranted at this juncture, even under an examination protocol that would protect the other parties' legitimate privacy and other interests." *Id.*

1  history would not be available to HII through other means; or that the loss of any
2  browsing history is prejudicial to HII.

3          As noted above, plaintiff provided the defendants with documentation on the
4  telephone calls that serve as the basis for this lawsuit in an attachment to the First
5  Amended Complaint.  He has also stated he would produce "his carrier's monthly phone
6  bills with the call detail reports for each month after a protective order decision is made."
7  [Doc. No. 87, at p. 16.]  Recently, the Court resolved the parties' dispute over the terms
8  of a confidentiality Protective Order [Doc. No. 99], and a Protective Order was entered.
9  [Doc. No. 100.]  Therefore, by the time this Order is entered, plaintiff should have
10 produced copies of his monthly phone bills.  [*See* Doc. No. 99, at p. 9 (requiring any
11 party withholding documents or information from production in response to another
12 party's discovery requests while awaiting the entry of a confidentiality Protective Order
13 to produce any such documents or information within ten days).]  To the extent plaintiff's
14 electronic devices do contain specific, relevant electronically stored information, HII can
15 make a Rule 34 request for disclosure of that electronically stored information in "a
16 reasonably usable form" without requiring plaintiff to provide HII with direct access to
17 his devices.  Fed.R.Civ.P. 34(b)(2)(E).

18         Presumably, if plaintiff visited certain websites and then clicked on consents and
19 provided his telephone number, HII would have other means available to discover that
20 information.  As noted above, for example, plaintiff stated in the Joint Motion that a
21 representative of defendant Donisi Jax testified in his deposition that if Donisi Jax was
22 involved in any of the alleged calls to plaintiff, it would be easy for Donisi Jax to obtain
23 "call information and purported consents" for any such calls.  [Doc. No. 87, at p. 16.]  In
24 addition, as outlined more fully below, HII's Interrogatory No. 8 asks plaintiff to identify
25 any websites he visited and provided his personal information, such as his telephone
26 number, and this Order compels plaintiff to respond to this interrogatory.  [Doc. No. 87,
27 at p. 22.]
28 / / /

Based on the foregoing, the Court finds that HII's request for an order compelling plaintiff to make his electronic devices available to HII for an examination by a forensic expert must be DENIED.  Contrary to HII's contentions, there is no "routine right of direct access to a party's electronic information system."  Fed.R.Civ.P. 34, advisory committee notes (2006).  Rather, such access is the exception rather than the rule, and HII has not presented any facts that would justify an order permitting full and direct access to plaintiff's electronic devices.

### III.   *Discovery Re Plaintiff's Knowing or Willful Conduct Allegations*.

*HII's Interrogatory No. 6* states as follows:  "Identify and describe in detail all facts and circumstances showing that HII's alleged conduct (or that of its alleged agents) toward [plaintiff] was 'knowing' and/or 'willful' as alleged in the [First Amended] Complaint."  [Doc. No. 87, at p. 20.]

Plaintiff objected to Interrogatory No. 6 on various grounds and did not provide a substantive response.  [Doc. No. 87, at pp. 20-22.]  In the Joint Motion, plaintiff argues that it should not be compelled to respond to Interrogatory No. 6, because it "asks for legal conclusion" and because the First Amended Complaint already includes a number of specific factual allegations that could serve as the basis for a more appropriate interrogatory.  [Doc. No. 87, at p. 22.]  HII argues that plaintiff should be compelled to respond to this interrogatory, because it is entitled to discover the facts and circumstances that serve as plaintiff's allegations of knowing and willful conduct in violation of the TCPA.  [Doc. No. 87, at p. 21.]

Based on "information and belief," paragraph 103 of the First Amended Complaint alleges that "defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services."  [Doc. No. 3, at p. 24.]  Paragraph 104 claims "on information and belief" that "defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations."  [Doc. No. 3, at p. 25.]

/ / /

12

Federal Rule 33(a)(2) clearly states that: "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ." Fed.R.Civ.P. 33(a)(2). Federal Rule 33(b)(3) also states that: "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. 33(b)(3). However, "the court may order that the interrogatory need not be answered until designated discovery is complete. . . ." Fed.R.Civ.P. 33(a)(2).

If "[w]ell-tailored," contention interrogatories, such as Interrogatory No. 6, may "contribute meaningfully to clarifying the issues, narrowing the scope of the dispute, or setting up early settlement discussions. . . ." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 335 (N.D. Cal. 1985). However, "[c]ontention interrogatories are too often used at the outset of litigation to harass the opposition knowing that the responses at that stage will produce little useful information." *Id.* at 335. In many instances, contention interrogatories are "'better used, if at all, near the completion of discovery and after utilization of other discovery devices." [Citation omitted.]'" *Id.* at 335-336.

Contention interrogatories "should not require the answering party to provide a narrative account of its case." *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-405 (D. Kan. 1998). Courts "will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses." *Id.* at 405. "Interrogatories may, however, properly ask for the 'principal or material' facts which support an allegation or defense." *Id.* "Interrogatories which do not encompass every allegation, or a significant number of allegations, of the Complaint, reasonably places upon the answering party 'the duty to answer them by setting forth the material or principal facts.' [Citation omitted.]" *Id.*

Although fact and class discovery are not bifurcated under the operative Scheduling Order in this case [Doc. No. 66, at p. 1], the focus of discovery at this stage of

the litigation is information needed to pursue or oppose a class certification motion. Interrogatory No. 6 does not appear to be related to class issues.  [Doc. No. 66.]  The Court has not set a deadline for completing all fact discovery.  In short, based on the status of the case at this point in time, plaintiff may not have had an opportunity to obtain enough discovery to fully and completely respond to Interrogatory No. 6.  Under these circumstances, plaintiff should provide HII with a substantive response, but the response may indicate that discovery is continuing and the response will be supplemented after additional discovery is completed.

As worded, Interrogatory No. 6 is also overly broad.  However, this interrogatory can easily be re-written as:  State the principal or material facts supporting the allegations in the First Amended Complaint "that HII's alleged conduct (or that of its alleged agents) toward [plaintiff] was 'knowing' and/or 'willful.'"  [Doc. No. 87, at p. 20.]

Based on the foregoing, the Court finds that HII is entitled to an order compelling plaintiff to provide a further response to Interrogatory No. 6, as re-worded, and to the extent possible at this time.  Of course, plaintiff is obligated to "supplement or correct its disclosure or response" "in a timely manner" as discovery proceeds pursuant to Federal Rule 26(e)(1)(A).

## IV.   *Discovery re Affirmative Defense of Consent.*

*HII's Interrogatory No. 8*, as re-written by HII in the Joint Motion, reads as follows:  "Provide the name of any website, including the URL, where [plaintiff] searched for insurance and provided [a] phone number through the website."  [Doc. No. 87, at p. 24.]

As narrowed in the Joint Motion, *HII's Document Request No. 20* seeks "[a]ll emails [plaintiff] received from any third party in which an email was sent to [plaintiff] after [he] entered any of [his] phone number[s] and email address into a website related to insurance."  [Doc. No. 87, at p. 42.]

As narrowed in the Joint Motion, *HII's Document Request No. 22* seeks "[a]ll internet/online, telephone and/or paper requests [plaintiff has] made for information concerning insurance offers during the relevant time

period in which [plaintiff] provided [a] phone number."  [Doc. No. 87, at p. 43.]

 *HII's Document Request No. 24* seeks production of:  "All consent and waiver forms completed by [plaintiff] in connection with all online/Internet, telephone, email and/or postal mail offers or advertisements, including but not limited to insurance-related offers and advertisements."  [Doc. No. 87, at p. 44.]

 *HII's Document Request No. 26* seeks production of:  "All documents reflecting the provision by [plaintiff] of any personal identifying information (*e.g.*, [plaintiff's] name, address, telephone number and the like) in connection with a website offering any form of medical insurance or other insurance upon the completion of requirements, whether via answering qualification questions, providing registration information, [or] entering [plaintiff's] personal information, etc."  [Doc. No. 87, at p. 46.]

 HII argues that the above-quoted discovery requests seek documents and information that are relevant to the issue of consent.  According to HII, individuals can consent to receiving autodialed or prerecorded voice calls by clicking a checkbox and entering personal information and a phone number on a website.  [Doc. No. 87, at p. 24.]  Even as narrowed, plaintiff objected to these discovery requests for various reasons and did not provide HII with any substantive responses.  [Doc. No. 87, at p. 23.]

 As to each of these requests, plaintiff argues they are overly broad because a consumer cannot provide consent by going to a website, providing personal information, including a telephone number, and clicking on a consent checkbox, unless the website clearly and specifically states "that it is consent to receive autodialed or prerecorded calls" and includes "the exact name of the party to whom consent is given."  [Doc. No. 87, at pp. 24, 42, 44, 45-46.]  It is also plaintiff's view that these discovery requests should be limited to health insurance websites.  As an example, plaintiff argues that he could not have consented to telephone calls about health insurance if he provided personal information on a life insurance website.  [Doc. No. 87, at pp. 24, 44.]  Plaintiff also believes these requests should be limited to websites where he actually "gave

consent." [Doc. No. 87, at pp. 24-25, 44, 46-48.]  In short, it is apparent that plaintiff has a narrow view of what can constitute consent for TCPA purposes and does not believe he should be required to produce anything that does not fit his view of what is required for consent to be given.

In support of his argument for a narrow interpretation of consent under the TCPA, plaintiff cites 47 C.F.R. § 64.1200(f)(8) and the Ninth Circuit's decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).  For the purposes at issue in the parties' Joint Motion, 47 C.F.R. § 64.1200(f)(8) states that "[t]he term prior express written consent means an agreement, in writing, bearing the signature of the person called that ***clearly authorizes*** . . ." the delivery of autodialed or prerecorded voice calls for advertising or telemarketing purposes.  47 C.F.R. § 64.1200(f)(8) (emphasis added).

In *Satterfield v. Simon & Schuster*, 569 F.3d at 946, the plaintiff became a registered user of "Nextones.com" in order to receive a free ringtone.  *Id.* at 949.  To register, she filled out a form and checked a box consenting to receive promotions "from Nextones affiliates and brands."  *Id.*  On the cell phone registered with Nextones, the plaintiff received a text message from defendant Simon & Schuster advertising a book release.  *Id.*  The Ninth Circuit concluded the plaintiff did not consent to receiving a text message from Simon & Schuster advertising a book release when she registered with Nextones, because Simon & Schuster did not fit the definition of "an affiliate" or a Nextone "brand."  *Id.* at 954-955.

Here, without more, there are insufficient facts for the Court to determine whether the *Satterfield* case is even relevant to the circumstances at issue in this case.  The issue of consent is a fact specific one.  As this Court reads it, the *Satterfield* case does not eliminate the possibility that plaintiff consented to receive the autodialed or prerecorded voice calls at issue by going to an insurance website, regardless of whether the website could be labeled a health insurance website, providing his personal information, including a phone number, and clicking on a consent box.  Obviously, a lot would depend on the wording of a particular consent box and other surrounding facts.  At this stage of

the litigation, HII is entitled to pursue its theory of the case, and this Court's role is to determine relevance under Federal Rule 26(b)(1).  In short, the authorities cited by plaintiff are not enough to convince the Court that HII is not entitled to an order compelling plaintiff to provide full and complete responses to Interrogatory No. 8, Document Request Nos. 20 and 22, as narrowed in the Joint Motion, and Document Request No. 24.  Therefore, the Court finds that HII's request for an order compelling plaintiff to provide further responses to these discovery requests must be GRANTED.

## V.    *Discovery Re Plaintiff's Business Activities and Affiliations.*

**HII Interrogatory No. 9** seeks the following for each telephone number identified in the First Amended Complaint:  "(a) the percentage of the amount of time the telephone number was used to conduct business purposes or otherwise for the conduct of business, as opposed to personal use; (b) any instances in which [these telephone numbers were] disseminated in connection with the conduct of business or for promotional purposes, as opposed to personal use, such as, for example, on stationery, letterhead, correspondence, advertisements, fliers, email signatures, business or occupational registrations, business or occupational filings, and business cards." [Doc. No. 87, at p. 25.]

Similarly, **HII's Document Request No. 12** seeks "[a]ll documents reflecting the dissemination, use and/or the nature of such use, of the telephone number(s) at which [plaintiff claims] to have received the telephone calls that are the subject of the Complaint, regardless whether [plaintiff claims] to have received such calls from or on behalf of HII, including but not limited to stationery, letterhead, correspondence, advertisements, fliers, email signatures, websites, business or occupational registrations, business or occupational filings, and business cards."  [Doc. No. 87, at p. 37.]

**HII's Document Request No. 30** seeks the following information for "each electronic device used by [plaintiff] during the relevant time periods: (a) the date a communications service account was established for the device; (b) the name, address and telephone numbers of all persons and/or entities that established the account; (c) the current owner, subscriber and/or bill payer(s) for the account, and the date (if any) that the account was transferred to [plaintiff] since its establishment; (d) all physical addresses, telephone numbers and email addresses associated with the account since its

17

inception; (e) the types of devices and browser types used on the device; (f) the date and time for each connection/session on each device; and (g) a detailed record of every IP (Internet Protocol) address that has accessed the device's account during the relevant time periods, and the date and time each access occurred."  [Doc. No. 87, at p. 48.]

*HII's Document Request No. 48* seeks "[a]ll documents that show the names of the owners or officers of the business Marketing Support Systems."  Doc. No. 87, at p. 57.]

*HII's Document Request No. 49* seeks "[a]ll documents that show the type of business in which Marketing Support Systems is engaged."  [Doc. No. 87, at p. 59.]

*HII's Document Request Nos. 50 and 51* seeks production of all documents showing the telephone numbers that Marketing Support Systems provided to the San Diego Chamber of Commerce, Better Business Bureau, City Search, and the Yellow Pages.  [Doc. No. 87, at p. 61.]

Plaintiff objected to these discovery requests on various grounds and did not provide HII with any substantive responses or responsive documents.  Plaintiff has also stated that responsive documents are being withheld from production based on its objections.  Relevance is plaintiff's main objection to these discovery requests. However, plaintiff also argues that these requests are overly broad, unduly burdensome, and disproportionate to the needs of the case.  [Doc. No. 87, at pp. 25-26; 32-33; 48-49.]

HII argues that information about plaintiff's business interests and activities and the use of his devices are relevant to the class issues of typicality and adequacy of representation and may also be relevant to its defenses other than consent, such as inequitable or wrongful conduct by plaintiff.  In this regard, HII suspects that plaintiff deliberately took steps to register his phone numbers "to manipulate TCPA violations." [Doc. No. 87, at p. 13.]  Based on the information presented in the Joint Motion, HII's suspicion is based on evidence it uncovered indicating that plaintiff is "a sophisticated TCPA plaintiff and is personally involved in the telemarketing industry."  [Doc. No. 87, at p. 14.]

In support of its suspicions about plaintiff, HII submitted a Declaration signed by counsel, which states as follows:  "According to the Better Business Bureau (BBB), Marketing Support Systems provides telemarketing services, lead generation, and marketing campaigns" and "is owned by [plaintiff]."  [Doc. No. 87-1, at pp. 2-3.] Attached to the Declaration is a business profile for Marketing Support Systems from the Better Business Bureau's website.  [Doc. No. 87-1, at pp. 62-64.]  The profile indicates that Marketing Support Systems "offers lead generation and marketing campaigns" and has been accredited by the Better Business Bureau since June 30, 1998.  [Doc. No. 87-1, at p. 62.]  The profile indicates that the owner of the business is "Ken Moser."  [Doc. No. 87-1, at p. 63.]  The phone number shown on the profile for this business is the same as one of the cellular telephone numbers listed in the First Amended Complaint that allegedly received autodialed and pre-recorded calls in violation of the TCPA.  [Doc. No. 3, at pp. 9-11.]

HII also alleges that the same cell phone number is advertised as a business phone number in the Yellow Pages.  [Doc. No. 87, at p. 27.]  In addition, HII suspects that plaintiff "uses a porting or call forwarding system to manufacture TCPA claims."  [Doc. No. 87, at p. 27.]  However, the Declaration submitted by HII does not fully explain the basis for this belief or how plaintiff could have used "a porting or call forwarding system" or registration of his telephone numbers "to manipulate TCPA violations." [Doc. No. 87, at p. 13, 27.]

Plaintiff does not dispute HII's evidence of his involvement in the telemarketing industry.  Nor does plaintiff directly address HII's theory that his telephone numbers could have somehow been registered in order to "manipulate" TCPA violations.  [Doc. No. 87, at p. 15-20.]  Rather, plaintiff disputes the relevance of the requested documents and information on several other grounds.  First, plaintiff contends that the TCPA does not distinguish between calls to businesses and personal telephone numbers so the only facts that matter are whether autodialed or prerecorded voice calls were transmitted without consent.  [Doc. No. 87, at pp. 28, 38.]  Second, plaintiff believes that

dissemination of any of plaintiff's telephone numbers in connection with a business could not constitute consent under the TCPA.  [Doc. No. 87, at p. 29.]  Third, plaintiff believes it is irrelevant whether he is a knowledgeable TCPA litigant or "professional plaintiff," because courts have concluded there is no "amateur's only" rule in TCPA litigation. [Doc. No. 87, at pp. 19, 33, 38.]  Fourth, plaintiff argues that defenses such as inequitable or wrongful conduct do not justify the requested discovery, because HII has not cited any case law indicating these common law defenses apply in TCPA cases.  [Doc. No. 87, at p. 16.]  In any event, plaintiff states that he "has already produced his phone bills," which indicate whether a particular phone number is used in connection with a business.  [Doc. No. 87, at pp. 25-26.]

As plaintiff contends, some Federal Courts have rejected arguments that a "professional plaintiff" either lacks standing to sue or cannot adequately represent the interests of a class in consumer litigation.  In *Murray v. GMAC Mortgage Corporation*, 434 F.3d 948 (7th Cir. 2006), for example, the Seventh Circuit rejected an argument that a "professional plaintiff," who had previously filed nine suits, was not a suitable representative to adequately represent the rights of the proposed class in a Fair Credit Reporting Act case, because she and her counsel would only be interested in the "quick buck" from a settlement.  *Id.* at 954.  In other words, being a so-called "professional plaintiff" does not, standing alone, disqualify an individual from serving as a class representative.

In a more recent case, *Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F.Supp.3d 1187 (M.D. Tenn. 2017), the defendants argued that the "professional TCPA plaintiff" lacked constitutional standing to sue as there was no real injury. According to the defendants, the plaintiff was "cultivating" claims, because he faked interest in the calls to learn the identity of the callers; was "very good at eliciting information from the callers that he could later use in [his] lawsuit; and was motivated by "the prospect of reaping a reward rather than simply vindicating or receiving restitution for his constitutionally sufficient injury."  *Id.* at 1194-1195.  The District Court disagreed,

20

concluding that "[n]othing in the Constitution . . . requires a plaintiff to be a naif. Litigation is not college athletics: there is no 'amateurs only' rule." *Id.* at 1195, quoting *Murray v. GMAC*, 434 F.3d at 954. A "professional plaintiff" does not forfeit his right to sue just because the alleged calls "were not truly unwanted." *Id.* at 1196.] "The determinative issue" is not the "professional plaintiff's" motivations for filing suit "but whether he was injured." *Id.* at 1196. On the facts alleged, an ordinary consumer "would have established a concrete and particularized injury-in-fact based on the defendants' intrusion upon his rights to privacy and seclusion." *Id.* According to the District Court, the appropriate constitutional question on the issue of standing is "whether a protected right was invaded, not whether the plaintiff subjectively considered the injury worth the eventual reward." *Id.* at 1196.

On the other hand, in cases involving more compelling facts and circumstances, some courts have reached different results. Particularly in light of the supporting Declaration and facts submitted by HII, some of these other cases support HII's contention that the types of documents and information it seeks in response to the above-quoted discovery requests are relevant. As HII contends, the requested discovery may be key to resolving issues such as standing and/or typicality (*i.e.*, whether the named plaintiff's claims are typical of the class so that he "will fairly and adequately protect the interests of the class" as required under Federal Rule 23(a)(4)).

In *CE Design Limited v. King Architectural Metals*, 637 F.3d 721 (7th Cir. 2011), for example, the Seventh Circuit vacated a class certification order in a TCPA case about "unsolicited" fax advertisements and remanded the case for further proceedings. *Id.* at 723, 728. The defendant was a manufacturer of metal building components who faxed about 500,000 advertisements as part of a marketing campaign. *Id.* at 724. The plaintiff, a small civil engineering firm that had also filed about 150 class actions under the TCPA as part of its business plan, received two fax advertisements from the defendant. *Id.* at 723. The defendant argued that the plaintiff's claims were not typical of the class, because the plaintiff would be subject to a "consent" defense that would either be

21

peculiar to the plaintiff or to only a small subset of the plaintiff class.  There was evidence indicating the plaintiff advertised its fax number on its website and also authorized the publication of its fax number in a directory known as the *Blue Book of Building and Construction*.  To be listed in the directory, the plaintiff signed a subscriber form agreeing to allow contact via fax by other subscribers of the directory.  *Id.* at 725.  Therefore, the Seventh Circuit concluded there was a substantial question as to whether the representative plaintiff had expressly consented to the fax communications in question.  As a result, the Seventh Circuit ruled there was an error in treating the issue of "express consent" as "immaterial" to the determination of whether the representative plaintiff's claims were typical under Federal Rule 23(a) and whether the representative plaintiff could adequately represent the interests of the class.  *Id.* at 727.

In another case, *Stoops v. Wells Fargo Bank*, 197 F.Supp.3d 782 (W.D. Pa. 2016), the District Court concluded the TCPA plaintiff lacked standing and granted summary judgment in favor of the defendant.  *Id.* at 796-806.  Citing the plaintiff's lengthy deposition testimony, the District Court found the plaintiff was unable to establish Article III and/or prudential standing.  *Id.*  The plaintiff lived in Pennsylvania but purchased and maintained more than thirty pre-paid cell phones with Florida telephone numbers.  She specifically requested telephone numbers for areas in Florida she knew were economically depressed and would have a high percentage of people who would default on loans or credit cards.  *Id.* at 787-789, 799.  Two of the cell phone numbers previously belonged to customers of defendant who had defaulted on their loans and had consented to receiving auto-dialed calls or calls with a prerecorded voice.  *Id.* at 788.  The defendant made calls to these numbers in attempts to reach its customers.  *Id.* at 789.  The plaintiff admitted she filed TCPA actions as a business; purchased the cell phones in order to manufacture TCPA claims and for no other purpose; and deliberately purchased the phones to cause them to ring so she could file TCPA lawsuits.  *Id.* at 799, 800-801.  The plaintiff also testified she waited for the phones to ring and sometimes answered the calls and told the callers to stop but she hoped the calls would continue so she could treble her

claims for damages.  *Id.* at 799-800.  As a result of this evidence, the District Court concluded that the plaintiff did not have Article III standing, because the calls did not adversely affect her privacy rights and she did not suffer a true nuisance as she was not required to "tend to unwanted calls."  *Id.* at 800-802.  Alternatively, the District Court concluded that even if the plaintiff did in fact suffer an injury-in-fact and could establish Article III standing, the outcome of the case would be the same, because the plaintiff lacked prudential standing.  According to the District Court, the plaintiff's interests, "which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not 'among the sorts of interests [the TCPA was] specifically designed to protect.'"  *Id.* at 803-806, quoting *Chem. Serv., Inc. v. Envtl. Monitoring Sys. Lab.*, 12 F.3d 1256, 1262 (3d Cir. 1993).

In *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 376 (C.D. Cal. 2016), the District Court also concluded that a plaintiff's attorney who filed a TCPA lawsuit as the class representative was not a typical member of the class and could not adequately represent the interests of the class.  *Id.* at 381-383.  The attorney plaintiff, who had filed a number of TCPA lawsuits on behalf of clients, signed up to receive mobile text alerts offered through the defendant's marketing program, which were allegedly sent out using an automatic telephone dialing system.  *Id.* at 378.  A few months after subscribing for the text alerts, the attorney plaintiff unsubscribed so he would no longer receive the text alerts.  *Id.*  Apparently because of a glitch in the defendant's programming, the attorney plaintiff continued to receive the mobile alerts after opting out.  *Id.* at 378-379.  However, the circumstances suggested the attorney acted on inside information, as he signed up for the text alerts shortly after his law firm began sending demand letters to the defendant's subsidiary on behalf of several clients about a similar issue.  The attorney plaintiff then opted out of the text messages shortly after his law firm sent the final demand letter. There was also evidence indicating the attorney had no interest in the products being marketed in the text alerts and signed up only to find a TCPA violation that could support a lawsuit.  *Id.* at 381-382.  As a result, the defendant argued that the attorney plaintiff

could not have suffered an invasion of privacy, because he "hoped" he would continue to receive the text alerts after he opted out.  *Id.* at 382.  The District Court declined to certify a class, concluding that the attorney plaintiff's claims were not typical of the proposed class as required under Federal Rule 23(a).  In reaching this conclusion, the District Court relied on Ninth Circuit precedent indicating that the typicality requirement in Federal Rule 23(a) is not satisfied if there is a "danger" that a defense "unique" to the representative plaintiff could become the focus of the litigation and result in a disadvantage to absent class members.  *Id.* at 382, citing *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).  The District Court concluded there was such a "danger" in this case, because it was apparent the defendant would "argue at every opportunity that [the attorney plaintiff] fabricated this lawsuit."  *Nghiem,* 318 F.R.D. at 382.

Based on the foregoing, this Court cannot conclude that the types of documents and information HII seeks in response to Interrogatory No. 9 and Document Request Nos. 30, 48, 49, 50, and 51 are irrelevant to matters raised by the parties' pleadings.  HII is entitled to discover documents and information about the use and dissemination of the telephone numbers identified by plaintiff in the First Amended Complaint.  On the other hand, as outlined more fully below, Interrogatory No. 9 and Document Request Nos. 12, 30, 48, 49, 50, and 51 are all overly broad as written.  Therefore, the Court finds that HII's request for an order compelling plaintiff to produce documents and provide further responses to these request must be GRANTED in part and DENIED in part as outlined more fully below.

Federal Rule 34(b)(1)(A) states that a request for documents "must describe with reasonable particularity each item or category of items to be inspected."  Fed.R.Civ.P. 34(b)(1)(A).  "'All-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)."  *In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009).  *See also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-650 (10th Cir. 2008)

(indicating that "sweeping requests" should be discouraged and that requests for production should be narrowly tailored "for production of the fewest documents possible").

"When a request is overly broad on its face, the party seeking the discovery has the burden to show the relevancy of the request*." Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 542 (D. Kan. 2006). Generally, a discovery request without temporal or other reasonable limitations is objectionable on its face as overly broad. *See, e.g., Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014); *Johnson v. Kraft,* 236 F.R.D. at 541-542. A document request or interrogatory is also overly broad or unduly burdensome on its face if it: "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006). On the other hand, a discovery request will not be objectionable as overly broad if it uses an omnibus term to modify "a sufficiently specific type of information or group of documents." *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261-262 (E.D. Wisc. 2013). For example, in a wrongful employment termination action, a document request would be objectionable as overly broad if it sought all documents and e-mails referring or relating to the plaintiff and/or the allegations in the complaint or the defendant's defenses. *Id.* By contrast, a more specific document request in the same case would not be objectionable as overly broad if it sought production of all documents referring or relating to the defendant's decision to eliminate plaintiff's job. *Id.* at 262.

"Despite the overly broad nature of [a discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." *Moses v. Halstead*, 236 F.R.D. at 672. "This rule does not apply, however, and the Court will not compel further response, when inadequate guidance exists to determine the proper scope of the [discovery request]." *Id.* In addition, "[a] responding party is not generally required to conduct extensive research

/ / /

in order to answer an interrogatory, but a reasonable effort to respond must be made." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013).

The first problem with Interrogatory No. 9, and Document Request Nos. 12, 30, 48, 49, 50, and 51, as written, are that they are overly broad because they do not include any time limitations. Without more, the Court finds that all of these discovery requests must be limited to the period April 6, 2017, when plaintiff apparently began documenting the calls alleged in the First Amended Complaint [Doc. No. 3, at pp. 9-13; Doc. No. 3-1, at pp. 1-2], to June 5, 2017, the date the original Complaint was filed in this action [Doc. No. 1]. This time limitation does not apply to the extent the request seeks information about a discrete event that may have taken place before or after the time period April 6, 2017 through June 5, 2017. For example, Document Request No. 30 seeks certain information about each electronic device used by plaintiff, including "the date a communications service account was established for the device." [Doc. No. 87, at p. 48.] In response to Document Request No. 30, plaintiff must provide the dates as requested even if they may fall outside the time period April 6, 2017 through June 5, 2017.

Second, without more, Document Request No. 30 appears to be vastly overbroad in that it seeks at subsection (f) "the date and time for each connection/session on each device" and at subsection (g) "a detailed record of every IP (Internet Protocol) address that has accessed the device's account during the relevant time periods, and the date and time each access occurred." [Doc. No. 87, at p. 48.] Even assuming HII seeks production of electronically stored information in response to these subsections that plaintiff can access and then produce in a reasonably usable form pursuant to Federal Rule 34(b)(2)(D), the relevance of the broad scope of information being sought is not apparent. Without more, it appears that the data being sought would be irrelevant with very few exceptions, and there is nothing to indicate HII made any attempt to narrow the scope of subsections (f) and (g) of Document Request No. 30. Therefore, the Court finds that HII's request for an order compelling plaintiff to provide a further response to these subsections must be DENIED.

Third, Document Request Nos. 48, 49, 50, and 51 are still overly broad after applying the time limitations set forth above. Each of these requests use omnibus terms to refer to a broad range of documents and information. As a result, it is unclear what documents should be produced in response to these requests. Without the addition of further limitations, these requests, when read together, appear to seek virtually every document ever associated with or created by the business known as Marketing Support Systems. There is nothing to indicate HII attempted to narrow the scope of these requests. However, based on the relevance discussion above, the Court will narrow the scope of these requests to avoid further litigation on this topic. Accordingly, the Court finds that plaintiff's request for an order compelling plaintiff to provide further responses to Document Request Nos. 48, 49, 50, and 51 must be GRANTED in part and DENIED in part as follows.

First, HII's request for an order compelling plaintiff to produce documents responsive to Document Request Nos. 48 and 49 is GRANTED to the extent HII seeks production of any official corporate documents, such as ownership or stock certificates, articles of incorporation, bylaws, or meeting minutes that reveal: (1) the identities of any owners or officers of the business Marketing Support Systems during the period April 6, 2017 through June 5, 2017; and (2) the type of business Marketing Support Systems engaged in during the period April 6, 2017 through June 5, 2017. HII's request for an order compelling production of any other documents in response to Document Request Nos. 48 and 49 is DENIED for failure to establish relevance.

Second, HII's request for an order compelling plaintiff to produce documents responsive to Document Request Nos. 50 and 51 is GRANTED to the extent HII seeks production of any form or application completed on behalf of the business known as Marketing Support Systems during the years 2016, 2017, or 2018 and then submitted to the San Diego Chamber of Commerce, the Better Business Bureau, City Search, and/or the Yellow Pages for the purpose of allowing any of these entities to include Marketing Support Systems and its phone number(s) in any type of business or phone directory or

on a website accessible by the public or other businesses.  HII's request for an order compelling production of any other documents in response to Document Request Nos. 50 and 51 is DENIED for failure to establish relevance.

## VI.   *Other Claims and Lawsuits.*

**HII's Interrogatory No. 10** seeks disclosure of any lawsuits, arbitrations, or court proceedings involving the TCPA in which plaintiff was a party.  [Doc. No. 87, at p. 29.]

Similarly, **HII's Interrogatory No. 12** seeks disclosure of any communications, such as demand letters from plaintiff to private or governmental entities, complaining of TCPA violations or violations of similar state laws.  [Doc. No. 87, at p. 31.]

**HII's Interrogatory No. 23** also seeks identification of TCPA lawsuits or claims plaintiff has settled or resolved in his favor, along with the amounts of any monetary settlements received and the identities of any parties who paid any settlement amounts.  [Doc. No. 87, at p. 35.]

**HII's Document Request No. 36** seeks production of:  "All complaints for any lawsuit or court proceeding (other than this lawsuit) in which [plaintiff] [has] been a plaintiff or petitioner or claimant at any time where the claims in the lawsuit or court proceeding involved the TCPA." [Doc. No. 87, at p. 52.]

**HII's Document Request No. 37** seeks "[a]ll correspondence [plaintiff] [has] sent or which [was] sent on [plaintiff's] behalf to any company, entity or attorney (other than [plaintiff's] attorneys) that discuss the TCPA."  [Doc. No. 87, at p. 53.]

**HII's Document Request No. 39** seeks production of deposition transcripts when plaintiff was the deponent and was questioned about the TCPA, autodialing, auto dialers, pre-recorded messages or Do No Call Lists. [Doc. No. 87, at p. 55.]

Plaintiff objected to Interrogatory Nos. 10, 12, and 23 and Document Request Nos. 36, 37, and 39 and did not provide HII with any substantive responses.  [Doc. No, 87, at pp. 29-30; 32-33; 52-54.]  In response to Document Request Nos. 36, 37, and 39,

///

plaintiff further stated that he is withholding responsive documents from production based on the objections.  [Doc. No. 87, at p. 52, 54, 56.]

HII contends that the documents and information sought in response to these discovery requests are relevant to matters of credibility, such as whether plaintiff can adequately represent the interests of the class given his purported involvement in other TCPA lawsuits.  [Doc. No. 87, at pp. 30-31; 33, 52, 54, 56.]  In the Joint Motion, plaintiff agreed to limit the time period of these requests to January 1, 2010 through the present. [Doc. No. 87, at p. 31.]

Plaintiff argues that his purported involvement in other TCPA or similar matters is irrelevant.  In support of this argument, plaintiff states that "other circuits have expressly repudiated the 'professional plaintiff theory'" and "litigation does not have an 'amateur's only' rule."  [Doc. No. 87, at pp. 31, 33.]  In other words, plaintiff's main objection to providing the information requested in these interrogatories is a belief that HII only seeks information about his involvement in other TCPA or similar matters to discredit him as a litigious party.

Although evidence of a party's involvement in prior litigation may not be admissible at trial to show litigiousness, evidence of a party's prior acts in the course of prior litigation may be admissible if relevant to other disputed issues such as motive, state of mind, and credibility.  *See, e.g., Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495-496 7th Cir 1998); (concluding in an employment discrimination case that evidence obtained from other lawsuits the plaintiff filed against prior employers was inadmissible to show litigiousness but was admissible on issues of motive, mental state, and credibility); *Outley v. City of New York*, 837 F.2d 587, 591-595 (2d Cir. 1988) (concluding inconsistent statements made by the plaintiff in prior lawsuits were properly admitted as impeachment evidence but evidence of the plaintiff's prior litigation history to show litigiousness was prejudicial because the case turned on the plaintiff's credibility).  *But see D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1039-1040 (9th Cir. 2008) (stating that courts considering cases involving alleged violations of

the Americans with Disabilities Act "must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation" because these cases are typically pursued by a small group of professional plaintiffs "who view themselves as champions of the disabled").  *See also Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 256 (S.D. Ind. 2002); *Travers v. Travenol Labs., Inc.*, 94 F.R.D. 92, 93–94 (N.D. Ill. 1982).

In this Court's view, HII has adequately identified the relevance of the types of documents and information it seeks in response to Interrogatory Nos. 10, 12, and 23 and Document Request Nos. 36, 37, and 39.  Contrary to plaintiff's assumption, HII does not simply seek information about his prior involvement in TCPA or similar matters in order to discredit him as a professional plaintiff or litigious person.  Rather, HII seeks the information in an attempt to uncover evidence on matters of credibility.  Despite his burden to do so, plaintiff has not adequately supported his argument that HII seeks information that is irrelevant in response to Interrogatory Nos. 10, 12, and 23 and Document Request Nos. 36, 37, and 39.

On the other hand, the Court finds that Document Request No. 37 is overly broad as written.  This request uses omnibus terms to modify a very broad category of documents, and other than the time limitation discussed above, there is nothing to indicate HII attempted to narrow the scope of this request.  Even if HII only seeks responsive documents for the period January 1, 2010 through the present, this request is worded so broadly that it could encompass documents that have nothing to do with this case.  Without a more specific description, it is not possible for plaintiff or the Court to determine the appropriate scope of the request.  Accordingly, the Court finds that HII's request for an order compelling plaintiff to provide a further response to Document Request No. 37 must be DENIED.

On the other hand, the Court finds that HII's request for an order compelling plaintiff to provide full and complete responses to Interrogatory Nos. 10, 12, 23, and Document Request Nos. 36 and 39 must be GRANTED.  Plaintiff must provide HII with

full and complete responses to these requests for the time period January 1, 2010 through the present.  As offered by HII in the Joint Motion, it is not necessary for plaintiff to produce copies of complaints filed in Federal cases.  Instead, plaintiff may produce a list of Federal cases showing the name of the case, the case number, and the name of the court where the action was filed.  However, for each state case, plaintiff must produce a copy of the complaint that was filed.  [Doc. No. 87, at p. 53.]

## VII.   *Identification of Potential Class Members.*

> ***HII's Interrogatory No. 14*** seeks identification of any person that plaintiff believes "may be a member of the purported class," as well as any information used to make this determination.  [Doc. No. 87, at p. 33.]

Plaintiff objected to Interrogatory 14 on various grounds and did not provide a substantive response.  [Doc. No. 87, at pp. 33-34.]  In the Joint Motion, HII argues that it is entitled to discover the identities and contact information of potential class members so they can be deposed to determine if plaintiff will be able to satisfy the commonality and typicality elements necessary to certify a class.  [Doc. No. 87, at p. 34.]  Plaintiff states in the Joint Motion that "[n]o class has been certified yet.  [Plaintiff] cannot begin to know which persons may be a member of whatever class is eventually certified."  [Doc. No. 87, at p. 35.]  In addition, plaintiff claims that he cannot answer the question because it is "premised on a legal conclusion of a class definition in a case where the class has not been certified."  [Doc. No. 87, at p. 34.]  Plaintiff's response does not eliminate the possibility that he is aware of potential class members based on the proposed class or classes set forth in the operative First Amended Complaint.

As noted above, parties have an obligation to respond to interrogatories to the fullest extent possible, and "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. . . ." Fed.R.Civ.P. 33(a)(2).  Interrogatories should be answered if they have a "direct bearing on whether the class action may be maintained."  *Pittman v. Anaconda Wire & Cable Co.*, 408 F. Supp. 286, 296–97 (E.D.N.C. 1974).  "Disclosure of contact information for

putative class members is a common practice in the class action context." *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 588 (E.D. Cal. 2015). "Plaintiffs bear the burden of either making a *prima facie* showing that Rule 23 class action requirements are satisfied or that discovery is likely to produce substantiation of the class allegations." *Id.* Identities of putative class members are relevant to the class certification issues of numerosity, commonality, and typicality. *Id.*

In the typical case it is the plaintiff who seeks the identities of potential class members from a defendant at the class certification phase of discovery. However, the Court is not aware of any reason why a defendant cannot ask a plaintiff to identify potential class members based on the proposed class identified in the operative complaint. Of course, plaintiff cannot be compelled to produce information he does not have. Therefore, to the extent plaintiff has identified any potential class members based on the class or classes proposed in the operative First Amended Complaint, he must disclose the identities of those individuals as well as their contact information to HII. Accordingly, the Court finds that HII's request for an order compelling plaintiff to provide a full and complete response to Interrogatory No. 14 must be GRANTED.   If plaintiff and/or plaintiff's counsel have not identified any potential class members based on the class or classes proposed in the First Amended Complaint, plaintiff must so state in his response to Interrogatory No. 14.

## VIII.   *Damages Discovery*.

**HII's Document Request No. 16** seeks disclosure of any documentation, such as recordings, showing whether plaintiff ever made a demand to any of the defendants to terminate the calls to his cellular or residential telephone that were identified in the First Amended Complaint. [Doc. No. 87, at p. 39.]

**HII's Document Request No. 33** seeks production of:  "All documents reflecting and/or supporting the damages and/or harm, economic or otherwise, alleged in the [First Amended] Complaint, including but not limited to documents regarding any attempts to mitigate such damages." [Doc. No. 87, at p. 50.]

Plaintiff objected to these requests on various grounds and did not provide HII with any substantive responses.  Plaintiff is also withholding responsive documents from disclosure based on the objections. [Doc. No. 87, at pp. 39-40.]

With respect to Document Request No. 16, HII argues there are two reasons why it is relevant whether plaintiff ever contacted any of the defendants to demand the termination of calls to his cellular or residential telephones.  First, HII's theory is that plaintiff "did not have an issue with receiving phone calls to his cell phone or landline," because he "wanted to generate as many calls as possible to manufacture TCPA claims." [Doc. No. 87, at p. 40.]  Plaintiff does not dispute HII's theory that he wanted to generate as many calls as possible, but argues that the requested information is irrelevant because "other circuits have expressly repudiated the 'professional plaintiff theory.'"  [Doc. No. 87, at p. 40.]

Second, HII contends it is relevant to mitigation of damages whether plaintiff made any demand for the calls to stop.  [Doc. No. 87, at p. 40.]  Plaintiff argues that "no court has ever held [mitigation of damages] to apply to the federal TCPA statute."  [Doc. No. 87, at p. 41.]  However, at this stage of the litigation, HII is entitled to pursue its theory of the case, and this Court's role is to determine relevance under Federal Rule 26(b)(1). Plaintiff has not cited any authority indicating that mitigation of damages evidence could never be relevant in a class action involving alleged violations of the TCPA.  Therefore, the Court finds that HII's request for an order compelling plaintiff to provide a full and complete response to Document Request No. 16 must be GRANTED.

With respect to Document Request No. 33, plaintiff argues that HII is not entitled to an order compelling the production of damages documents in response to this request, because "the First Amended Complaint has already elected statutory damages which are set by the statute.  Documents are withheld on the basis of this objection."  [Doc. No. 87, at p. 50.]  In the Joint Motion, plaintiff also argues that damages are not an element of a TCPA claim since the Ninth Circuit's decision in *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037 (9th Cir. 2017), which held that "[u]nsolicited telemarketing phone calls or

text messages, by their nature, invade the privacy and disturb the solitude of their recipients.  A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'"  *Id.* at 1043.  In addition, plaintiff represents that the First Amended Complaint only includes allegations about "economic harm" because it was drafted prior to the Ninth Circuit's decision in *Van Patten*.  [Doc. No. 87, at p. 51.]

"Consumers who receive calls prohibited by section 227(b)(l)(A)(iii) may recover ***the greater of their actual monetary loss or $500 per violation*** and treble damages where a violation is willful or knowing.  *Id.* § 227(b)(3).  *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 923 (C.D. Cal. 2018) (emphasis added).  As HII points out in the Joint Motion, paragraph 102 of the First Amended Complaint states as follows:  "As a proximate result of these [calls from defendants], ***plaintiff suffered damage in an amount according to proof***, ***but no less than 5% of his monthly phone bills in late 2016 and throughout 2017*** since defendants calls constituted 5% or more of the total calls to his phone during the heights of their junk calling campaign in those two months."  [Doc. No. 3, at p. 24 (emphasis added).]  In other words, plaintiff's position on the issue of damages is unclear.  Although plaintiff's response to Document Request No. 33 states "the First Amended Complaint has already elected statutory damages which are set by statute" [Doc. No. 87, at p. 50], this response conflicts with paragraph 102 of the First Amended Complaint.

Based on the foregoing, the Court finds that HII's request for an order compelling plaintiff to provide a full and complete response to Document Request No. 33 must be GRANTED.  As long as the First Amended Complaint even suggests that plaintiff seeks anything other than statutory damages, such as the economic harm referred to in paragraph 102, defendant is entitled to discover the basis for those damages.  Therefore, the Court finds that HII's request for an order compelling plaintiff to provide a full and complete response to Document Request No. 33 must be GRANTED.

/ / /

### *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that defendant HII's request for an order compelling plaintiff to provide further responses to certain interrogatories and document requests is GRANTED in part and DENIED in part as follows:

1.    Defendant HII's request for an order compelling a forensic examination of plaintiff's electronic devices is DENIED, because HII has not provided sufficient facts to justify an order permitting direct access to plaintiff's electronic devices.

2.    Defendant HII's request for an order compelling plaintiff to provide a full and complete response to Interrogatory No. 6, as narrowed, is GRANTED.  Plaintiff shall respond to the following interrogatory:  State the principal or material facts supporting the allegations in the First Amended Complaint that HII's alleged conduct (or that of its alleged agents) toward plaintiff was knowing and/or willful.

3.    Defendant HII's request for an order compelling plaintiff to provide full and complete responses to Interrogatory No. 8, Document Request Nos. 20 and 22, as narrowed in the Joint Motion, and Document Request No. 24 is GRANTED.

4.    Defendant HII's request for an order compelling plaintiff to provide full and complete responses to Document Request Nos. 48, 49, 50, and 51 is GRANTED in part and DENIED as follows:

a.    Defendant's request for an order compelling plaintiff to produce documents responsive to Document Request Nos. 48 and 49 is GRANTED to the extent HII seeks production of any official corporate documents, such as ownership or stock certificates, articles of incorporation, bylaws, or meeting minutes that reveal:  (1) the identities of any owners or officers of the business Marketing Support Systems during the period April 6, 2017 through June 5, 2017; and (2) the type of business Marketing Support Systems engaged in during the period April 6, 2017 through June 5, 2017.  HII's request for an order compelling production of any other documents in response to Document Request Nos. 48 and 49 is DENIED for failure to establish relevance.

/ / /

    b. Defendant's request for an order compelling plaintiff to produce documents response to Document Request Nos. 50 and 51 is GRANTED to the extent HII seeks production of any form or application completed on behalf of the business known as Marketing Support Systems during the years 2016, 2017, or 2018 and then submitted to the San Diego Chamber of Commerce, the Better Business Bureau, City Search, and/or the Yellow Pages for the purpose of permitting any of these entities to include Marketing Support Systems and its phone number(s) in any type of business or phone directory or on a website accessible by the public or other businesses.  HII's request for an order compelling production of any other documents in response to Document Request Nos. 50 and 51 is DENIED for failure to establish relevance.

  5. Defendant HII's request for an order compelling plaintiff to provide a further response to Document Request No. 37 is DENIED, because the request is overly broad and it is not possible for the Court to determine the appropriate scope for the request.

  6. Defendant HII's request for an order compelling plaintiff to provide full and complete responses to Interrogatory Nos. 10, 12, 23, and Document Request Nos. 36 and 39 must be GRANTED.  Plaintiff must provide HII with full and complete responses to these requests for the time period January 1, 2010 through the present.  As offered by HII in the Joint Motion, it is not necessary for plaintiff to produce copies of complaints filed in Federal cases.  Instead, plaintiff may produce a list of Federal cases showing the name of the case, the case number, and the name of the court where the action was filed. However, for each state case, plaintiff must produce a copy of the complaint that was filed.

  7. Defendant HII's request for an order compelling plaintiff to provide a full and complete response to Interrogatory No. 14 is GRANTED.

  8. Defendant HII's request for an order compelling plaintiff to provide full and complete responses to Document Request Nos. 16 and 33 is GRANTED.

/ / /

/ / /

1    9.      Plaintiff shall comply with this Order ***no later than January 11, 2019***.

2    IT IS SO ORDERED.

3    Dated:  December 21, 2018

4

5                                                    Hon. Karen S. Crawford
                                                     United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28