Christopher J. Reichman SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-886-0252
Email: JustinP@prato-reichman.com

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>HEALTH INSURANCE INNOVATIONS, INC., et. al.,<br><br>        Defendants. | Case No.: 17-cv-1127-WQH-KSC<br><br>**PLAINTIFF'S REPLY TO DEFENDANT HEALTH INSURANCE INNOVATION S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Honorable William Q. Hayes<br>Motion Date: January 7, 2019<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

i

# I.  INTRODUCTION

This reply is filed by Plaintiff, Kenneth Moser, ("Plaintiff" or "Moser") in support of Plaintiff's Motion for Class Certification and to refute the arguments presented by the Defendant Health Insurance Innovations ("HII") in its opposition brief.   For the reasons discussed in this motion and the briefing in Defendants' improper late-filed Motion to Deny Certification, the Court should certify a class.

# II.  ARGUMENT

A.  Defendants Arguments under *Bristol-Myers Squibb Co. v. Superior Court of California* are tardy, not on point and that case does not apply in this situation.

Defendant HII tries to raise a jurisdictional challenge at this late phase based on *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) ("*BMS*").  Defendant HII filed their one allowed jurisdictional challenge in a motion to dismiss on July 21, 2017.  [Dckt. No. 21].  But BMS was decided on June 19, 2017 and was the subject of considerable legal press discussion.  Federal Rule of Civil Procedure 12(g)(2) bars HII from making another motion attempting to raise a jurisdictional challenge that was available to them at the time they made their Rule 12 motion.  HII has waived further bites at this apple.

Defendant also seriously misconstrues the scope and holding of *BMS*.  *BMS* was a state court action involving consolidated mass tort claims, wherein some of the **named** plaintiffs were California residents and the majority were from other states.  The Supreme Court expressly did not address federal court jurisdiction nor Rule 23 federal class actions which involved **unnamed** plaintiffs. *Id*. at 1783-84, and at 1789 n.4 ( Sotomeyer,J. dissenting).  The defense bar has since tried to extend *BMS* to class actions even though the jurisdictional requirements of named an unnamed class members under Rule 23 is long settled law.

The vast majority of District Courts, with the exception of the Northern District of Illinois, have declined to extend the *BMS* holding to unnamed class members in Rule 23 cases. In *Micheal Knotts v Nissan North America, Inc.*, -- F.Supp.3d --, 2018 WL 4922360 (D. Minn. Oct. 10, 2018), Judge Susan Nelson surveyed the various post-*BMS* rulings in a motion hearing addressing the same *BMS* argument presented here.  She stated, "[defendant] relies upon a line of cases from the Northern District of Illinois . . . Outside of that district court, however, very few courts have extended BMS to unnamed class members, and one of the cases addressed the issue only briefly in a footnote." *Id.*, at *13.

The Southern District of California has already ruled against the *BMS* argument raised here.  *In Re Morning Song Bird Food Litigation*, Case No. 12-cv-1592-JAH-AGS, 2018 WL 1382746, at *5 (S.D. Cal., Mar. 19, 2018).  Judge Houston ruled, like most other District Courts, that BMS is limited to mass torts and does not upset all the long settled law involving Rule 23 unnamed plaintiffs. Id., at *5 (internal quotation and citation omitted).

Judge Houston and the judges in the large majority of District Courts are correct not to extend BMS beyond mass torts where all plaintiffs are named plaintiffs because federal courts have long assumed jurisdiction over nationwide classes with unnamed out-of-district plaintiffs. *See, e. g.*, *United States v. Will*, 449 U.S. 200, 101 S.Ct. 471, 66 L.E.2d 392 (1980); *Califano v. Yamasaki*, 442 U.S. 682, 701-03, 99 S.Ct. 2545, 2558-59, 61 L.Ed.2d 176 (1979); *McClure v. Harris*, 503 F.Supp. 409, 415 (N.D.Cal.1980); *Philadelphia Elec. Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968).  Extension of *BMS* to Rule 23 class actions would overruled decades of precedent and common practice. The Supreme Court cannot be imagined to have made such a sweeping change without a far more clear and conspicuous overruling of prior precedent.

Furthermore, the argument would also render Rule 23 near meaningless. The procedural benefits to class actions, namely to aggregate multiple similar

REPLY TO OPPOSITION - HII

claims, would become negligible and balkanized state by state.   It is not surprising that the courts have declined to gut Rule 23 by extending *BMS* to class actions. This Court should also decline Defendant's invitation.

B.  "Fail Safe does not exist in the Ninth Circuit, and is not in issue here.

The Ninth Circuit has never denied class certification for the so-called "fail-safe" class definition issue, and has made rulings that both explicitly and impliedly deny that there is any such issue.  The only published Ninth Circuit ruling expressly states that a truly "fail-safe" class definition is effectively impossible in real world litigation.  *Vizcaino v. U.S. District Court for the Western District of Washington*, 173 F.3d 713, 722 (9th Cir. 1999)("*Vizcaino*"), amended, 184 F.3d 1070 (9th Cir. 1999) (joining Fifth Circuit in rejecting the fail-safe logic). *Vizcaino* notes that the fail-safe argument fails because it is implicit in a class definition that the class members are persons "who claim" the defined violation. As, the Ninth Circuit recently noted, "our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe." *Melgar v. CSK Auto, Inc.*, 681 Fed.Appx. 605, 606 (9th Cir. 2017) (unpublished).  This comports with the holdings of *Vizcaino* and every other Ninth Circuit ruling, which recognize the theoretical possibility that a class could be "fail-safe", but discount it as a real world problem.  Furthermore, Plaintiff in this case explicitly added the language "who claim" thereby eliminating any such issue by making the implicit explicit. There is no fail safe issue and fail safe does not exist in the Ninth Circuit.

C.  All of the elements of Rule 23(a) and (b)(3) are met in this case.

1. Numerosity & Manageability

Defendants raise no attack on Numerosity or Manageability.

2. Typicality

Defendant HII's arguments to typicality in the instant motion parrot their improperly expanded briefing in their late-filed motion to deny class certification. [Dckt. No. 104]. Plaintiffs have already addressed these arguments at length in their opposition to this improper motion. [Docket No. 119]. The argument below summarizes this prior briefing.

While Defendants try to distract the Court from their massive illegal telemarketing campaign and FTC and insurance commissioner problems by slinging weak mud at Mr. Moser, they don't mention any actual **defense** that any of their accusations are remotely relevant to. Defendants rely almost entirely on securities law cases which have a special statutory defense not present in the TCPA, and a case which makes an improper analogy to securities law cases without recognizing the statutory difference. *See*, *Hanon v. Dataprods. Corp.*, 976 F.2d 497 (9th Cir. 1992) (securities law); *Nghiem v. Dick's Sporting Goods Inc.*, 318 F.R.D. 375 (C.D. Cal. 2016) (improper analogy to securities law). On the other hand, Plaintiffs cite to the seminal case on point, in which Judge Easterbrook repudiated any "professional plaintiff" argument and even had the foresight to state the difference between normal statutes and the securities statute with its special built-in defense. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

And these kind of petty ginned-up creditability issues have been seriously disapproved of by other courts. "Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class. None of the laughably alleged creditability issues Defendant's raise are remotely relevant to any defense." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728(7th Cir. 2011) ("*CE Design*"); *see also*, *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015(N.D. Cal. 2010) ("*Harris*") ("There is 'inadequacy only where the representative's credibility is questioned on issues

REPLY TO OPPOSITION - HII

directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.").

There simply is no creditability issue in this case and therefore, as proven in Plaintiff's Motion for Class Certification the Typicality element is met.

3. Commonality

Defendants' attack on Commonality is incomprehensible.  Defendants argue that because an inquiry for Mr. Moser's case into agency must reach both HII and its sales agents (e.g., Donisi Jax, Inc.) and their junk call vendors that somehow this defeats commonality.  It is exactly the opposite.  Commonality has to do with the claims of the class members, not the relationships of the Defendants.

The evidence concerning HII's relationship between itself and its sales agents, and then those sales agents and their vendors would be exactly the same whether the case was limited to Mr. Moser or includes the nationwide class since the agency facts at issue are between the defendants and their agents, not the outward facing conduct towards the victims. The victims all suffered the same harm and are making the same common claims and whether and how agency liability applies is the same for all of them.  And even if there were slight relevant differences, the facts do not need to be precisely identical to be common to the class, indeed, "[t]he existence of shared legal issues with divergent factual predicates is sufficient".  *See*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).  Additionally, the different agency arguments between HII and others also is why there are proposed sub-classes, and Defendants point to no law that states multiple sub-classes cannot be prosecuted in a single litigation.

Defendants' attack on commonality is unpersuasive, and in fact proves how common the claims really are in this case and therefore, Commonality is met.

4. Adequacy

REPLY TO OPPOSITION - HII

Once again Defendant's rely on some generalized creditability attack to claim that Moser is not adequate to represent the class.  As explained above, the Defendants' creditability attacks are unfounded and unsupported, and again, the Defendants do not point to any actual defense that any of their allegations would be relevant too.

Defendants' credibility issues are ginned-up.  They raise Mosers alleged tax issues, without also explaining that these issues stem from Moser being a victim of identity theft.  [See, Depo. of Moser, Dckt No. 104-1, p. 72, ln. 20 to p. 73, ln. 21; see also, San Diego County Criminal Case No. SCD215609 (naming Mr. Moser and others as victims in a restitution order)].  Defendants try to say Moser lied at his deposition, when what they point to is some minor issue only caused because counsel did not ask a follow up question, and is the same kind of frivolous nonsense disapproved of by *CE Design*.  Defendants also go on about Moser's use of an alias while investigating who was making the calls.  Despite their unfounded claims, Defendants have not pointed to a single statute, law, regulation or anything that bars alias in a phone call with a telemarketer, while Plaintiffs have provided numerous examples of government agents and volunteer senior citizens helping the FBI doing the exact same thing for the exact same reason.  [See, Plaintiffs Motion to Certify Class, Req. for Jud. Notice, Ex. 33, p. 20].

Finally, as also explained in greater detail in the opposition to the Motion to Deny Certification, there simply is no professional plaintiff defense, so Defendants' reliance on this issue is misplaced.  *Murray v. GMAC Mortg. Corp*., 434 F.3d 948, 954 (7th Cir. 2006) ("*Murray*"); *Gordon v. Virtumundo*, 575 F.3d 1040 (9th. Cir. 2009) *See, e.g., Sandusky Wellness Center, LLC v. MedTox Scientific, Inc*., 250 F.Supp.3d 354, 360 (D. Minn. 2017); *Cunningham v. Rapid Response Monitoring Services, Inc*., 251 F.Supp.3d 1187, 1194-95 (M.D. Tenn. 2017); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 736625, \*7 (S.D. Fl. 2014; *Charvat v. Travel Services*, 110 F.Supp.3d 894, 899

(N.D. Ill. 2015); *Van Patten v. Vertical Fitness*, 2013 WL 12069031, *9 (S.D. Cal. 2013) (a different order in same case reversed and remanded on other grounds in *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037 (9th Cir. 2017)); *Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 783-84 (N.D.W.V. 2017); *Johansen v. One Planet Ops, Inc*., 2018 WL 1558263, *3-4 (S.D. Ohio 2018).

Again, there simply is no creditability issue or any special defense issue in this case and therefore Adequacy is met.

## 5. Predominance

Defendants argument is that individual issues will predominate because of the defense of "consent".  First, Defendants are trying to confuse this Court, there is no "consent" defense, for the TCPA 'consent' must be prior express written consent, meaning given in writing before the call, and expressly stating agreement to receive autodialed or prerecorded calls from a specifically named party.  47 C.F.R. § 64.1200(f)(8), *Satterfield v. Simon & Schuster, Inc*., 596 F.3d 946, 955 (9th Cir. 946) (reaching same definition requirements before FCC promulgated rule in (f)(8)).  Thus, Defendants arguments about consent and predominance are pure smokescreen. Defendants can either provide a prior express written consent or they cannot (and they have not provided any hint of one as to Mr. Moser).  Since the rule defines prior express written consent carefully, there is no real inquiry needed into the facts of any consent defense.

Furthermore, as stated above, Defendants have not provided one iota of evidence that prior express written consent is even in issue.  If they had a written consent, they could have easily proffered the writing.  Proffering evidence regarding possible affirmative defense issues to class certification is unequivocally the burden of Defendants.  *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 932 (9th Cir. 2018); *Van Patten v. Vertical Fitness Group*, 847 F.3d 1033, 1044 (9th Cir. 2017); *Bee, Denning, Inc. v. Capital All. Grp*., 310 F.R.D.

614, 629 (S.D. Cal. 2015); *Caldera v. American Medical Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017).  As in the above cases, Defendants here rely on vague speculation unsupported by any evidence and their speculation should be similarly dismissed from this class certification determination.  There are no issues for Predominance based on actual evidence and therefore, this element is met.

6. Superiority

As was argued I Plaintiff's initial moving papers, and the Opposition to Defendants improper Motion to Deny Class Certification, class action is the superior method for adjudication in this case.  Once again, the Defendants primarily rely on *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180 (9th Cir. 2001) ("*Zinser*").  Again, *Zinser* does not stand for the proposition that if a class representative has a large amount of damages that class action is inferior.  *Zinser* deals only with **all** of the class members have large claims.  *Id*. at 1191-1192. Defendants provide no evidence as to what the average level of harm is, let alone the harm to all class members.

The maximum recovery under the TCPA is $500 per call, and may be trebled if a willful violation is proven.  47 U.S.C. § 227(b)(3)(B-C) .  This is nowhere close to the $50,000 alleged for each and every class member in *Zinser*. Moser has no idea how many calls Defendants placed to each class member. Defendants have not produced any evidence of how many calls they made to each phone number of potential class members.  And if they want to rebut plaintiff's superiority showing in his moving papers with this argument, the burden rests on them to produce evidence to support this defense. See, *Bridging Communities Inc. v. Top Flite Fin. Inc*., 843 F.3d 1119, 1125 (6th Cir. 2016), cert. denied, —— U.S. – ——, 138 S.Ct. 80, 199 L.Ed.2d 25 (2017) ("We are unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling'"). And if Defendants are correct that other class members received only a few calls, it

actually supports Plaintiffs position that this is just the sort of "negative value" case which is neatly suited to class action superiority.[1]

Furthermore, in this case there is a very large factor that greatly supports superiority and certification:  all of the claims can be easily determined by one set of evidence in the Defendants possession.  In fact in Defendants' heavily cited *Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013) ("*Leyva*") case one of the major reasons that the court certified the class was that the defendant in that labor case had computer records that made determining the damages for each employee class member readily available.  *Leyva, supra*, 716 F.3d at 515.  The same logic applies here.  Defendants' phone records and other records will easily identify the phone numbers called and the number of times called, making the identification of class members and calculation of the damages straightforward. While Defendants have balked at providing the entire set of call records for all class members in the preliminary class discovery phase, they do not dispute that they have such records and have already produced the 1,888,272 list of numbers called and 'warm-transferred' by lead agents working for them.  The fact that the defendants are the repository of the essential records is a very strong factor showing that a consolidated action dealing with the evidence one time instead of thousands is far superior.

Furthermore, Defendants' heavily cited *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) ("*Haynes*") case supports superiorty. *Haynes* held that a major point in favor of certification had to do with individuals incentives to bring claims forward.  *Haynes supra*, 503 F.2d at 1165. ("the improbability that large numbers of class members would possess the initiative to

---

[1] We know that Defendant Donisi-Jax has an internal 'do-not-call list' of 1,888,272 numbers and they have testified that the list is generated when people called ask them not to call anymore.  [See, Plaintiffs Motion to Certify Class, Decl. of Prato thereto, ¶¶ 36-37, Ex. 18 thereto].  We can reasonably infer that most of the 1,888,272 people on this list were only called once or twice before being put on the list and have relatively small damages.  As Defendants' and their primary case relied on admit, negative value suits weigh heavily in favor of class certification.  *Zinser, supra* 253 F.3d at 1191

REPLY TO OPPOSITION - HII

litigate individually").  The case at bar is a TCPA case concerning junk telemarketing calls.  It cannot be doubted that literally everybody's phone receives unwanted junk telemarketing calls, yet only a tiny sliver of people ever file even a small claims suit.  Defendants cannot dispute this, their entire argument is that Moser suing for junk calls is what makes him different from most people. While telemarketing is considered a scourge on our phone system, realistically, most people suffer the annoyance but never pursue action.  As the *Haynes* court says classing multiple individual claims that protect interests that otherwise would go unprotected because of the costs of litigation is a hallmark of superiority.

Based on the above and arguments in other filings, the Superiority element is met.

## III. ADDITIONAL PLAINTIFFS, LEAVE TO RE-FILE

Despite the overwhelming legal authority above, should the Court have concerns with Moser as the class representative, Plaintiff requests that the Court allow Plaintiff to amend the case and add two additional plaintiffs, one of whom has never previously filed a TCPA claim.

## III.  CONCLUSION

As argued in previous filings and as further supported by this reply all of the class factors under Rule 23(a) and (b) are met in this case and Plaintiff's motion for certification should be granted.

DATED: December 31, 2018            **PRATO & REICHMAN, APC**

/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff KENNETH J. MOSER, and the putative class.

CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing instrument as well as all attached documents were served upon all counsel of record in the above entitled and numbered cause on the date listed below.

__X__ Via ECF

Barton H. Hegeler     BartonHegeler@hegeler-anderson.com, msutton@hegeler-anderson.com, slusby@hegeler-anderson.com, stormanderson@hegeler-anderson.com

Chad R Fuller     chad.fuller@troutmansanders.com, annajane.zarndt@troutmansanders.com, justin.brandt@troutmansanders.com, lauren.harper@troutmansanders.com, lori.dawson@troutmansanders.com

Garry W. O'Donnell     garry.odonnell@gmlaw.com, jaye.keckeis@gmlaw.com

Dariel Abrahamy        Dariel.Abrahamy@gmlaw.com

Jennifer L. Meeker     jmeeker@nossaman.com, mshibata@nossaman.com

Robert S Crowder     rcrowder@tresslerllp.com, jpatterson@tresslerllp.com, LADocket@tresslerllp.com

Virgina Flynn        Virginia.Flynn@troutmansanders.com

DATED: December 31, 2018          **PRATO & REICHMAN, APC**

/s/Justin Prato, Esq.
By: Justin Prato, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
KENNETH J. MOSER
and the putative class.

- 11 -

REPLY TO OPPOSITION - HII