```
┌─────────────────────────────────┐
│          FILED                   │
│                                  │
│        MAY 2 8 2019              │
│                                  │
│   CLERK, U.S. DISTRICT COURT     │
│  SOUTHERN DISTRICT OF CALIFORNIA │
│  BY              as DEPUTY        │
└─────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH INSURANCE INNOVATIONS, INC., a Delaware corporation, et al.,<br><br>Defendants. | Case No.: 17cv1127-WQH(KSC)<br><br>**ORDER RE JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE INTERROGATORIES AND DOCUMENT REQUESTS SERVED ON PLAINTIFF BY DEFENDANT DONISI JAX, INC.**<br><br>**[Doc. Nos. 97 and 98.]** |

Before the Court are: (1) a 76-page Joint Motion for Determination of Discovery Dispute [Doc. No. 97] addressing interrogatories served on plaintiff by defendant Donisi Jax, Inc.; and (2) a 151-page Joint Motion for Determination of Discovery Dispute addressing document requests served on plaintiff by defendant Donisi Jax, Inc. [Doc. No. 98.] In these two Joint Motions, defendant Donisi Jax, Inc. seeks an order compelling plaintiff to provide further, substantive responses to certain interrogatories and document requests. The subject interrogatories and documents requests at issue are interrelated as they seek documents and information on the same topics. These two Motions are the fifth and sixth discovery disputes in this case [Doc. Nos. 75, 83, 84, 87, 99, 100, 101, 102, 118],

- 1 -

and the Court previously addressed some of the issues raised in these new Joint Motions in a prior Order. [Doc. No. 118.] Therefore, the Court expects that the parties have an understanding as to the Court's expectations regarding appropriate discovery requests and responses and that some of the documents and information at issue in these new Joint Motions have already been produced.

For the reasons outlined more fully below, the Court finds that the request of defendant Donisi Jax, Inc. for an order compelling plaintiff to provide further responses to certain interrogatories and document requests must be GRANTED in part and DENIED in part.

## *Background*

The First Amended Complaint includes two causes of action for violations of the Telephone Consumer Protection Act ("TCPA"). [Doc. No. 3, at pp. 29-31.] For a summary of the allegations in the Complaint and the procedural history of the case, please refer to the Court's prior orders on discovery disputes as the Court will not repeat this background information here. [Doc. Nos. 100, 101, 102, 118.]

Some of the issues raised in the current Joint Motions have already been addressed in the Court's prior Order pertaining to the discovery dispute between defendant Health Insurance Innovations, Inc. and plaintiff. [Doc. No. 118.] Therefore, in the interests of brevity and efficiency, the Court will refer to this prior Order where appropriate and will not repeat the reasoning or analysis here. In addition, the discovery requests at issue will be addressed by topic and the Court will not repeat the full text of any of the interrogatories, documents requests, or plaintiff's original responses to these discovery requests.

## *Discussions*

### I.   *Scope of Discovery.*

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the

2

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

If a party fails to answer written interrogatories or produce documents in response to written requests, the party seeking discovery may move for an order compelling disclosure. Fed.R.Civ.P. 37(a)(3)&(4). "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

Under Rule 26(b)(2)(C), "the court must limit . . . discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(i)&(ii). In addition, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of the disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. . . ." Fed.R.Civ.P. 26(C)(1)(A)-(G).

Federal Rule of Civil Procedure 33 states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed.R.Civ.P. (b)(1)(3). In other words, a party to litigation must respond to an opposing party's interrogatories to the fullest extent possible. "The grounds for objecting to an interrogatory must be stated with specificity." Fed.R.Civ.P. 33(b)(4). "Boilerplate,

3

generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). For example, objections must explain how an interrogatory is overly broad or unduly burdensome. *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458 at n.4 (D.D.C. 2002).

Federal Rule 34(b)(1)(A) states that a request for documents "must describe with reasonable particularity each item or category of items to be inspected." Fed.R.Civ.P. 34(b)(1)(A). Federal Rule 34(b)(2)(B) also provides that a party responding to a document request "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. . . ." Fed.R.Civ.P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed.R.Civ.P. 34(b)(2)(B). "[B]oilerplate objections to Rule 34 document requests are inappropriate." *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 528 (S.D.W. Va. 2007).

Generally, the plaintiff in a TCPA case must meet the following elements of proof: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system." *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 804 (9th Cir. 2017); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). "[P]rior express consent is an affirmative defense, not an element of a TCPA claim." *Van Patten v. Vertical Fitness Grp.*, LLC, 847 F.3d 1037 (9th Cir. 2017).

Although class and fact discovery have not been bifurcated in this case, the focus of discovery at this point in the proceedings is on class-related issues. [Doc. No. 66, at p. 2.] "To maintain a class action, a plaintiff must demonstrate numerosity, commonality, typicality, and adequate representation of the class interest. Fed.R.Civ.P. 23(a). In addition to those requirements, Rule 23(b) provides that a class may be maintained, *inter*

4

*alia*, if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 946 (9th Cir. 2011).

"Determining whether representation is adequate requires the court to consider two questions: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (internal quotations omitted). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. A court should not certify a class if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal citations and quotations omitted). In addition, "[a] named plaintiff who has serious credibility problems . . . may not be an adequate class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

## II. *Plaintiff's Work History, Employment, and Income.*

In *Interrogatory No. 1*, defendant seeks the names of plaintiff's employers, dates of employment, job duties, and sources of compensation for the period January 1, 2008 to the present. [Doc. No. 97, at p. 4.] In response to Interrogatory No. 1, plaintiff listed several boilerplate objections and stated he could not answer the question. [Doc. No. 97, at p. 4.] Plaintiff further objected that Interrogatory No. 1 seeks private information protected under the California Constitution that would be costly to compile. [Doc. No. 97, at p. 4.]

*Document Request Nos. 14, 15, 16, and 58* seek production of banking records and other documents showing sources of income for plaintiff and any business he owned

5

during the period 2008 through 2018. [Doc. No. 98, at pp. 45-49.] ***Document Request Nos. 23, 24, 25, and 26*** seek production of plaintiff's personal tax returns, as well as the tax returns for any business he owned, for the period 2008 through 2018. [Doc. No. 98, at pp. 63, 65, 66, 68.] Plaintiff's objections to these discovery requests are largely boilerplate. He contends these requests are vague, ambiguous, overly broad, irrelevant, unduly burdensome, and disproportionate to the needs of the case.[1] Plaintiff also objects to these requests because they seek private information protected by the California Constitution. In addition, he objects because of the "significant costs" in time and money it would take to compile these documents. Citing his relevance objection, plaintiff further contends that production of the requested documents would be disproportionate to the needs of the case. [Doc. No. 98, at pp. 45, 47, 49, 63, 65-67, 68, 147.]

Defendant argues that plaintiff's employment history, compensation information, sources of income, tax returns, and other financial records are relevant to determine how much of his income derives from TCPA litigation. In support of this argument, plaintiff cites plaintiff's deposition testimony indicating he has filed more than 100 TCPA lawsuits or small claims. [Doc. No. 97, at pp. 5-6; Doc. No. 98, at pp. 64, 66, 68, 70.] Defendant claims that plaintiff's income from TCPA litigation is relevant to whether his claims are typical of the class; whether he can adequately represent the class; and whether

---

[1]     As noted above, "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). Accordingly, the Court will not consider or discuss boilerplate objections unless the reasons for the objections are obvious or have been explained and expanded in the Joint Motion or in a supporting declaration. Since a party claiming a privilege must "expressly make the claim" and provide enough information to "enable other parties to assess the claim" (Fed.R.Civ.P. 26(b)(5)(A)(i)&(ii)), the Court will also not consider or discuss a bare, unsupported privilege objection. Likewise, bare, unsupported objections referring to contractual privacy obligations will not be considered without some proof of the obligations, such as a supporting declaration.

6

he is a "professional or habitual TCPA litigant." [Doc. No. 97, at pp. 6-9; Doc. No. 98, at pp. 47 *et seq.*]

Plaintiff argues that the Court should deny defendant's request for an order compelling him to further respond to these discovery requests, because there is no "professional plaintiff" defense, and defendant already has "ample evidence" of his involvement in other TCPA cases. [Doc. No. 97, at pp. 16-17; Doc. No. 98, at pp. 21, 47.] Plaintiff also argues that requiring him to produce financial documents and an "exhaustive list of employment information" over a long period of time that has "extremely dubious relevance to a TCPA case" is burdensome and overly broad. [Doc. No. 97, at p. 18.] Plaintiff represents that it would be difficult, time consuming, and costly for him to compile this information, and requiring him to do so would be disproportionate to the needs of the case, particularly given the "dubious relevance [of this information] to a TCPA case." [Doc. No. 97, at pp. 4, 18; Doc. No. 98, at pp. 20.] Plaintiff also represents that he does not even have access to bank records going back as far as 2008. [Doc. No. 98, at p. 47.] In addition, plaintiff argues that these discovery requests seek information that is private and confidential, and defendant has not met its burden of establishing that its need for these documents outweighs plaintiff's privacy concerns and/or the privacy rights of third parties. [Doc. No. 97, at p. 19; Doc. No. 98, at pp. 19-20, 28, 47, *et seq.*]

In support of its arguments, defendant cites some TCPA cases dealing with class certification issues, but the cases are not directly on point. As the Court explained in a prior Order filed in this case on December 21, 2018, courts have reached different conclusions as to whether status as a "professional plaintiff" is relevant for various purposes in TCPA cases and other consumer lawsuits. [Doc. No. 118, at pp. 20-24.] In *Murray v. GMAC Mortgage Corporation*, 434 F.3d 948 (7th Cir. 2006), for example, the Seventh Circuit rejected an argument that a "professional plaintiff," who had previously filed nine suits, was not a suitable representative to adequately represent the rights of the proposed class in a Fair Credit Reporting Act case, because she and her counsel would

only be interested in the "quick buck" from a settlement. *Id.* at 954. In other words, being a so-called "professional plaintiff" does not, standing alone, disqualify an individual from serving as a class representative. *Id.*

Although there is no absolute bar to discovery, "financial information is protected by the right to privacy under California law and these privacy rights are generally recognized in federal court." *E.E.O.C. v. California Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009). If the balance of interests weighs in favor of production, any privacy concerns can be addressed with a protective order. *Id.*

In a similar TCPA case, *Charvat v. Travel Services*, 110 F.Supp.3d 894 (N.D. Ill. 2015), the defendant argued that ten years of the plaintiff's tax returns were discoverable to show that the plaintiff "derives substantial income from TCPA litigation and that his motivation for filing this action is financial gain rather than selfless consumer advocacy." *Id.* at 898. As in this case, the defendant in *Charvat* argued that the plaintiff's financial motive in filing suit was relevant to whether he was fit to serve as a representative of the class. *Id.* Relying on the Seventh Circuit's decision in *Murray v. GMAC Mortgage Corp.*, 434 F.3d at 948, the District Court concluded that the plaintiff's income from other TCPA cases was not relevant to "impugn his credibility" as a class representative. *Charvat*, 110 F.Supp.3d at 898-899. *But see, Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 125 (2d Cir. 2005) (stating that "[a] claim for money damages does create a financial incentive to be untruthful" so evidence of a financial motive may be admissible as impeachment evidence).

Here, defendant did offer to narrow its requests for bank records to those showing income from TCPA lawsuits, but the Court notes this would still require plaintiff to search through more than ten years of records. [Doc. No. 98, at pp. 46, 148.] In addition, defendant has not explained with any specificity how plaintiff's purported income from other TCPA litigation is relevant to the issues of typicality or adequacy. Without more, it appears that defendant only seeks to discover plaintiff's private, confidential financial documents and information to discredit him as a "professional plaintiff." However,

8

1  plaintiff has already testified in his deposition that he has been involved in more than 100

2  TCPA lawsuits and small claims actions. In addition, as outlined more fully below,

3  plaintiff has also been ordered to produce documents and information about many of

4  these lawsuits. Therefore, to the extent plaintiff's involvement in other TCPA litigation

5  is relevant, it is difficult to imagine why defendant would also need all the requested

6  financial documents to further its theory that plaintiff's status as a "professional plaintiff"

7  should disqualify him as a class representative. In other words, it is this Court's view that

8  defendant has not met its burden of establishing the importance of the broad range of

9  financial documents and information it seeks in response to the above-listed discovery

10  requests. The Court also questions whether the requested discovery meets the

11  proportionality requirements in Federal Rule 26(b)(1), particularly when plaintiff has

12  represented that it would be time consuming and very costly to gather the documents and

13  information requested and that he does not even have access to bank records as far back

14  as 2008. [Doc. No. 98, at pp. 47-48, 63.]

15  Based on the information as presented, it is also this Court's view that the balance

16  of interests does not weigh in favor of compelling plaintiff or any business he owns or

17  has owned to produce many years of private, confidential financial and income

18  statements, bank records, and income tax returns so that defendant can rummage through

19  them only to learn how much income plaintiff and/or his business or businesses may have

20  made over many years from TCPA litigation. Obviously, most of the information in

21  these private, confidential documents would be irrelevant. To the extent plaintiff's

22  income from his involvement in TCPA litigation is relevant to the class issues of

23  typicality, adequacy, and credibility, there are means to discover this type of information

24  that are less burdensome and less intrusive than requiring plaintiff to produce a broad

25  range of confidential financial documents or to search through many years' worth of

26  financial records to produce confidential documents showing his income from TCPA

27  lawsuits. For example, as defendant reveals in the Joint Motion, plaintiff did testify

28  "generally" and "specifically" during his deposition about the income he has received

9

1  from TCPA litigation. [Doc. No. 97, at p. 10.] Without more, plaintiff's testimony on
2  this topic is adequate, and the Court declines to order plaintiff to produce a vast array of
3  private, confidential financial documents which would reveal his income from TCPA
4  litigation. Based on the foregoing, defendant's request for an order compelling plaintiff
5  to provide further responses to Document Request Nos. 14, 15, 16, 23, 24, 25, 26, and 58
6  is DENIED.

7        With respect to Interrogatory No. 1, the Court agrees with plaintiff that it is unduly
8  burdensome and overly broad as to time and scope and that defendant has not adequately
9  explained the relevance and importance of detailed information about his employment
10  history and compensation back as far as 2008. On the other hand, the Court finds that
11  basic background information about plaintiff's employment or work history for the
12  specific time at issue in the operative First Amended Complaint bears at least some
13  relevance to whether he can adequately represent the proposed class. Therefore,
14  defendant's request for an order compelling plaintiff to provide a further response to
15  Interrogatory No. 1 is GRANTED in part and DENIED in part. Defendant's request is
16  GRANTED to the extent Interrogatory No. 1 requires plaintiff to identify his employers,
17  if any, dates of employment, and job duties from 2015 to 2017, the years that plaintiff
18  allegedly received telephone calls in violation of the TCPA. [Doc. No. 3, at pp. 9-13.]
19  Any privacy interest that plaintiff has in this information can be adequately protected by
20  the terms of the confidentiality Protective Order entered in this case on October 25, 2018.
21  [Doc. No. 100.] Defendant's request for an order compelling plaintiff to provide any
22  other information in response to Interrogatory No. 1 is DENIED for failure to establish
23  the relevance or importance of the information to resolving matters at issue in the case.

24  **III.  _Other TCPA Lawsuits_.**

25        **_Interrogatory Nos. 2 and 5_** seek a list of court and case numbers for any lawsuits
26  filed by plaintiff or any business he owned from 2008 through 2018 alleging violations of
27  the TCPA. [Doc. No. 97, at p. 20.] **_Interrogatory Nos. 3 and 6_** request the disposition of
28  any of those lawsuits (_e.g.,_ whether they were settled, partially settled, dismissed, or

appealed). [Doc. No. 97, at p. 22.] For the same lawsuits, ***Interrogatory Nos. 4 and 11*** seek the amounts of monetary settlements or judgments paid. [Doc. No. 97, at p. 24.] ***Interrogatory Nos. 7, 8, 9, and 10*** all seek to discover whether class certification was granted or denied in any of the TCPA cases plaintiff or any of his businesses filed from 2008 to 2018. [Doc. No. 97, at pp. 31, 33, 35, 36, 38.]

 ***Document Request Nos. 1 and 2*** seek production of any TCPA complaints filed by plaintiff and/or any business plaintiff owned for the period 2008 through 2018. [Doc. No. 98, at p. 4.] ***Document Request Nos. 3 and 4*** request production of all transcripts of depositions taken in any TCPA lawsuit from 2008 through 2018 in which plaintiff or any business he owned was a party. [Doc. No. 98, at p. 25.] For the same lawsuits, ***Document Request Nos. 5, 6, 7, 8, 9, 10, 11, 12, 17, 18, 19, 20, 21, 22, 56, and 57*** seek production of judgments, dismissals, settlements, communications, evidence of monies paid from judgments or settlements, evidence of court awarded attorney's fees, and motions for class certification and any related filings. [Doc. No. 98, at pp. 30, 31-35, 37, 39, 41, 51, 53, 55, 57, 59, 61, 127, 141, 144.]

 Plaintiff's objections to these discovery requests are mostly boilerplate. For example, he contends they are overly broad, irrelevant, unduly burdensome, privileged, and "protected by contractual privacy obligations." [Doc. No. 97, at pp. 20-22; Doc. No. 98, 4, 14-24.] In conclusory terms, plaintiff also objects on proportionality grounds. He contends that production of all the documents and information requested would be at "great cost" to plaintiff "in money and/or time." [Doc. No. 97, at p. 20; Doc. No. 98, at pp. 4, 19-21, *et seq.*] However, plaintiff did not submit any evidence to support his proportionality argument.[2] In the Joint Motion, plaintiff challenges the relevance of the

_____

[2] The party claiming undue burden or expense is ordinarily in the best position to provide evidence for the Court to consider on the issue of proportionality. Fed.R.Civ.P. 26(b) advisory committee's note (2015 amendments). "[A] party claiming that discovery

documents and information defendant seeks in response to these discovery requests, because he contends there is no "'professional plaintiff' defense," and he believes defendant already has enough evidence of his involvement in other TCPA litigations. [Doc. No. 97, at pp. 16-17; Doc. No. 98, at pp. 21, *et seq*.] He also contends that some of his other TCPA lawsuits were "settled with confidentiality clauses," so he is unable to disclose settlement amounts in those cases. [Doc. No. 97, at p. 24; Doc. No. 98, at pp. 20, 27, *et seq*.] However, plaintiff did not submit any evidence, such as a declaration, to support his claims of contractual confidentiality.[3] In addition, plaintiff argues that he should not be required to bear the burden of compiling information about other TCPA lawsuits that is "publicly available" on court websites. [Doc. No. 97, at p. 24; Doc. No. 98, at pp. 20, *et seq*.] In addition, plaintiff argues that these requests are overly broad as to time, because the ten years' worth of documents requested is "untethered to the class period or any rational reason." [Doc. No. 98, at p. 21.]

In support of its request for an order compelling plaintiff to provide documents and information about other TCPA litigation, defendant cites plaintiff's deposition testimony in this case indicating he has been involved with more than 100 lawsuits or small claims actions alleging TCPA violations "dating back to approximately 10 years [ago]." [Doc. No. 97, at pp. 5-6; Doc. No. 98, at pp. 5-6.] Defendant argues that documents and

---

imposes an undue burden must 'allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016), quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D.Nev.1997). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Nationstar v. Flamingo*, 316 F.R.D. at 334.

[3] "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, *the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence.*" *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015) (emphasis added).

12

information about plaintiff's involvement as a party in other TCPA cases is relevant to the class certification issues of adequacy and typicality. As a result, defendant argues that plaintiff should be compelled to provide full and complete responses to all these requests unless he can establish there is "some confidentiality provision" that prevents him from disclosing specific information. [Doc. No. 97, at pp. 4-8; Doc. No. 98, at pp. 8-9.] It is also defendant's position that plaintiff's status as a "professional plaintiff" is relevant to the class issues of adequacy and typicality. [Doc. No. 97, at pp. 4-12; Doc. No. 98, at pp. 8-9.]

In a prior Order in this action filed on December 21, 2018 [Doc. No. 118], the Court addressed a dispute over similar discovery requests. In this prior Order, the Court agreed with another defendant in this case, Health Insurance Innovations, Inc. ("HII"), that some information about plaintiff's involvement as a party in other TCPA litigation is relevant to class certification issues, such as plaintiff's credibility and whether plaintiff can adequately represent the interests of the class. [Doc. No. 118, at pp. 28-31.]

Based on the foregoing, this Court ordered plaintiff to disclose the following in response to HII's interrogatories for the time period *January 1, 2010 through the present*: (1) any lawsuits, arbitrations, or court proceedings involving the TCPA in which plaintiff was a party; (2) any demand letters from plaintiff to private or governmental entities complaining of TCPA violations or violations of similar state laws; and (3) the amounts of any monetary settlements in TCPA lawsuits or claims and the identities of any parties who paid any settlement amounts. In response to HII's document requests, the Court ordered plaintiff to produce the following for the time period *January 1, 2010 through the present*: (1) a list of TCPA cases filed in Federal court in which plaintiff was or is a party. The list must include the name of the case, the case number, and the name of the court where the case was filed; (2) copies of any TCPA complaints in any state court cases in which plaintiff was or is a party; and (3) copies of any deposition transcripts when plaintiff was the deponent and was questioned about the

17cv1127-WQH(KSC)

TCPA, autodialing, auto dialers, pre-recorded messages, or Do Not Call Lists. [Doc. No. 118, at pp. 28-31, 36.]

Here, defendant Donisi Jax, Inc. seeks an order compelling disclosure of most of the documents and information that the Court already ordered plaintiff to produce to defendant HII. However, defendant Donisi Jax, Inc. also seeks a significantly broader disclosure of documents and information about plaintiff's involvement in other TCPA lawsuits. First, defendant Donisi Jax, Inc. has requested documents and information for the period 2008 through 2019, and, unlike defendant HII, defendant Donisi Jax, Inc. has not offered to limit the time to January 1, 2010 to the present. [Doc. No. 87, at p. 31.] Second, defendant Donisi Jax, Inc. not only seeks documents and information pertaining to other TCPA lawsuits in which plaintiff is or was a party, it also seeks documents and information about other TCPA lawsuits where a business owned by plaintiff was or is a party. [Doc. No. 97, at p. 20.] Third, for all such lawsuits, defendant Donisi Jax, Inc. seeks specific information about the disposition of each case (*i.e.*, whether it has been settled, partially settled, dismissed, or appealed). Fourth, for all such lawsuits, defendant Donisi Jax, Inc. wants to know whether class certification was granted or denied. [Doc. No. 97, at pp. 31, 33, 36, 36, 38.]

Fifth, defendant Donisi Jax, Inc. requests production of all TCPA complaints and, unlike HII, Donisi Jax, Inc. has not offered to limit production of TCPA complaints to those filed in state courts, along with a list of cases filed in Federal courts that includes the name of the case, the case number, and the name of the court where the complaint was filed. [Doc. No. 98, at p. 4; Doc. No. 87, at p. 53.] Sixth, defendant Donisi Jax, Inc. seeks production of all deposition transcripts from all TCPA cases in which plaintiff or any of his businesses was a party. HII only requested production of deposition transcripts from all TCPA cases where plaintiff was the deponent and was questioned about certain subjects commonly at issue in TCPA cases. [Doc. No. 87, at p. 53.] Seventh, unlike defendant HII, defendant Donisi Jax, Inc. seeks production of a broad array of documents from each TCPA case, including judgments, dismissals, settlements, communications,

14

1  evidence of monies paid from judgments or settlements, evidence of court awarded
2  attorney's fees, and motions for class certification and any related filings. [Doc. No. 98,
3  at pp. 30, 31-35, 37, 39, 41, 51, 53, 55, 57, 59, 61, 127, 141, 144.]

4  Without more, the relevance of some of the additional documents and information
5  requested by defendant Donisi Jax, Inc. is questionable and unclear based on the
6  information made available to the Court. Given the breadth of additional documents and
7  information requested, the Court finds that it would be overly burdensome and
8  disproportionate to the needs of the case to require plaintiff to produce all that defendant
9  Donisi Jax, Inc. has requested about other TCPA litigation. Therefore, defendant's
10  request for an order compelling plaintiff to produce additional documents and
11  information in response to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 and
12  Document Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 17, 18, 19, 20, 21, 22, 56, and 57 is
13  GRANTED in part and DENIED in part as follows:

14  First, there does not appear to be any reason to expand the scope of production
15  back two full years to 2008. January 1, 2010 to the present (*i.e.*, the time specified in the
16  Court's prior Order [Doc. No. 118, at pp. 28-31, 36]), is enough of a burden. Second, as
17  required by the Court's prior Order [Doc. No. 118, at pp. 28-31, 36], it is enough for
18  plaintiff to provide defendant Donisi Jax, Inc. with copies of TCPA complaints filed in
19  state courts, as well as a list of TCPA cases filed in Federal courts that sets forth the case
20  name, the case number, and the name of the court where the action was filed.

21  Third, since relevance is obvious as to whether plaintiff can adequately represent
22  the interests of the class, defendant Donisi Jax, Inc. is entitled to discover the disposition
23  of each TCPA case and whether class certification was granted or denied. Plaintiff can
24  provide this information in list form (*i.e.*, by expanding the information shown on its list
25  of cases filed in Federal court) *or* can elect to produce documents that include this
26  information, such as copies of settlement agreements, orders, judgments, or dismissals.
27  However, it is not necessary for plaintiff to do both as defendant Donisi Jax, Inc. has
28  requested.

15

1    Fourth, to the extent plaintiff owns or has owned any businesses, defendant Donisi

2    Jax, Inc. is obviously entitled to discover whether any such business has been a party in

3    TCPA litigation, so plaintiff must respond to all the discovery requests discussed in this

4    section on behalf of himself and any business he owns or has owned from January 1,

5    2010 to the present. Fifth, with respect to deposition transcripts in TCPA cases *when*

6    *plaintiff was the deponent*, relevance is obvious on the issues of credibility and whether

7    plaintiff can adequately represent the interests of the case. The relevance of other

8    deposition transcripts in TCPA cases is not obvious, and the Court will not compel

9    plaintiff to produce them. Sixth, the relevance of "court awarded attorney's fees" in

10   TCPA cases is unclear. As a result, the Court will not compel plaintiff to produce

11   "evidence" of attorney's fees in other TCPA cases involving plaintiff or his businesses.

12   Fifth, to the extent plaintiff is unable to produce any of the above-listed documents

13   or information because of "contractual confidentiality," he must provide defendant with a

14   detailed declaration under penalty of perjury describing, to the extent permitted, what he

15   cannot produce and why. For example, plaintiff should be able to identify cases by case

16   name, case number, and court that were settled with a confidentiality provision

17   prohibiting disclosure of the settlement amount. If necessary, the declaration can be

18   produced subject to the parties' confidentiality Protective Order.

19   Finally, defendant's request for an order compelling plaintiff to provide further

20   responses to Document Request Nos. 11 and 12 is DENIED, and plaintiff is not required

21   to provide any further responses to these requests. Document Request Nos. 11 and 12

22   seek production of "all documents containing any communications" between plaintiff or

23   any of his businesses and any person related to any TCPA lawsuit from 2008 through

24   2018. [Doc. No. 98, at pp. 39-43.] On their face, these requests are overly broad as to

25   time and scope and have the potential to encompass voluminous documents that have no

26   relevance whatsoever to this case. As a result, these requests do not meet the "reasonable

27   particularity" standard in Federal Rule 34(b)(1)(A). [*See* Document No. 118, at pp. 24-

28   26.] There is nothing to indicate defendant attempted to explain or narrow the scope of

1  these requests. Without a more specific description, it is not possible for plaintiff or the

2  Court to determine the appropriate scope of the documents that are being requested.

3  *IV.    **Telephone Numbers and Call Detail Reports.***

4        ***Interrogatory Nos. 16 and 17*** ask plaintiff to describe "the purpose for [plaintiff

5  and/or his businesses] having multiple telephone numbers." [Doc. No. 97, at pp. 49-53.]

6  Defendant argues that the reasons plaintiff has multiple telephone numbers are "relevant

7  to whether he is a professional or habitual TCPA litigant." [Doc. No. 97, at pp. 50, 52.]

8  Plaintiff responds that he gave "substantive answers" to questions concerning his use of

9  multiple telephone numbers during his deposition, so it would be too burdensome to

10  require him to "reiterate his deposition answers again at length wasting his time and

11  attorney hours." [Doc. No. 97, at pp. 51, 53.] Defendant does not contest plaintiff's

12  representation that he responded "at great length" to questions about his use of multiple

13  telephone numbers during his deposition. [Doc. No. 97, at pp. 50-53.] The Court

14  therefore concludes that these questions have been asked and answered. In addition, it

15  appears the requested information would be cumulative of other evidence of plaintiff's

16  status as a "professional plaintiff." As a result, defendant's request for an order

17  compelling plaintiff to provide further, written responses to Interrogatory Nos. 16 and 17

18  is DENIED.

19        For the ten-year period 2008 through 2018, ***Interrogatory Nos. 12, 13, 14, and 15***

20  request disclosure of: (1) "each" telephone number used by plaintiff and/or any business

21  he owned; and (2) "each" telephone number relevant to any TCPA lawsuit filed by

22  plaintiff and/or any business he owned. [Doc. No. 97, at pp. 40-45.] Defendant agreed to

23  narrow these requests to "phone numbers owned by or assigned to plaintiff [or his

24  businesses] ***over the past 10 years***, including burner or temporary phones." [Doc. No.

25  97, at pp. 41, 44 (emphasis added).] Defendant argues that plaintiff is obligated to

26  respond to these narrower requests "to the best of his memory and after conducting a

27  reasonable search for responsive information." [Doc. No. 97, at pp. 41-42, 45.]

28  However, plaintiff disputes defendant's representations about their agreement. Plaintiff

1 | claims he agreed with defendant "to identify call numbers . . . for each phone number

2 | owned by or assigned to him *over the past 5 years*." [Doc. No. 97, at p. 42 (emphasis

3 | added).] However, in response to these interrogatories, plaintiff only provided the

4 | telephone numbers "relevant to this case" (*i.e.*, the telephone numbers plaintiff listed in

5 | the First Amended Complaint). [Doc. No. 97, at pp. 40-48.]

6 |      *Document Request Nos. 27, 28, 29, and 30* were narrowed by defendant to seek

7 | production of "phone bills and call detail reports for each phone number owned by or

8 | assigned to plaintiff *over the past 5 years*, including burner and temporary phones."

9 | [Doc. No. 98, at pp. 71, 75, 77, 79 (emphasis added).] *Document Request Nos. 54 and*

10 | *55* seek documents "evidencing" each telephone number relevant to any lawsuit in which

11 | plaintiff and any of his businesses was a party from 2008 through 2018. [Doc. No. 98, at

12 | pp. 137, 139.] In addition, *Document Request No. 33* seeks production of documents

13 | "evidencing any telephone call from [plaintiff] to defendant [Donisi Jax, Inc.] from 2015-

14 | 2018." [Doc. No. 98, at p. 87-88.] In response to Document Request No. 33, plaintiff

15 | agreed to produce telephone bills and call detail reports for the telephone numbers

16 | alleged in the First Amended Complaint. [Doc. No. 98, at p. 88.]

17 |      During meet and confer discussions plaintiff's counsel agreed to ask plaintiff

18 | whether he used any burner or temporary telephones. As of the date the parties' Joint

19 | Motion was filed, plaintiff's counsel had not responded, so defendant seeks clarification

20 | as to whether plaintiff used any temporary or burner telephones during the past five

21 | years. [Doc. No. 98, at pp. 138, 140.]

22 |      Defendant seeks identification of telephone numbers from 2008 to 2018 and

23 | production of telephone bills and call detail reports from 2013 to 2018 to further its

24 | contention that plaintiff cannot adequately represent the proposed class because he is a

25 | "professional plaintiff." [Doc. No. 97, at pp. 5-12, 41, 45, 47, 49; Doc. No. 98, at pp. 5-

26 | 11, 71-72, *et seq.*] According to plaintiff, he only agreed to identify telephone numbers

27 | and produce telephone bills and call detail reports for the last five years (2013 to 2018).

28 | [Doc. No. 97, at p. 42.] Plaintiff argues that defendant's request for identification of

telephone numbers back to 2008 to further its "professional plaintiff" argument is "nonsensical" and "excessive." [Doc. No. 97, at pp. 43, 45, 47, 49.] Plaintiff does not contest the relevance of his telephone bills and call detail reports over the past five years (*i.e.*, 2015 to 2018) and/or during the proposed class period (*i.e.*, 2015 to the present). [Doc. No. 98, at pp. 73, 76, 78, 80.]

Despite defendant's narrowing of these requests, plaintiff only identified telephone numbers "relevant to the case" and produced copies of his telephone bills from March 2017 through April 2018 that he was able to obtain online from his telephone company. [Doc. No. 97, at pp. 40-48; Doc. No. 98, at pp. 71, 75.] Defendant now seeks an order compelling plaintiff to identify telephone numbers from 2008 through 2018 and to produce responsive telephone bills and call detail reports for the full five years as agreed (*i.e.*, 2013 to 2016 and May 2018 to the present). [Doc. No. 98, at pp. 71, 75 (emphasis added).]

Plaintiff represents that he provided the responsive documents he had in his possession or control. [Doc. No. 98, at p. 73.] Plaintiff also states he agreed to provide call detail reports when the parties confidentiality Protective Order is entered. The confidentiality Protective Order was filed in this case on October 25, 2018, so plaintiff should have already produced call detail reports as agreed, but it is unclear whether he has done so based on the information provided in the parties' Joint Motion. [Doc. No. 98, at pp. 73-74; 139; 141; Doc. No. 100.]

The First Amended Complaint alleges plaintiff received telephone calls from defendants "since early 2015." [Doc. No. 3, at p. 13.] It is further alleged that plaintiff received a high volume of calls from defendants from April 6, 2017 to May 10, 2017 and maintained a log of these calls. [Doc. No. 3, at pp. 9-11.] Based on the allegations in the First Amended Complaint, any telephone numbers owned by or assigned to plaintiff or any business he owned, "including burner or temporary phones" from 2015 to 2018 are directly relevant to the allegations in the First Amended Complaint. For the years 2008 through 2018, any telephone numbers owned by or assigned to plaintiff or any business

19

1  he owned *that were involved in any TCPA litigation* filed by plaintiff or any business he

2  owned, including temporary or burner telephones, are also directly relevant to the

3  allegations in the First Amended Complaint. Relevance is unclear as to any other

4  telephone numbers owned by or assigned to plaintiff or his businesses from 2008 through

5  2018.

6       Based on the foregoing, defendant's request for an order compelling plaintiff to

7  identify telephone numbers in response to Interrogatory Nos. 12, 13, 14, and 15 and

8  produce telephone bills and call detail reports in response to Document Request Nos. 27,

9  28, 29, 30, and 33 is GRANTED in part and DENIED in part as follows. Defendant's

10  request is GRANTED as to Interrogatory Nos. 12, 13, 14, and 15 to the extent these

11  requests seek an order compelling plaintiff to identify for the years 2008 through 2018

12  any telephone numbers owned by or assigned to plaintiff or any business he owned *that*

13  *were involved in any TCPA litigation* filed by plaintiff or any business he owned,

14  including temporary or burner telephones. To the extent plaintiff must identify telephone

15  numbers in response to these requests, he must also provide the case name, case number,

16  and court name that corresponds to each identified telephone number. Defendant's

17  request is DENIED as to Interrogatory Nos. 12, 13, 14, and 15 to the extent these requests

18  seek identification of any other telephone numbers.

19       Defendant's request is GRANTED as to Document Request Nos. 27, 28, 29, 30,

20  and 33 to the extent these requests seek production of telephone bills and call detail

21  reports for each telephone number owned by or assigned to plaintiff from 2013 to 2018,

22  including burner and temporary telephones. It is not enough for plaintiff to simply

23  produce telephone bills and call detail reports in his possession or that are available to

24  him on his telephone company's online portal. Plaintiff must contact the appropriate

25  telephone company or companies to inquire whether telephone bills and call detail reports

26  back to 2015 have been archived and can be made available to plaintiff at his request. If

27  the telephone company or companies have archived some or all these documents and they

28  can be made available, plaintiff must produce them. If any cannot be produced because

1  they are not available, plaintiff must provide defendant with a declaration under penalty

2  of perjury detailing the steps taken to determine the availability of all responsive

3  telephone bills and call detail reports from 2015 through 2018, what plaintiff learned

4  from his inquiries, and why any of the responsive documents cannot be produced. The

5  declaration should also confirm that all responsive documents have been produced to the

6  best of plaintiff's "knowledge, information and belief formed after a reasonable inquiry."

7  Fed.R.Civ.P. 26(g)(1). Defendant's request is DENIED to the extent it seeks production

8  of any other documents in response to Document Request Nos. 27, 28, 29, 30, 33, 54, and

9  55.

10      Defendant's request for an order compelling plaintiff to produce documents in

11  response to Document Request Nos. 54 and 55 is DENIED. These requests are

12  burdensome and overly broad, because they seek production of documents "evidencing"

13  each telephone number relevant to any TCPA lawsuit in which plaintiff and any of his

14  businesses was a party from 2008 through 2018. [Doc. No. 98, at pp. 137, 139.]

15  Particularly given the number of years and the number of TCPA lawsuits plaintiff has

16  filed, documents "evidencing" telephone numbers relevant to TCPA lawsuits could

17  potentially require production of every document filed or produced in every case,

18  regardless of relevance or importance to resolving matters at issue in this case. In other

19  words, Document Request Nos. 54 and 55 do not meet the "reasonable particularity"

20  requirement in Federal Rule 34(b)(a)(A), and, without more, it is not possible for plaintiff

21  or the Court to determine the appropriate scope of these requests. However, since

22  plaintiff must identify any such telephone numbers in response to Interrogatory Nos. 12,

23  13, 14, and 15, along with the corresponding case information, it is likely defendant can

24  obtain access to relevant documents.

25      In sum, defendant's request for an order compelling plaintiff to provide further,

26  written responses to Interrogatory Nos. 16 and 17 is DENIED. Defendant's request for

27  an order compelling plaintiff to provide further responses to Interrogatory Nos. 12, 13,

28  14, and 15 is GRANTED in part and DENIED in part as outlined above. Defendant's

17cv1127-WQH(KSC)

1 request for an order compelling plaintiff to provide further responses and produce
2 documents in response to Document Request Nos. 27, 28, 29, 30, and 33, is GRANTED
3 in part and DENIED in part as outlined above. Defendant's request for an order
4 compelling plaintiff to produce documents in response to Document Request Nos. 54 and
5 55 is DENIED.

6 **V.    _Internet and Telecommunications Service Providers._**

7       ***Interrogatory Nos. 22, 23, 24, and 25*** seek the identification, account numbers,
8 and dates of service of telecommunications and internet service providers that delivered
9 service to plaintiff or any business he owned from 2008 through 2018. [Doc. No. 97, at
10 pp. 66-74.] In response to these interrogatories, plaintiff listed several boilerplate
11 objections, including relevance. He also objected that these interrogatories are overly
12 broad as to time, because they are not limited to the proposed class period and overly
13 burdensome because it would be costly in time and money to compile this information.
14 However, in response to Interrogatory Nos. 23 and 25, plaintiff did identify the
15 telecommunications service providers for each of the telephone numbers that are at issue
16 in the First Amended Complaint for "the [proposed] class period" (*i.e.*, 2015 to the
17 present [Doc. No. 3, at p. 5]). [Doc. No. 97, at pp. 67, 73.]

18       ***Document Request Nos. 31 and 32*** seek production of all documents plaintiff
19 and/or any of plaintiff's businesses received from any internet service provider,
20 "including without limitation, invoices, from 2008-2018." [Doc. No. 98, at pp. 80, 84.]
21 In response to these requests, plaintiff made boilerplate objections, including relevance,
22 and stated he is withholding documents based on his objections. Plaintiff also objected
23 because the time of these requests is not limited to the proposed class period and because
24 it would be time-consuming and costly to compile the requested documents. [Doc.
25 No. 98, at pp. 80-81, 84-85.]

26       Defendant seeks ten years' worth of identifying information about plaintiff's
27 telecommunications and internet service providers, as well as detailed documents from
28 his internet service providers, to further its contention that plaintiff should not be

17cv1127-WQH(KSC)

permitted to represent the proposed class because he is a "professional plaintiff." [Doc. No. 97, at pp. 64-65; Doc. No. 98, at pp. 5-11, 81, 86.] Defendant also contends that identification of plaintiff's internet service providers "is relevant to plaintiff's internet browsing history to determine whether he actively searched, for example, for health insurance or entered information into landing pages for health insurance in order to consent to or invite calls so that he could concoct his TCPA violations." [Doc. No. 97, at p. 64; Doc. No. 98, at pp. 82-83, 86-87.] In other words, it appears defendant believes that identification of plaintiff's internet service providers is relevant to the issue of consent, because it could lead to disclosure of his browsing history. [Doc. No. 97, at p. 65; Doc. No. 98, at pp. 82-83, 86-87.]

As outlined in the following section of this Order, plaintiff's internet searches or browsing history on certain topics are highly relevant to the issue of consent. As a result, plaintiff must respond to certain narrowly tailored discovery requests about his internet searches and/or browsing history. However, there are significant privacy concerns with requiring an individual to broadly produce or disclose "browsing history." *See, e.g.*, *Riley v. California*, 573 U.S. 373, 395–396 (2014). Therefore, without more, it is unlikely that the identification of any of plaintiff's internet service providers or disclosure of any documents from these providers, such as invoices, would lead to discovery of plaintiff's "browsing history" and/or his internet searches relevant to the issue of consent. In other words, defendant has not established the relevance or importance of the requested documents and information from plaintiff's internet service providers to resolving matters at issue in this case.

Defendant argues that identification of plaintiff's telecommunications service providers "is relevant to learn of, and confirm, the phone numbers which plaintiff used and which formed a basis for any TCPA action." [Doc. No. 97, at pp. 64, 67-68.] However, without more, it is unclear why defendant would need to identify plaintiff's telecommunications service providers back to 2008 to "confirm" the telephone numbers plaintiff may have used to form the basis of other TCPA actions.

As outlined more fully above, plaintiff has been ordered to identify telephone numbers he or any of his businesses have used from 2008 through 2018 that are relevant to any TCPA lawsuit and to produce telephone bills and call detail reports from his telecommunications service providers for each telephone number owned by or assigned to plaintiff for the years 2015 through 2018. The Court finds that requiring plaintiff to also identify telecommunications service providers for a ten-year period beginning in 2008 to confirm the telephone number used and to support defendant's "professional plaintiff" arguments would be cumulative, overly burdensome, and disproportionate to the needs of the case. In sum, without more, defendant has not provided a viable reason to require plaintiff to compile and produce detailed information about his telecommunications service providers for a ten-year period beginning in 2008.

Based on the foregoing, it is this Court's view that plaintiff provided satisfactory responses to Interrogatory Nos. 23 and 25 by identifying the telecommunications service providers for each of the telephone numbers that are at issue in the First Amended Complaint. In response to Interrogatory Nos. 22, 23, 24, and 25, the Court finds that it is unnecessary for plaintiff to identify all his internet and telecommunications service providers for the period 2008 through 2018. With respect to Document Request Nos. 31 and 32, it is this Court's view that defendant has not established the relevance or importance of ten years' worth of documents, such as invoices, that plaintiff or his businesses received from any internet service providers. As a result, defendant's request for an order compelling plaintiff to provide any further responses to Interrogatory Nos. 22, 23, 24, and 25 and Document Request Nos. 31 and 32 is DENIED.

## VI.    *Affirmative Defense of Consent.*

*Interrogatory No. 18* states as follows: "State whether you have ever granted consent for calls or text messages from any defendants for any of [the telephone numbers listed in the First Amended Complaint that allegedly received calls in violation of the TCPA]." [Doc. No. 97, at p. 18.] Plaintiff listed several boilerplate objections in response to this request and complained that use of the term "consent" is ambiguous, because "the

24

17cv1127-WQH(KSC)

sole TCPA affirmative defense" is "prior express written consent." [Doc. No. 97, at p. 56.] However, plaintiff did provide the following substantive response: "Plaintiff can answer that he, to the best of his knowledge and recollection, has never granted prior express written consent to any defendants in this case to autodial or transmit prerecorded messages to [any of the telephone numbers referenced above]." [Doc. No. 97, at p. 54.]

Defendant argues that plaintiff's response is evasive. [Doc. No. 97, at p. 54.] In defendant's view, plaintiff should also have addressed whether he impliedly or orally consented to receive the calls at issue in the First Amended Complaint. [Doc. No. 97, at pp. 54-55.]

Interrogatory No. 18 is worded as a request for admission. A request for admission asks a party to admit "the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either. . . ." Fed.R.Civ.P. 36(a)(a)(A). Pursuant to Federal Rule of Civil Procedure 36(a)(4), a party responding to a request for admission must "specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter, and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. . . ." Fed.R.Civ.P. 36(a)(4).

Here, defendant essentially denied the request with some qualifications based on his view of the applicable law. In doing so, it is this Court's view that plaintiff "fairly respond[ed] to the substance of the matter." Fed.R.Civ.P. 36(a)(4). Plaintiff was asked a general question (*i.e.*, whether he "ever granted consent for calls or text messages from any defendants") and responded accordingly. He was not asked about specific actions or inactions or specific statements that could potentially constitute consent to receive calls or text messages. If defendant wanted a more specific answer, it should have asked a more specific question. The Court will not "rewrite a party's discovery request to obtain the optimum result for that party. That is counsel's job." [Doc. No. 102, at p. 8, and cases

cited therein.] Therefore, defendant's request for an order requiring plaintiff to provide a further response to Interrogatory No. 18 is DENIED.

*Interrogatory No. 19* expects plaintiff to state whether he ever granted consent to calls or text message from defendants "for any numbers not referenced" in the First Amended Complaint. [Doc. No. 97, at 56.] *Interrogatory No. 20* requests that plaintiff identify "each date" he "consented to receive phone calls or text messages from any of the defendants." [Doc. No. 97, at p. 58.] *Interrogatory No. 21* requests that plaintiff identify "each date" he revoked consent to receive phone calls or text messages from defendants. [Doc. No. 97, at p. 60.] Again, plaintiff responded to these interrogatories with several boilerplate objections. He also objected that the use of the term "consent" is ambiguous, because "the sole TCPA affirmative defense" is "prior express written consent." [Doc. No. 97, at pp. 56, 59, 62.] Plaintiff then denied that he ever "granted prior express written consent to any defendants . . ." to call or text any of the telephone numbers listed in the First Amended Complaint. [Doc. No. 97, at pp. 56, 59, 62.]

Defendant is not satisfied with plaintiff's responses to these interrogatories, because he did not provide any dates of consent or revocation and did not address whether he impliedly or orally consented to receiving calls or text messages from any of the defendants as to the telephone numbers listed in the First Amended Complaint or any other telephone numbers. [Doc. No. 97, at pp. 57-58, 59-60, 62.] In this Court's view, defendant's use of the term "consent" in these interrogatories is ambiguous, and plaintiff provided adequate responses to Interrogatory Nos. 19, 20, and 21, as worded. As with Interrogatory No. 18, Interrogatory Nos. 19, 20, and 21 ask general questions using the undefined word "consent." [Doc. No. 97, at pp. 56, 58, 60.] Plaintiff responded by repeating that "to the best of his knowledge and recollection, [he] has never granted prior express written consent to any defendants in this case to autodial or transmit prerecorded messages to [any of the telephone numbers referenced in the First Amended Complaint]." [Doc. No. 97, at pp. 59, 62.] He was not asked about dates of specific actions or inactions or specific statements that could potentially constitute consent or revocation of consent to receive calls or text

26

messages from defendants. Assuming he did not give his consent based on his view of the applicable law, there could not have been a revocation. If defendant wanted more specific answers, it should have asked more specific questions. The Court will not "rewrite a party's discovery request to obtain the optimum result for that party. That is counsel's job." [Doc. No. 102, at p. 8, and cases cited therein.] Accordingly, defendant's request for an order requiring plaintiff to provide further responses to Interrogatory Nos. 19, 20, and 21 is DENIED.

***Document Request No. 47*** seeks: "All documents relating to [plaintiff's] consent to receive telephone calls from defendant, including without limitation, any alleged revocation of consent to receive telephone calls from defendant." [Doc. No. 98, at p. 119.] Plaintiff responded to this request with several boilerplate objections, including relevance, vagueness, and ambiguity. He specifically objects to defendant's use of the word "consent" as vague and ambiguous, because it is his position that "prior express written consent" is the "sole TCPA affirmative defense," so defendant is seeking documents that are "far afield from the actual defense." [Doc. No. 98, at pp. 119, 123.] Based on his objections, plaintiff is withholding responsive documents. [Doc. No. 98, at pp. 119-120.]

The briefing in the Joint Motion indicates that the parties' dispute is, at least in part, based on the definition of the word "consent." Defendant's position seems to be that the definition of "consent" for TCPA purposes can be inferred from an individual's actions or inactions and can be express, implied, oral, or written. [Doc. No. 98, at p. 121.] Thus, defendant's position is that plaintiff should be required to produce responsive documents indicating "whether he orally or impliedly consented to or revoked consent to receive the calls at issue." [Doc. No. 98, at p. 121.] As an example, defendant suggests that plaintiff could have consented to or invited the calls alleged in the First Amended Complaint if he actively searched for health insurance on the internet and entered information on landing pages for health insurance products and services. [Doc. No. 98, at p. 82.]

Plaintiff's position is that there is no "generalized 'consent' defense" under the TCPA. Rather, the only "consent" defense available to defendant under the TCPA is "prior

27

express written consent." [Doc. No. 98, at pp. 83, 123.] Therefore, plaintiff's view is that it would not be relevant if he consented in any other manner. In other words, plaintiff contends that the requested documents would be irrelevant even if he did "invite" or impliedly "consent" to receiving any insurance calls, because he did not give "prior express written consent." [Doc. No. 98, at p. 84.] In support of this argument, plaintiff cites 47 C.F.R. § 64.1200(f)(8), which defines the term "prior express written consent" as follows: "Prior express written consent" means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8). In addition, "signature" can include "an electronic or digital form of signature. . . ." 47 C.F.R. § 64.1200(f)(8)(i).

When the cited regulation is viewed in its entirety and in context, however, the reasons for defendant's broader view of consent become apparent. "Prior express written consent" is only required by the regulations when an automatic telephone dialing system or an artificial or prerecorded voice are used to make calls that qualify as "advertisements" or "telemarketing." 47 C.F.R. 47.64.1200(a)(2) & (f)(8). If telephone calls made using an automatic telephone dialing system or an artificial or prerecorded voice do not constitute "advertisement" or "telemarketing," a lower standard of "prior express consent" applies. 47 C.F.R. 64.1200(a)(1)(iii) & (2). In other words, "[t]he type of consent required depends on the content of the message." *An Phan v. Agoda Company Pte. Ltd.*, 351 F.Supp.3d 1257, 1261 (N.D. Cal. 2018). For example, calls made to "facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements." *Id.* at 1263.

In *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit indicated that consumers give "prior express consent" to be contacted on their cellular telephones when they "knowingly release their phone numbers." *Id.* at

1044. When consumers knowingly release their cellular telephone numbers they have, in effect, "given their invitation or permission to be called at the number." *Id.* However, simply providing a telephone number does not mean that a consumer can be contacted at that number "for any purpose whatsoever." *Id.* at 1045. "Instead, the consent must be considered to relate to the type of transaction that evoked it." *Id.* "[A]n effective consent is one that relates to the same subject matter as is covered by the challenged calls or text messages." *Id.* at 1044-1045.

In *An Phan v. Agoda*, 351 F.Supp.3d 1257, for example, the plaintiff booked four hotel reservations on the defendant's website. During the booking process, the plaintiff provided personal information, including his cellular telephone number, and agreed to the defendant's Privacy Policy and Terms of Use. The Terms of Use stated that the customer agreed to receive "transactional" confirmation messages that are not "marketing messages." *Id.* at 1259. The customer cannot opt out of receiving these text messages. *Id.* at 1260. The plaintiff also opted in to receiving defendant's marketing messages. *Id.* After the booking process was complete and the hotel had confirmed the plaintiff's reservations, a messaging service retained by defendant sent plaintiff text messages to confirm the bookings. *Id.* The text messages confirmed the booking numbers and advised the plaintiff he could manage his booking with the defendant's "free app." *Id.* at 1258-1259. The "free app" provided customers with information to assist them with travel reservations and allowed them to manage existing bookings and create new bookings. *Id.* at 1259. Plaintiff filed suit claiming the text messages violated the TCPA. The defendant filed a summary judgment motion arguing there was no TCPA violation, because plaintiff gave prior express consent to receiving the text messages and because the text messages did not constitute advertising or telemarketing. *Id.* at 1261. The District Court granted summary judgment to the defendant, finding that the text messages did not qualify as advertising or telemarketing, because they were sent as part of an ongoing business transaction. *Id.* at 1265. The text messages only confirmed the booking and encouraged the plaintiff to "manage" his reservations using the app. *Id.*

1 | The app was mentioned in the text messages "to facilitate, complete, or confirm a
2 | commercial transaction;" and the plaintiff expressly consented to receiving the text
3 | messages when he voluntarily provided his telephone number and agreed to the
4 | defendant's Terms of use and Privacy Policy. *Id.* at 1266.
5 |      Similarly, calls made for informational purposes do not qualify as "marketing"
6 | and/or "telemarketing." In *Smith v. Blue Shield of Ca.*, 228 F.Supp. 3d 1056 (C.D. Cal.
7 | 2017), for example, the plaintiff completed an application for health insurance through
8 | Blue Shield. As part of the application process, plaintiff provided her telephone number.
9 | *Id.* at 1057. Plaintiff's coverage was set to renew automatically, but insurers can modify
10 | plans in various ways before the renewal goes into effect. *Id.* at 1057-1058. Insurers are
11 | required to provide written notice of the renewal, and before the renewal takes effect, the
12 | individual can opt to select different coverage or a different insurer. *Id.* at 1058. To provide
13 | the required notice, Blue Shield first sent form letters and packets of information to its
14 | insureds, but a number of these were returned as undeliverable. As a result, Blue Shield
15 | decided to call its existing insureds, including the plaintiff, using a pre-recorded message
16 | to alert them that the information had been mailed to them. *Id.* The pre-recorded message
17 | also advised insureds that the packets included information about changes to their
18 | coverage, indicated where they could find more information online, and told them where
19 | to call if they did not receive their packets. *Id.* at 1059. The parties agreed that plaintiff
20 | "provided [prior] express consent" to the call, because she included her cellular telephone
21 | number on the insurance application. *Id.* at 1065. The plaintiff argued that the calls were
22 | telemarketing in that they encouraged the purchase of a good, product, or service, and the
23 | clear intent of the calls was to retain customers and receive premiums. It was therefore the
24 | plaintiff's view that Blue Shield was required to have her "prior express written consent"
25 | to make the calls. *Id.* at 1065. Applying a "common sense" approach, the District Court
26 | disagreed with the plaintiff and granted Blue Shield's summary judgment motion,
27 | concluding that the calls were for informational purposes and were "devoid of marketing
28 | content," so "prior express written consent" was not required. *Id.* at 1065-1068.

"[C]onsumers may revoke consent though any reasonable means, either orally or in writing." *Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1102 (N.D. Cal. 2015). However, "[r]evocation of consent must be clearly made and express a desire not to be called or texted." *Van Patten v. Vertical Fitness Group*, LLC, 847 F.3d 1037 (9th Cir. 2017).

When viewed in the context of 47 C.F.R. § 64.1200 and relevant case law, the Court agrees with defendant that discovery on the issue of "consent" should not be limited to whether plaintiff gave "prior express written consent" to receiving the calls at issue in the First Amended Complaint. At this point in the proceeding, there has been no determination as to whether the calls alleged in the First Amended Complaint constitute advertising or telemarketing, so both "consent" theories are relevant, and defendant is entitled to pursue its theory of the case where relevance is established under the standards set forth in Federal Rule 26(b)(1).

Although the Court agrees with plaintiff that Document Request No. 47 is ambiguous as worded, because it does not describe the requested documents with the "reasonable particularly" required by Federal Rule 33(b)(1)(A), defendant did provide an example in the Joint Motion that clarifies what documents are being requested. In this regard, defendant suggests that plaintiff could have consented to or invited the calls alleged in the First Amended Complaint if he actively searched for health insurance on the internet and entered information on landing pages for health insurance products and services. [Doc. No. 98, at p. 82.]

In a prior Order filed on December 21, 2018, in connection with plaintiff's discovery dispute with another defendant, HII, the Court addressed similar discovery requests. [Doc. No. 118, at pp. 14-17.] In this prior Order, plaintiff was directed to provide a full and complete response to an interrogatory seeking identification of any insurance websites he used to search for insurance and any insurance websites he provided with a telephone number. In addition, plaintiff was directed to produce several different types of related documents, such as e-mails he received from any third party after entering his telephone

31

1  number and/or e-mail address on an insurance-related website.  [Doc. No. 118, at pp. 14-
2  17, 35.]

3       Since the Court's December 21, 2018 Order addresses similar discovery requests
4  served on plaintiff by defendant HII that were more specific in seeking documents relevant
5  to the issue of "consent," the Court finds that defendant Donisi Jax, Inc. is entitled to
6  production of the same documents.  In short, defendant's request for an order compelling
7  plaintiff to produce documents in response to Document Request No. 47 is GRANTED to
8  the extent defendant seeks disclosure of the same information and production of the same
9  documents plaintiff was directed to provide to defendant HII in the Court's Order of
10 December 21, 2018 in response to HII's Interrogatory No. 8, as re-written, HII's Document
11 Request Nos. 20 and 22, as narrowed, and HII's Document Request Nos. 24 and 26.[4]  [Doc.
12 No. 118, at pp. 14-17, 35.]  In addition, defendant's request for an order compelling
13 plaintiff to produce documents in response to Document Request No. 47 is also
14 GRANTED to the extent it seeks production of any documents indicating plaintiff
15 contacted any of the defendants orally or in writing to express a desire not to be called or
16 texted.  Defendant's request for an order compelling production of any other documents in
17 response to Document Request No. 47 is DENIED.

18      ***Document Request No. 43*** seeks: "All documents relating to any products [plaintiff]
19 has signed up for and/or purchased that are part of any lawsuit in which [plaintiff] was a
20 party from 2008-2018." [Doc. No. 98, at p. 109.]  ***Document Request Nos. 45 and 46***
21 seek documents "evidencing" plaintiff's "internet browsing history" related to "health
22 insurance plans" from 2008 through 2018 and any products or services that are or were part

23
24

25  [4]    The Court's December 31, 2018 Order inadvertently did not include a directive for
26  plaintiff to respond to HII's Document Request No. 26.  [Doc. No. 118, at pp. 15-17.]  To
    the extent plaintiff has not already done so, he is hereby ordered to produce any
27  documents to defendants HII and Donisi Jax, Inc. that are responsive to HII's Document
    Request No. 26 but have not already been produced in response to other document
28  requests.

of any lawsuit in which plaintiff was a party from 2008 through 2018. [Doc. No. 98, at pp. 112-119.] In response to these requests, plaintiff made only boilerplate objections and represented that he is withholding responsive documents based on his objections. [Doc. No. 98, at pp. 110, 114-115.]

Defendant argues that the requested documents are relevant to the issues of consent and plaintiff's status as a "professional plaintiff." [Doc. No. 98, at p. 111.] In support of these arguments, defendant cites testimony from plaintiff's deposition indicating he has filed TCPA lawsuits involving products other than health insurance. [Doc. No. 98, at pp. 111, 115-116, 118-119.] According to defendant, documents responsive to these requests could show plaintiff consented to or "concoct[ed]" his TCPA claims by actively searching for health insurance and/or other products on the internet and then entering personal information onto landing pages. [Doc. No. 98, at p. 113.] Once again, plaintiff argues in the Joint Motion that these requests seek documents that are irrelevant, because the only "consent" defense available to defendant under the TCPA is "prior express written consent," so it would not be relevant if he consented in any other manner. [Doc. No. 98, at pp. 83-84, 116, 119.] However, for the reasons outlined above, the Court has rejected plaintiff's argument that discovery in this case should be limited to whether he gave "prior express written consent" to the telephone calls at issue in the First Amended Complaint.

Essentially, Document Requests Nos. 43, 45, and 46 seek to discover the same types of documents relevant to the issue of consent that were requested in response to Document Request No. 47, but these requests are specifically calculated to discover documents that pertain to plaintiff's involvement in other TCPA cases. In other words, these requests appear to seek prior acts evidence, which may be relevant to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b)(2). [*See also* Doc. No. 118, at pp. 28-31 (indicating that some disclosure of other claims and lawsuits would be ordered because "evidence of a party's prior acts in the course of other litigation may be admissible if relevant to disputed issues such as motive, state of mind, and credibility").] In this regard, defendant is entitled to

discover information about any products or services plaintiff or any of his businesses signed up for and/or purchased that are relevant to any TCPA lawsuit in which plaintiff or any of his businesses is a party.

There is also case law indicating the type of evidence defendant seeks in response to Document Request Nos. 43, 45, and 46 could be relevant to the typicality requirement in Federal Rule 23(a) if it could be used to establish that plaintiff would be subject to a "consent" defense that would only apply to him or a small subset of potential class members. In *CE Design Limited v. King Architectural Metals*, 637 F.3d 721 (7th Cir. 2011), for example, the Seventh Circuit vacated a class certification order in a TCPA case about "unsolicited" fax advertisements and remanded the case for further proceedings. *Id.* at 723, 728. The defendant was a manufacturer of metal building components who faxed about 500,000 advertisements as part of a marketing campaign. *Id.* at 724. The plaintiff, a small civil engineering firm that had also filed about 150 class actions under the TCPA as part of its business plan, received two fax advertisements from the defendant. *Id.* at 723. The defendant argued that the plaintiff's claims were not typical of the class, because the plaintiff would be subject to a "consent" defense that would either be peculiar to the plaintiff or to only a small subset of the plaintiff class. There was evidence indicating the plaintiff advertised its fax number on its website and authorized the publication of its fax number in a directory known as the Blue Book of Building and Construction. To be listed in the directory, the plaintiff signed a subscriber form agreeing to allow contact via fax by other subscribers of the directory. *Id.* at 725. Therefore, the Seventh Circuit concluded there was a substantial question as to whether the representative plaintiff had expressly consented to the fax communications in question. As a result, the Seventh Circuit ruled there was an error in treating the issue of "express consent" as "immaterial" to the determination of whether the representative plaintiff's claims were typical under Federal Rule 23(a) and whether the representative plaintiff could adequately represent the interests of the class. *Id.* at 727.

On the other hand, the Court finds that Document Request Nos. 43, 45, and 46 are burdensome and overly broad in that they seek production of documents "*relating to* any products or services" that are or were part of "any" TCPA lawsuit in which plaintiff was a party for ten years from 2008 through 2018, and we now know that plaintiff filed over one hundred lawsuits or small claims during this time. [Doc. No. 98, at pp. 109, 114, 116-117 (emphasis added).] Given the number of years involved and the potential number of TCPA cases involving products or services, these document requests, as worded, are overly broad as they could be read to require production of all documents filed or produced in any of plaintiff's TCPA cases involving products or services, regardless of the relevance or importance of the documents. As a result, the Court finds that these requests should be more narrowly tailored to discover relevant information. In this regard, the Court finds that plaintiff must identify any products or services that are or were relevant to any TCPA lawsuit in which plaintiff and/or his businesses was or is a party for the years 2008 through 2018. Plaintiff must identify any such products or services along with the related lawsuits by case number, case name, and the court where the case was filed. In sum, defendant's request for an order compelling plaintiff to produce documents in response to Document Request Nos. 43, 45, and 46 is GRANTED, as narrowed.

***Document Request No. 44*** seeks production of documents "evidencing [plaintiff's] internet browsing history from 2008-2018 relating to health insurance plans." [Doc. No. 98, at p. 112.] Plaintiff responded to this request with several boilerplate objections, including relevance, vagueness, ambiguity, and privacy. He also indicated he is unable to answer the request and is withholding documents based on his objections. [Doc. No. 98, at pp. 112-113.]

As mentioned above, there are significant privacy concerns with requiring an individual to broadly produce or disclose "browsing history." *See, e.g., Riley v. California*, 573 U.S. at 395–396. Without more, it would be unreasonable to expect plaintiff to have and to produce documents "evidencing" his browsing history on a narrow topic for a ten-year period. However, for the reasons outlined above, plaintiff's "browsing history" about

17cv1127-WQH(KSC)

health insurance is highly relevant to the issue of consent for the proposed class period of 2015 to the present. Therefore, defendant's request for an order compelling plaintiff to produce documents in response to Document No. 44 "evidencing" his internet browsing history from 2015 to the present relating to health insurance or health insurance plans is GRANTED.

For the years prior to 2015 (*i.e.*, 2008 through 2015), plaintiff's "browsing history" on the topic of "health insurance" or "health insurance plans" would only be relevant to the issue of consent in this case, if health insurance plans were relevant to any other TCPA lawsuit in which plaintiff or any of his businesses was a party during these years. In other words, to the extent health insurance or health insurance plans were relevant to any other TCPA lawsuit in which plaintiff or any of his businesses was involved from 2008 to 2015, the Court finds defendant is entitled to production of any documents "evidencing" plaintiff's internet browsing history for these years. In sum, defendant's request for an order compelling plaintiff to produce documents responsive to Document Request No. 44 is GRANTED, as narrowed. Defendant's request for an order compelling plaintiff to produce any other documents in response to Document Request No. 44 is DENIED for failure to establish relevance or importance.

In sum, defendant's request for an order compelling plaintiff to provide further responses to Interrogatory Nos. 18, 19, 20, and 21 is DENIED. Defendant's request for an order compelling plaintiff to provide further responses and produce document in response to Document Request Nos. 43, 44, 45, 46, and 47 is GRANTED in part and DENIED in part as outlined and as narrowed above.

### VII. *Corporate Documents.*

***Document Request No. 13*** seeks articles of incorporation, bylaws, and minutes for any business owned by plaintiff from 2008 through 2018. [Doc. No. 98, at p. 43.] Plaintiff responded to this request with boilerplate objections and stated he is withholding responsive documents based on his objections. [Doc. No. 98, at pp. 43-44.] Defendant argues that the requested documents are relevant, because defendants have information

36

indicating one of the telephone numbers that plaintiff identified in the First Amended Complaint was submitted to the Real Yellow Pages for a business named "Market[ing] Support Solutions." [Doc. No. 98, at p. 45.] However, as worded, the Court finds that Document Request No. 13 is overly broad. Corporate documents for businesses that have no connection to any TCPA litigation are not relevant. Nor is it necessary for plaintiff to produce *all* bylaws and minutes for ten years as to any business he owns that is connected to any TCPA litigation.

In a prior Order filed in this action on December 21, 2018 [Doc. No. 118], the Court addressed a dispute over similar discovery requests served on plaintiff by defendant HII. In connection with HII's discovery requests, defendant HII submitted evidence indicating that plaintiff was the owner of a business known as Marketing Support Systems, and that one of the cellular telephone numbers at issue in the First Amended Complaint was registered to this business. [Doc. No. 118, at pp. 18-19.] Based on HII's argument and the supporting evidence submitted by defendant HII, the Court ordered plaintiff to produce certain corporate documents and records for the business known as Marketing Support Systems. [Doc. No. 118, at pp. 27-28, 35-36.] Based on the discussion in the December 21, 2018 Order and the evidence previously submitted by HII, the Court finds that defendant Donisi Jax, Inc. is entitled to production of the same documents.

In sum, defendant's request for an order compelling plaintiff to produce documents in response to Document Request No. 13 is GRANTED in part and DENIED in part. Defendant's request is GRANTED to the extent it seeks production of the same corporate documents previously produced by plaintiff to defendant HII in response to the Court's December 21, 2018 Order. [Doc. No. 118, at pp. 27-28, 35-36.] In short, plaintiff must produce "any official corporate documents, such as ownership or stock certificates, articles of incorporation, bylaws, or meeting minutes that reveal: (1) the identities of any owners or officers of the business Marketing Support Systems during the period April 6, 2017 through June 5, 2017; and (2) the type of business Marketing Support Systems

1  engaged in during the period April 6, 2017 through June 5, 2017." [Doc. No. 118, at p.
2  27.] The responsive documents would not necessarily be dated April 6, 2017 through
3  June 5, 2017 but must reveal the identities of any owners or officers of Marketing
4  Support Systems for this time.

5      In response to Document Request No. 13, plaintiff must also produce the same
6  corporate documents for any business he owned that was named as a party in any TCPA
7  litigation from 2008 through 2018. In addition, plaintiff must produce the same corporate
8  documents for any business he owned if any telephone number assigned to, owned by, or
9  used by the business is relevant to any TCPA litigation from 2008 through 2018,
10  regardless of whether the business is named as a party in that litigation. In short, for the
11  above-described businesses, plaintiff must produce any official corporate documents,
12  such as ownership or stock certificates, articles of incorporation, bylaws, or meeting
13  minutes that reveal: (1) the identities of any owners or officers of the business from 2008
14  through 2018; and (2) the type of business engaged in from 2008 through 2018. The
15  responsive documents would not necessarily be dated during the years 2008 through 2018
16  but must reveal the identities of any owners or officers and the type of business engaged
17  in for this time. To the extent defendant seeks an order compelling plaintiff to produce
18  any other documents in response to Document Request No. 13, defendant's request is
19  DENIED for failure to establish relevance and importance and because the request is
20  overly broad.

21  **VIII.  _Documents Re Plaintiff's Telephone Logs_.**

22      As Exhibit 1 to the First Amended Complaint, plaintiff attached a two-page list of
23  telephone calls that allegedly violated the TCPA. [Doc. No. 3-1, at pp. 1-2.] **_Document_**
24  **_Request No. 34_** seeks production of any drafts of Exhibit 1. [Doc. No. 98, at p. 89.]
25  Plaintiff responded to Document Request Nos. 34 with boilerplate objections. However,
26  he represented there are no other "drafts" of Exhibit 1. [Doc. No. 98, at p. 89.]

27      In the Joint Motion, defendant explained that during the parties' meet and confer
28  discussions plaintiff agreed to produce a copy of Exhibit 1 with "metadata." [Doc. No.

1 | 98, at p. 90.] Plaintiff represents that his understanding of the agreement is that
2 | defendant would narrow the scope of Document Request No. 34 so that plaintiff's
3 | response would be complete if he produces Exhibit 1 with "metadata." [Doc. No. 98, at
4 | p. 90.] Although plaintiff agreed to produce Exhibit 1 with "metadata," it appears he has
5 | not done so because he is waiting for defendant to send him a narrow, amended request.
6 | [Doc. No. 98, at p. 90.] In this Court's view, it is unnecessary for defendant to send
7 | plaintiff an amended request. Plaintiff can simply amend his response to Document
8 | Request No. 34 to indicate to the best of his knowledge and based on a reasonable search
9 | that Exhibit 1 with "metadata" is the only responsive document to this request and that he
10 | will produce this document. Under the circumstances, defendant's request for an order
11 | compelling plaintiff to produce Exhibit 1 with "metadata" is GRANTED.

12 | ***Document Request No. 35*** seeks production of all documents "relating to"
13 | Exhibit 1. [Doc. No. 98, at p. 91.] In response to this request plaintiff made boilerplate
14 | objections but indicated that in response to this request he would produce his telephone
15 | bills, call detail reports, the latest compilation of his "call notes for each individual call,"
16 | and "audio recordings and other HII sales related documents" since these documents
17 | "speak directly to the calls at issue in the case." [Doc. No. 98, at p. 92.]
18 | In the Joint Motion, plaintiff explained that it is difficult to determine the scope of
19 | Document Request No. 35, because the term "relating to" makes it so overly broad that it
20 | could "literally" refer to "every document in the case" as all documents in the case would
21 | in some way "relate to" the calls listed on Exhibit 1. [Doc. No. 98, at pp. 93-94.]
22 | Plaintiff believes the parties agreed that production of Exhibit 1 with "metadata" would
23 | "satisfy" Document Request Nos. 34 and 35. [Doc. No. 98, at p. 93.] By contrast,
24 | defendant states in the Joint Motion that counsel represented plaintiff does not have any
25 | documents responsive to this request. As a result, defendant argues that the Court should
26 | order plaintiff to supplement or amend his response to state that no such documents exist.
27 | [Doc. No. 98, at pp. 92-93.]
28 |

17cv1127-WQH(KSC)

1    Given the broad wording of the request, the Court agrees with plaintiff that it is

2  difficult to determine the appropriate scope of Document Request No. 35.  In this Court's

3  view, plaintiff provided defendant with an adequate response when he listed the

4  documents he believes are directly related to Exhibit 1 and agreed to produce them, along

5  with a copy of Exhibit 1 that includes metadata.  The only problem is that it is unclear

6  whether plaintiff has produced all documents as agreed.  Under the circumstances,

7  plaintiff must also amend his response to indicate to the best of his knowledge and based

8  on a reasonable search that all documents directly related to Exhibit 1 have been

9  produced.  Therefore, defendant's request for an order compelling plaintiff to provide a

10  further response to Document Request No. 35 is GRANTED.

11    ***Document Request No. 36*** requests that plaintiff produce all documents "relating

12  to" his efforts to log telephone calls, faxes, or text messages that plaintiff may use in

13  ***future*** lawsuits against any party. [Doc. No. 98, at p. 94 (emphasis added).] ***Document***

14  ***Request Nos. 37 and 38*** seek production of "[a]ll documents created or used by [plaintiff

15  and any business he owns] to log telephone calls, faxes, or text messages that are the

16  subject of ***any*** lawsuit in which [plaintiff] claimed a violation of the TCPA from 2008-

17  2018." [Doc. Nos. 98, at pp. 96, 98 (emphasis added).]

18    In response to Document Request Nos. 36, 37, and 38, plaintiff declined to produce

19  "any logging" documents for telephone calls, texts, or faxes "subject to TCPA litigation

20  outside of this case." [Doc. No. 98, at pp. 95-100.]  Plaintiff also indicated in his

21  responses that he is withholding documents from production based on his objections.

22    Defendant argues in the Joint Motion that logging of calls, texts, or faxes by

23  plaintiff that fall "outside of this case" are relevant to whether plaintiff "is a professional

24  or habitual TCPA litigant;" whether plaintiff's claims are typical of a putative class; and

25  whether plaintiff can adequately represent the interests of the putative class" given his

26  involvement in numerous other TCPA lawsuits. [Doc. No. 98, at pp. 95-100.]

27    As noted above, plaintiff readily admitted he is a "professional plaintiff" when he

28  testified to filing more than 100 cases alleging TCPA violations.  Because of plaintiff's

involvement in other TCPA litigation, the Court has ordered him to produce numerous

documents and information that relate to these cases from January 1, 2010 through the

present. Without more, the Court has no reason to believe disclosure of documents

showing plaintiff logged telephone calls, texts messages, or faxes for use in other TCPA

litigation would be important to resolving class certification or other issues in this case.

In addition, requiring plaintiff to produce any such documents solely to support

defendant's "professional plaintiff" arguments would be cumulative, overly burdensome,

and disproportionate to the needs of the case.   Therefore, defendant's request for an

order compelling plaintiff to produce documents in response to Document Request Nos.

36, 37, and 38 is DENIED.

In sum, defendant's request for an order compelling plaintiff to produce "Exhibit 1

with metadata" and other documents as agreed in response to Document Request Nos. 34

and 35 is GRANTED.  However, defendant's request for an order compelling plaintiff to

produce documents in response to Document Request Nos. 36, 37, and 38 is DENIED.

## IX.   *"Feigned Interest" Documents.*

In paragraph 42 of the First Amended Complaint, plaintiff alleges that during at

least one of the calls he received from "Helping Hand" he "feigned interest to determine

the true identity of the caller and relationship of the defendants and faked buying a

policy. . . ." [Doc. No. 3, at pp. 10-11.] ***Document Request No. 39*** seeks "[a]ll

documents relating to" these allegations in paragraph 42 of the First Amended

Complaint. [Doc. No. 98, at p. 100.] ***Document Request Nos. 40, 41, and 42*** also

request documents related to certain allegations in the First Amended Complaint

indicating plaintiff "feigned interest," "had to fake buying a policy," or sign up for a

"plan" to learn the identity of a caller. [Doc. No. 98, at pp. 102-105, 107.]

Plaintiff responded to Document Request Nos. 39, 40, 41, and 42 with boilerplate

objections, but he also provided the following substantive response to each of these

requests:

41

1          [Plaintiff] makes call notes for each individual call, a copy of the
2    latest compilation of which is produced herewith.  Also, [plaintiff] will
     produce copies of the audio recordings and other HII sales related
3    documents previously produced to [defendant HII] herewith since they speak
     directly to the calls at issue in this case and therefore theoretically 'relate to'
4    the allegation.

5
           [Plaintiff] will produce copies of the phone bill and associated phone
6    company call detail report[] documents sought [subject to a confidentiality
7    Protective Order].

8

9    [Doc. No. 98, at pp. 100-108.]

10         Defendant represents in the Joint Motion that plaintiff's counsel indicated during

11   meet and confer discussions that plaintiff had produced all responsive documents.

12   However, defendant requests a clarifying declaration from plaintiff indicating that all

13   responsive documents have been produced, because of the ambiguity in plaintiff's

14   responses and because some responsive documents had not been produced at the time the

15   parties' Joint Motion was filed.  [Doc. No. 98, at pp. 102, 104, 106-107, 109.]  In the

16   Joint Motion, plaintiff argues it is unnecessary for him to provide supplemental or

17   amended responses to these requests, because his responses "already state[] exactly what

18   defendant asks to be stated . . . ."  [Doc. No. 98, at pp. 102, 105, 107, 109.]

19         As noted above, a confidentiality Protective Order was entered in this case on

20   October 25, 2018. [Doc. No. 100.]  Therefore, telephone bills and call detail reports

21   should have been produced as agreed, but it is unclear whether plaintiff has done so based

22   on the information provided in the parties' Joint Motion.  [*See also* Section IV above,

23   ordering plaintiff to produce telephone bills and call detail reports as narrowed by the

24   Court.]  It is also unclear from plaintiff's responses and his statements in the Joint

25   Motion whether all responsive documents have been produced.

26         Under the circumstances presented, defendant's request for an order compelling

27   plaintiff to produce documents in response to Document Request Nos. 39, 40, 41, and 42

28   is GRANTED.  In addition, the Court finds that defendant is entitled to a declaration

1  from plaintiff under penalty of perjury clarifying that "to the best of [his] knowledge,

2  information, and belief formed after a reasonable inquiry" all responsive documents have

3  been produced. Fed.R.Civ.P. 26(g)(1).

4  **_X.    Miscellaneous Document Requests._**

5      **_Document Request Nos. 48, 49, and 50_** seek production of any documents plaintiff

6  used to respond to interrogatories; any documents identified in plaintiff's response to

7  interrogatories; and communications that mention this lawsuit. The briefing on these

8  documents requests indicate that defendant agreed to narrow the requests and plaintiff

9  agreed to produce copies of non-privileged documents, including audio recordings; call

10  notes; sales related documents previously produced to HII; and "three emails plaintiff

11  sent on the listserv discussed during plaintiff's deposition." [Doc. No. 98, 123-130.] As

12  a result, there is no dispute for the Court to resolve unless plaintiff did not produce

13  documents as agreed. Accordingly, defendant's request for an order compelling

14  responses Document Request Nos. 48, 49, and 40 is DENIED without prejudice. If

15  plaintiff failed to produce documents as agreed, defendant may request an order

16  compelling him to do so.

17  **_XI.    Electronically Stored Information._**

18      **_Document Request Nos. 51, 52, and 53_** seek production of any documents that

19  mention any of the following terms and any documents that include any of these terms

20  that were transmitted to or from plaintiff or any business he owns: Telephone Consumer

21  Protection Act, TCPA, robo-call, robocall, auto-dialer, auto-dial, autodialer, autodial,

22  automatic dialer, automatic dial, health insurance, call center, telemarketing, telemarket,

23  telemarketer, pre-record voice, pre-recorded voice, prerecord voice, prerecorded voice,

24  FCC, and Federal Communications Commission. [Doc. No. 98, at pp. 129-136.]

25  Plaintiff responded to these requests with a list of boilerplate objections, including

26  relevance in comparison to the costs involved in retrieving the requested documents and

27  information. In addition, plaintiff indicated he is withholding responsive documents

28  based on his objections. [Doc. No. 98, at pp. 131, 134, 136.]

1      Plaintiff argues in the Joint Motion that these requests are overly broad for two

2   reasons. First, they do not include any time limits and are not restricted to the proposed

3   "class period." [Doc. No. 98, at p. 130.] The Court agrees with plaintiff that these

4   requests are overly broad in that they do not include any limitation as to time. Second,

5   plaintiff argues that these requests are "clearly intended to operate as electronic search

6   terms" to discover "electronically stored information" ("ESI") and that they are

7   disproportionate to the needs of the case, because responsive information is "not

8   reasonably accessible" under Federal Rule 26(b)(2)(B). As outlined more fully below,

9   this argument could have some merit, but plaintiff did not submit any supporting

10  evidence even though he bears the burden to do so.

11      In the Joint Motion, defendant clarifies that it is not seeking any correspondence to

12  or from plaintiff's attorneys, so the attorney-client privilege and the work product

13  doctrine should not impede plaintiff's ability to provide a full and complete response to

14  these requests. Defendant also argues that the requested documents are relevant for the

15  same reasons cited in connection with its other discovery requests, including "the issue of

16  whether plaintiff is a professional or habitual TCPA litigant." [Doc. No. 98, at p. 131,

17  134, 136.] Although defendant has not clarified this point in the Joint Motion, it does

18  appear that in response to these requests, defendant expects plaintiff to, at the very least,

19  search his home computer and e-mail accounts using the listed terms and then disclose

20  any non-privileged documents, such as e-mails, that contain the listed terms. There is

21  nothing to indicate defendant attempted to narrow the scope of these requests with any

22  limitations as to time, so it appears defendant expects plaintiff to produce responsive ESI

23  regardless of the creation date.

24      "[A] responding party should produce electronically stored information that is

25  relevant, not privileged, and reasonably accessible subject to the (b)(2)(C) limitations that

26  apply to all discovery." Fed.R.Civ.P. 26(b)(2) advisory committee note (2006

27  Amendment). Under Federal Rule 26(b)(2)(C), the Court can limit discovery that is

28  "unreasonably cumulative or duplicative" or if it "can be obtained from some other

44

source that is more convenient, less burdensome, or less expensive." Fed.R.Civ.P. 26(b)(2)(C)(i). The Court can also limit the discovery if it "is outside the scope of [the relevance standard in] Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(iii).

"The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery ***and the likelihood of finding responsive information on the identified sources***." Fed.R.Civ.P. 26(b)(2) advisory committee note (2006 Amendment) (emphasis added).

Federal Rule 26(b)(2)(B) provides as follows: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, ***the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost***. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Fed.R.Civ.P. 26(b)(2)(B) (emphasis added).

***Identification of Plaintiff's ESI Sources***. In response to Document Request Nos. 51, 52, and 53, plaintiff did not identify any sources of ESI that could potentially include relevant documents or information, even though he understood the requests to mean that defendant was seeking ESI. However, he did state that he is withholding documents based on his objections to these requests. [Doc. No. 98, at pp. 130-136.] In the Joint Motion, plaintiff refers to testimony offered during his deposition indicating he has a home computer "with a disaster recovery backup drive and two e-mail accounts." [Doc. No. 98, at p. 132.] Since plaintiff did not provide the Court with a copy of the referenced deposition testimony, it is unclear whether plaintiff explained during his deposition why he believes he does not have ESI that is reasonably accessible. It is also unclear whether

45

his home computer and e-mail accounts are the only sources of ESI that he identified during his deposition.

***Relevance and Importance***.  As this Court understands it, defendant seeks production of this ESI to discover evidence relevant to whether plaintiff's claims are typical of the class; whether he can adequately represent the class; and whether he is a "professional or habitual TCPA litigant." [Doc. No. 198, at pp. 131, 134, 136.] Defendant's arguments about the relevance of the ESI requested in response to Document Request Nos. 51, 52, and 53 are weak and unconvincing.

First, as noted above, plaintiff readily admitted he is a "professional plaintiff" when he testified to filing more than 100 cases alleging TCPA violations.  Because of plaintiff's involvement in other TCPA litigation, the Court has ordered him to produce numerous documents that relate to these cases for the years 2008 through 2018.  Without more, it appears that any remaining documents in plaintiff's e-mail accounts and/or on his home computer that have not already been produced in response to other documents requests, are likely to be cumulative of other evidence plaintiff has already produced showing he is indeed a professional plaintiff.  As a result, the Court questions whether it would be disproportionate to the needs of the case to require extensive searches of plaintiff's home computer and e-mail accounts for a long list of TCPA-related terms to locate additional documents that could only be used to further defendant's contention that plaintiff has pursued enough TCPA claims to achieve the status of "professional plaintiff."

Second, there is nothing to indicate there is any likelihood that plaintiff's home computer and/or e-mail accounts would include any non-privileged documents, *other than those already produced or ordered to be produced in response to other document requests*, that could be relevant to whether plaintiff's claims are typical of the class or whether plaintiff can adequately represent the class.  Without something more, these requests appear to be nothing more than a time-consuming and burdensome fishing expedition.

On the other hand, it is apparent that plaintiff has not provided enough information for defendant or the Court to assess "the likelihood of finding responsive information on the identified sources." Fed.R.Civ.P. 26(b)(2) advisory committee note (2006 Amendment) (emphasis added). This topic should have been addressed in plaintiff's responses, in the parties' meet and confer discussions, and in the Joint Motion. The only hint made available is that plaintiff is concerned that his home computer may include some privileged matters that could be disclosed if a "defense expert" is used to retrieve and search the data on his computer and/or backup drive. [Doc. No. 98, at p. 132.] It therefore appears that plaintiff used his home computer and/or his e-mail accounts to communicate with counsel and/or to store documents or information that could be privileged.

Without more, it is unclear whether the home computer was used for other purposes that could yield relevant documents and information that have not already been produced in response to other discovery requests. Based on arguments made by defendant in connection with other discovery requests, it is *possible* that a search of identified ESI sources for the term "health insurance" could be justified, but defendant did not make that argument in connection with these specific document requests. In short, based on the information presented, the Court is unable to evaluate the relevance or importance of the documents and information defendant seeks in response to Document Request Nos. 51, 52, and 53, or the likelihood that a search for ESI in response to these requests would yield relevant documents or information that have not already been produced in response to other discovery requests.

***Reasonable Accessibility***. Once again, "the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. at 281. Federal Rule 26(b)(2)(B) specifically states that "the party from whom discovery is sought must show that the information is not reasonably accessible ***because of undue burden or cost***." Fed.R.Civ.P. 26(b)(2)(B) (emphasis

17cv1127-WQH(KSC)

1  added).  Plaintiff did not submit any evidence to support his contention that documents

2  and information on his home computer and backup drive are not "reasonably accessible."

3  Fed.R.Civ.P. 26(b)(2)(B).

4       Plaintiff states in the Joint Motion that he does not believe his "disaster recovery

5  backup data" is "reasonably accessible" because of the cost and because it is difficult to

6  retrieve and search this type of data. [Doc. No. 98, at p. 132.] There is some precedent

7  to support plaintiff's position that "disaster recovery backup *tapes* . . . are generally

8  considered inaccessible and not subject to required review or production." *U.S. ex rel.*

9  *Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 234 (S.D. Cal. 2015) (emphasis

10 added).  On the other hand, it has also been recognized that "information technology has

11 evolved," and the costs associated with recovery depend on "a particular party's existing

12 technologies . . . ." *The Sedona Conference, The Sedona Principles, Third Edition: Best*

13 *Practices, Recommendations & Principles for Addressing Electronic Document*

14 *Production A Project of the Sedona Conference Working Group on Electronic Document*

15 *Retention and Production*, 19 Sedona Conf. J. 1, 138–39 (2018).  In the typical case, a

16 sizable corporate entity argues that its backup drives or "other archived media" are not

17 "reasonably accessible."  In *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y.

18 2003), for example, the plaintiff in an employment discrimination and retaliation case

19 was able to establish that "key evidence" in the form of e-mail exchanges which had been

20 deleted by defendant could be located on a total of ninety-four "backup tapes" that were

21 retained by the corporate employer. *Id.* at 311-313.  The estimated cost of restoring the

22 "backup tapes" was $175,000.00, exclusive of the time it would take attorneys to review

23 the recovered e-mails. *Id.* at 312.  By contrast, this case only appears to involve a backup

24 drive attached to a single home computer, and no evidence has been presented to support

25 plaintiff's contention that his backup drive is not "reasonably accessible" because of

26 undue burden or cost. Fed.R.Civ.P. 26(b)(2)(B).

27       Referring to the information on his home computer as "active data," plaintiff

28 claims there are "obstacles to obtaining and using ESI from active data," but plaintiff

48

does not explain what he means by "obstacles." [Doc. No. 98, at p. 132.] Generally, "active data" is "information residing on the direct access storage media (disk drives or servers) that is readily visible to the operating system and/or application software with which it was created and is immediately accessible to users or administrators without restoration or reconstruction." *The Sedona Conference, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production*, 19 Sedona Conf. J. 1, 138 (2018). Without more, the Court has no reason to believe plaintiff would be unable to search active data on his home computer using defendant's search terms. E-mails, for example, are generally considered to have "some semi-permanent existence" as they are "stored in files, and are recoverable as active data until deleted, either deliberately or as a consequence of automatic purging." *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 177 (S.D.N.Y. 2004).

Plaintiff also represents in the Joint Motion that he is not a computer expert who has specialized knowledge in computers. He states that he has not had any experience with searching ESI, and the software on his home computer is not regularly updated to the most recent versions. Some information on this home computer "may have been deleted in a way that makes it inaccessible without resort to expensive and uncertain forensic techniques . . . ." [Doc. No. 98, at p. 132.] Based on this information, it appears that plaintiff would not be qualified to search the available sources of ESI for relevance documents or information, so an expert would need to be retained to do so. The estimated cost of such an expert would have to be considered to determine whether the requested ESI is "reasonably accessible." Fed.R.Civ.P. 26(b)(2)(B).

In sum, the Court finds that the parties did not provide enough information for the Court to determine: (1) the relevance or importance of the ESI defendant apparently seeks in response to Document Request Nos. 51, 52, and 53; (2) the likelihood that the identified sources of ESI would contain documents or information that are relevant and

49

| | |
|---|---|
| 1 | important to resolving the matters at issue; and (3) the accessibility of plaintiff's home |
| 2 | computer, backup drive, e-mail accounts, or any other sources of ESI. In short, even if |
| 3 | defendant could establish relevance and importance, the Court would be unable to |
| 4 | determine whether the identified sources of ESI are "reasonably accessible" under |
| 5 | Federal Rule 26(b)(2)(B). Accordingly, based on the circumstances presented, |
| 6 | defendant's request for an order compelling plaintiff to search for ESI and provide a |
| 7 | further response to Document Request Nos. 51, 52, and 53 is DENIED. |
| 8 | ***Conclusion*** |
| 9 | Based on the foregoing, IT IS HEREBY ORDERED that the request of defendant |
| 10 | Donisi Jax, Inc. for an order compelling plaintiff to provide further responses to certain |
| 11 | interrogatories and document requests is GRANTED in part and DENIED as outlined |
| 12 | more fully above in Sections II through XI of this Order. |
| 13 | IT IS FURTHER ORDERED that plaintiff shall comply with Sections II through |
| 14 | XI of this Order ***no later than June 17, 2019***. |
| 15 | IT IS SO ORDERED. |
| 16 | Dated: May 28, 2019 |
| 17 | |
| 18 | Hon. Karen S. Crawford<br>United States Magistrate Judge |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

17cv1127-WQH(KSC)