**FILED**

AUG 0 7 2019

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. MOSER, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>HEALTH INSURANCE INNOVATIONS, INC., a Delaware corporation; NATIONAL CONGRESS OF EMPLOYERS, INC., a Delaware corporation; COMPANION LIFE INSURANCE COMPANY, a South Carolina corporation; DONISI JAX, INC., a Florida corporation; HELPING HAND HEALTH GROUP, INC., a Florida corporation; ANTHONY MARESCA, an individual; and MATTHEW HERMAN, an individual,<br><br>             Defendants. | Case No.: 17-cv-1127-WQH-KSC<br><br>**ORDER** |

HAYES, Judge:

    The matters before the Court are the Motion for Class Certification filed by Plaintiff (ECF No. 103); Motion to Deny Class Certification filed by Defendant Health Insurance Innovations (ECF No. 104); Motion for Summary Judgment filed by Defendant

Companion Life Insurance Company (ECF No. 111); and two Joint Motions to File Documents Under Seal (ECF Nos. 113, 115).

## I. Background

### a. Class Certification

On June 5, 2017, Plaintiff Kenneth J. Moser filed a complaint. (ECF No. 1). On June 7, 2017, Plaintiff filed the First Amended Class Action Complaint (FAC), the operative complaint in this matter. (ECF No. 3). On December 3, 2018, Plaintiff filed a Motion for Class Certification.[1] (ECF No. 103). On December 3, 2018, Defendant Health Insurance Innovations, Inc. (HII) filed a Motion to Deny Class Certification[2] (ECF No. 104), which Defendants Donisi Jax, Inc., a/k/a Nationwide Health Advisors (Donisi Jax), Defendant National Congress of Employers, Inc. (NCE) and Defendant Companion Life Insurance Company (Companion) joined. (ECF Nos. 106, 107, 108). On December 21, 2018, HII filed an Opposition to the Motion for Class Certification (ECF No. 117), which NCE, Donisi Jax and Companion joined. (ECF Nos. 122, 123, 124). On December 24, 2018, Plaintiff filed an Opposition to HII's Motion to Deny Class Certification. (ECF No. 119). On December 24, 2018, Donisi Jax filed an Opposition to the Motion for Class Certification. (ECF No. 121). On December 31, 2018, HII filed a Reply to the Motion to Deny Class Certification. (ECF No. 125). On December 31, 2018, Plaintiff filed a Reply to HII's Opposition to the Motion for Class Certification. (ECF No. 127). On December 31, 2018, Plaintiff filed a Reply to Donisi Jax's Opposition to the Motion for Class

---

[1] In connection with the Motion for Class Certification, Plaintiff requests the Court take judicial notice of a set of media articles and filings from unrelated cases involving the Defendants. None are relevant to the class certification issues before the Court. Plaintiff's request for judicial notice (ECF No. 103-6) is denied.

[2] Plaintiff filed an objection to HII's Motion to Deny Class Certification, arguing that HII's Motion to Deny Class Certification—filed eleven minutes after Plaintiff's Motion for Class Certification—is an improper attempt to multiply class certification briefing. (ECF No. 120). HII filed a Response. (ECF No. 126). Plaintiff has not demonstrated that he suffered any prejudice as a result of HII's Motion to Deny Class Certification. Plaintiff's objection is overruled. The arguments in the Motion for Class Certification and Motion to Deny Class Certification substantially overlap and the Court considers them together in Section III.

1  Certification. (ECF No. 128). On April 25, 2019, the Court heard oral argument on the
2  Motion.

3  **II.    Allegations of the First Amended Class Action Complaint**

4         The FAC alleges "HII is the principle actor in a scheme to sell . . . medical insurance
5  plans and other . . . insurance[-]related services . . . by making illegal telemarketing calls
6  prohibited by the TCPA."    (FAC, ECF No. 3 ¶¶ 20-21).   HII contracts with multiple
7  insurers "to market and administer insurance products." *Id.* ¶¶ 34, 74. HII "bundle[s]"
8  those "insurance products" and hires "boiler rooms like Helping Hand and [Donisi Jax]"
9  to "'cold call' [] unsuspecting consumer[s] using either pre-recorded messages or auto-
10 dialers in order to sell the . . . insurance products . . . HII has bundled together." *Id.* ¶¶ 22,
11 34. "HII . . . know[s] their sub-agents are making such TCPA-violative calls, and have
12 known since at least June 27, 2014." *Id.* ¶ 78. If a consumer purchases a plan during one
13 of these phone calls, the consumer "receives emails and coverage documents from HII
14 welcoming them to the insurance plan." *Id.* ¶ 29. HII "takes all payments [for plans sold
15 during these phone calls] and distributes them to their downstream boiler room agents and
16 the companies whose products make up the bundle." *Id.* ¶ 28.

17        From April 6, 2017 to May 10, 2017, Plaintiff received eighty-two calls from
18 Helping Hand and Donisi Jax "try[ing] to sell HII's bundle of insurance[-]related services"
19 in violation of the TCPA. *Id.* ¶¶ 39, 41, 44. With respect to Donisi Jax specifically:

20    [F]rom April 6, 2017 to May 10, 2017, Defendant [Donisi Jax] transmitted thirty-
21    two (32) autodialed and prerecorded calls to Mr. Moser's cellular phones (858-
      [xxx-xxxx] and 858-[xxx-xxxx]) and residential telephone line (858-[xxx-
22    xxxx]). These calls all used the exact same prerecorded message and CID 310-
23    [xxx-xxxx] to try to sell HII's bundle of insurance related services. All of these
      [Donisi Jax] calls were prerecorded and autodialed.
24
25 *Id.* ¶ 44. "During at least one of the calls from [Donisi Jax], Mr. Moser feigned interest to
   determine the true identity of the caller and relationship of the Defendants." *Id.* ¶ 45.
26
27        Helping Hand and Donisi Jax are "explicitly hired by HII . . . NCE, and Companion
28 . . . to make the illegal pre-recorded auto-dialed calls to the benefit of HII . . . NCE, and

                                            3

Companion." *Id.* ¶¶ 91, 94. "[T]he illegal calls used to sell the[] bundles [] are made by boiler rooms like Helping Hand and [Donisi Jax] with the full knowledge and assistance of HII and its major insurance partners . . . ." *Id.* ¶ 34. "HII . . . NCE, and Companion explicitly condone the actions of [Helping Hand and Donisi Jax] in making the illegal pre-recorded auto-dialed calls to the benefit of HII . . . NCE, and Companion by condoning their actions afterwards." *Id.* ¶¶ 93, 96.

## III. Motion for Class Certification

Plaintiff's Motion for Class Certification seeks to certify two subclasses that are narrower than the classes identified in the FAC. Because the subclasses in the Motion for Class Certification narrow Defendants' potential liability and do not involve new claims for relief, the Court considers the subclasses identified in Plaintiff's Motion for Class Certification. *See, e.g., Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (permitting plaintiff to propose a new class definition in a motion for class certification when the new definition was "simply a narrower version of the class definition presented in the [amended complaint]"); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12–cv–0964–GPC–DHB, 2013 WL 4774763, at *5 (S.D. Cal. Sep. 5, 2013) (allowing plaintiffs to propose a class definition narrower than the class alleged in plaintiffs' second amended complaint when the new definition "include[d] individuals that were allegedly called in violation of the same subsection of the TCPA"). The two subclasses Plaintiff seeks to certify are:

*Subclass One*:

All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a cellular or wireless tariff and who claim Donisi Jax or Helping Hand Health Group and/or their agents transmitted a call to sell short term non-ACA-compliant medical insurance plans managed by HII using an automatic telephone dialing system or prerecorded voice to said number without prior express written consent from the called party at any time from January 28, 2015 to the present, including up to and through trial; and,

*Subclass Two*:

All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a residential tariff and who claim Donisi Jax or Helping Hand Health Group and/or their agents transmitted a call to sell short term non-ACA-compliant medical insurance plans managed by HII using a prerecorded voice to said number without prior express written consent from the called party at any time from January 28, 2015 to the present, including up to and through trial;

(ECF No. 103-1 at 12–13).

### a. Rule 23 Legal Standard

Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court. Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). In this case, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of demonstrating that the Rule 23(a) and Rule 23(b) requirements have been met. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

District courts have broad discretion in deciding whether to certify a class. *Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) ("The decision to grant or deny class certification is within the trial court's discretion."); *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) ("Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified[.]"), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). In exercising this discretion, a trial court must conduct a "rigorous analysis" to ensure the Rule 23 requirements have been satisfied. *Dukes*, 564 U.S. at 351. Although this analysis should

5

not resolve the merits of plaintiff's underlying claim, the court must consider the merits if the merits overlap with the Rule 23 requirements. *Id.* Finally, a district court reviewing a motion for class certification "is required to consider the nature and range of proof necessary to establish [the] allegations" of the complaint, even if it "is bound to take the substantive allegations of the complaint as true." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)).

### b. Elements of a TCPA Claim

The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . ." § 227(b)(1)(B).

"Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. . . . Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent."); *see also Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. App'x. 598, 600 n.1 (9th Cir. 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.").

17-cv-1127-WQH-KSC

Since October 16, 2013, the FCC has "imposed further restrictions on telemarketing calls and required prior express written consent for texts and calls that 'include[ ] or introduce[ ] an advertisement" or "constitute[ ] telemarketing." *See* 47 C.F.R. § 64.1200(a)(2); *Van Patten*, 847 F.3d at 1045. For purposes of the TCPA, express written consent means:

> (8) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.
>
> (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.
>
> (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

47 C.F.R. § 64.1200(f)(8).

### c. Agency Liability

"A court may hold [a defendant] . . .vicariously liable for the TCPA violations of third party callers . . . 'where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and [the] third-party caller.'" *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019), *as amended on denial of reh'g and reh'g en banc* (May 6, 2019) (quoting *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014)). "There are several ways to establish an agency relationship, including actual authority and ratification." *Id.* at 1073; *see also Kristensen*

*v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (affirming summary
judgment in favor of defendants in TCPA class action brought under ratification theory).

### d. Discussion

#### i. Personal Jurisdiction Under *Bristol-Myers*

As a threshold matter, HII contends for the first time in its Opposition that under the
Supreme Court's June 19, 2017 opinion in *Bristol-Myers Squibb Co. v. Superior Court of
California*, 137 S. Ct. 1773, 1781 (2017), this Court cannot exercise specific jurisdiction
over a non-resident defendant with respect to non-resident class claims. (ECF No. 117 at
8).

"Lack of personal jurisdiction" is a "defense to a claim for relief" that the Federal
Rules expressly recognize. Fed. R. Civ. P. 12(b)(2). Challenges to alleged defects in a
district court's personal jurisdiction are expressly waived unless a defendant timely asserts
the defense in a motion to dismiss or in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1);
*Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) ("[Rule 12(h)(1)] provide[s] a
strict waiver rule with respect to [the lack of personal jurisdiction] defense . . . . defendants
wishing to raise [this] defense[ ] must do so in their first defensive move, be it a Rule 12
motion or a responsive pleading."); *Braver v. Northstar Alarm Servs. LLC*, 329 F.R.D. 320
(W.D. Okla. 2018). An exception to this rule exists when a defense or objection was
unavailable at the time the defendant filed its earlier motion or responsive pleading. Fed.
R. Civ. P. 12(g)(2). A defense is considered "available" unless its legal basis did not exist
at the time of the answer or earlier pre-answer motion. *Gilmore v. Palestinian Interim Self-
Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016) (A defense is "available" unless "its legal
basis did not exist at the time of the answer or pre-answer motion, or the complaint does
not contain facts sufficient to indicate that a defense was possible.").

HII filed its Motion to Dismiss the Amended Class Action Complaint on July 21,
2017. (ECF No. 21-1). The Supreme Court decided *Bristol-Myers Squibb Co.* on June 19,
2017—more than a month before HII filed its motion to dismiss. HII did not raise its
personal jurisdiction challenge in its July 21, 2017 pre-answer motion, despite the defense

1   being available at the time the Motion was filed. Accordingly, HII waived its personal
2   jurisdiction challenge.

3                              ii. **Rule 23(a)(1)—Numerosity**

4        Plaintiff contends that Donisi Jax made or caused to made "hundreds of thousands,
5   if not millions of calls" on behalf of the Defendants. (ECF No. 103-1 at 15). Plaintiff
6   submits a list of 68,000 phone numbers called by outside vendors, known as "lead
7   generators," and transferred to Donisi Jax while the individual was on the phone. (Prato
8   Decl. Ex. 14, ECF No. 103-20). Plaintiff asserts that Exhibit 14 represents only a portion
9   of the putative class members in this case since it does not include outbound calls made
10  directly by Donisi Jax or those made by Helping Hand, who has defaulted in this case.
11  (ECF No. 103-1 at 15; ECF No. 43). Plaintiff asserts that Helping Hand "likely . . . made
12  tens of thousands, if not hundreds of thousands of calls." (ECF No. 103-1 at 17). Plaintiff
13  asserts that Helping Hand's default in this case has prevented Plaintiff from obtaining call
14  logs that could substantiate Plaintiff's claim. *Id.* Defendants do not contest that Plaintiff's
15  proposed subclasses satisfy the numerosity requirement. (ECF No. 117 at 23).

16       Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is
17  impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no absolute threshold, courts
18  generally find numerosity satisfied when the class includes at least forty members. *Gomez*
19  *v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010); *Celano v. Marriott Int'l,*
20  *Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity
21  factor is satisfied if the class comprises 40 or more members and will find that it has not
22  been satisfied when the class comprises 21 or fewer.").

23       In this case, Plaintiff has submitted a call log obtained in discovery identifying
24  68,000 potential class members. *See* Prato Decl. Ex. 14, ECF No. 103-20. The Court finds
25  that Plaintiff has satisfied numerosity under Rule 23(a)(1).

26                         iii. **Rule 23(a)(2)—Commonality**

27       Plaintiff contends commonality is satisfied because "[t]he course of conduct at issue
28  here is Donisi Jax and Helping Hand making autodialed telemarketing calls to wireless

9

phones or prerecorded telemarketing calls to residential phones to sell . . . insurance bundles of their co-conspirators, HII, Companion, and NCE. The two elements of the autodialed call to cell phones cause of action are common to all Subclass One plaintiffs, i.e., 1) transmitting an autodialed call, 2) to a wireless number. The three elements of the prerecorded call to residential phones cause of action are common to all Subclass Two plaintiffs, i.e., 1) transmitting a prerecorded call, 2) for solicitation, 3) to a residential number." (ECF No. 103-1 at 19). Plaintiff further asserts that "any agency defenses will apply to all class members since it has to do with the relations of the defendants not their outward facing conduct towards class members." *Id.*

HII asserts that because HII did not make any of the calls at issue in this case itself, Plaintiff's theory of liability with respect to HII relies on a finding that HII is responsible for calls made by Donisi Jax, Helping Hand, or their alleged agents. HII contends that "[t]he issue of agency cannot be resolved on evidence applicable to the entire class because the Court will need to analyze 1) the relationship between HII and the other defendants and 2) the relations of certain defendants and their lead vendors." (ECF No. 117 at 21).

Donisi Jax contends that commonality is not met because Donisi Jax draws a distinction between "outbound" calls made directly by Donisi Jax to consumers and "live transfer leads." Live transfer leads are calls initiated by a third-party lead generator and transferred to Donisi Jax with the individual on the phone. (ECF No. 121 at 9). Donisi Jax pays the lead generator for each live transfer lead. *Id.* Donisi Jax asserts that Plaintiff was called by HIC Lead Network Inc. (HIC), a lead generator not named as a defendant in this action, and live transferred to Donisi Jax. Donisi Jax contends that because Plaintiff was called by HIC and not Donisi Jax, "Plaintiff has not demonstrated any 'course of conduct' regarding Outbound Calls that is common to anyone." (ECF No. 121 at 14). With respect to live transfer leads, Donisi Jax also contends that Plaintiff has failed to demonstrate commonality because "[l]ive [t]ransfer [l]eads are generated in different ways, which means that each consumer that was ultimately transferred to Donisi Jax had a different

experience that necessitates individual mini-trials before class membership can be determined and liability can be imposed." *Id.* at 15.

To satisfy Rule 23(a)(2), a party seeking class certification must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement will be met only if plaintiff shows that "the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (quotation marks and citation omitted). Rule 23 does not require that the claims of every member of the putative class stem from identical factual circumstances. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient [for commonality], as is a common core of salient facts coupled with disparate legal remedies within the class."). Instead, the core concern of the inquiry is that the common contention at the heart of the claims be capable of classwide resolution—"which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs.', LLC*, 707 F.3d 1036, 1041–42 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). "What matters to class certification" is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

The Court first considers the injury suffered by members of the two subclasses.[3] Because the merits of Plaintiff's claims in this case are relevant to determining what injury Plaintiff suffered, the Court considers the merits of Plaintiff's claim to the extent they overlap with class certification issues. *See Ellis*, 657 F.3d at 981 ("As we explained above, the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district

---

[3] Donisi Jax addresses this argument in the typicality section of its Opposition (ECF No. 121 at 9). However, because "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought," the Court finds the factual differences among class members more appropriately addressed under commonality. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

17-cv-1127-WQH-KSC

court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with the Rule 23(a) requirements."). Plaintiff alleges that Helping Hand and Donisi Jax were the entities who transmitted calls to Plaintiff in violation of the TCPA. (FAC, ECF No. 3 ¶¶ 39, 44). Helping Hand defaulted in this matter, and for the purposes of this motion the Court takes the allegations with respect to Helping Hand to be true. Donisi Jax asserts that Donisi Jax never transmitted a call directly to Plaintiff and there is evidence in the record to support Donisi Jax's claim that Plaintiff was a live transfer to Donisi Jax from HIC. (Jaxtheimer Decl., ECF No. 121-1 ¶ 6–14). Donisi Jax contends that Plaintiff cannot represent a class of plaintiffs that includes outbound calls made directly by Donisi Jax because he was not called directly by Donisi Jax. Plaintiff asserts that Donisi Jax is drawing a "hyper technical distinction" and argues that there is a possibility that Donisi Jax called him directly under a "spoofed" phone number. (ECF No. 128 at 3–4).

Under the TCPA, each plaintiff was injured when an autodialed or prerecorded call was sent to their wireless or residential phone. Whether the autodialed or prerecorded call came from a device located in the offices of Donisi Jax, HIC, or a non-party lead generator may ultimately affect the liability of the Defendants for the TCPA violation, but it does not affect the nature of the underlying injury suffered by each class member. *See Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient [for commonality], as is a common core of salient facts coupled with disparate legal remedies within the class.").

Next the Court turns to common questions. In this case, whether or not Donisi Jax, Helping Hand, or one of its alleged agents used an automatic telephone dialing system or prerecorded voice to transmit calls to the wireless numbers of Subclass One is a common question for Subclass One. Whether Donisi Jax, Helping Hand, or one of its alleged agents transmitted a prerecorded call to the residential phone of members of Subclass Two is a common question for Subclass Two. Answers to both questions will drive resolution of the case. *See Dukes*, 131 S. Ct. at 2551.

With respect to determinations of agency among the Defendants and the lead generators, Plaintiff asserts that this case can be resolved on a class-wide basis by "simple reference to phone bills" and "Plaintiff['s] . . . generalized evidence regarding the making and content of Defendants' telemarketing calls and the agency relationship between the Defendants." (ECF No. 103-1 at 26). Defendants contend that agency determinations among the Defendants will have to be made on a class member-by-class member basis, but Defendants have failed to explain why the fact finder cannot make a single liability determination for each Defendant after Plaintiff presents evidence of each Defendant's relationship with each other Defendant and the non-party lead generators. For example, any evidence Plaintiff presents regarding the alleged agency relationship between HII and Donisi Jax, and Donisi Jax and HIC, will presumably be applicable to all other class members who were called by HIC and live transferred to Donisi Jax for the purpose of selling a short-term non-ACA-compliant medical insurance plan managed by HII. Any findings the Court makes regarding the alleged agency relationship between HII, Donisi Jax, and HIC will further the litigation by generating answers common to members of the class. *See Dukes*, 564 U.S. at 350; *see, e.g.*, *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 61 (C.D. Cal. 2017) (finding common questions regarding defendant's authority over telemarketers alleged to have committed TCPA violations); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (finding agency determinations in TCPA class action "can be resolved on a class-wide basis"); *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 234 (C.D. Cal. 2018) (defendant's liability for the calling practices of its distributors was a common question); *Brown v. DirecTV, LLC*, 330 F.R.D. 260, 274 (C.D. Cal. 2019) (defendant's vicarious liability for TCPA violations committed by debt collectors "would be determined through analysis of [debt collectors'] contracts, which is similar evidence across each debt collector."); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 568 (W.D. Wash. 2012) ("[T]he question of whether [defendant] can be held liable for the conduct of its franchisees is a common question whose answer is 'apt to drive resolution of the case.'" (quoting *Dukes*, 131 S. Ct. at 2551)). The Court finds that Plaintiff

has established the existence of common questions sufficient to satisfy Rule 23(a)(2). *See Ellis*, 657 F.3d at 981 ("The requirements of Rule 23(a)(2) have 'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'") (quoting *Hanlon*, 150 F.3d at 1019)).

Plaintiff has satisfied commonality under Rule 23(a)(2).

### iv. Rule 23(a)(3)—Typicality

Plaintiff contends typicality is satisfied because Plaintiff and class members "each received illegal telemarketing calls from Donisi Jax and/or Helping Hand[] promoting the non-ACA-compliant insurance bundles of their co-conspirators, HII, Companion, and NCE. . . . [and] Plaintiff's claims under the TCPA arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as done to the rest of the classes." (ECF No. 103-1 at 20). Plaintiff asserts that any arguments Defendants make regarding Plaintiff's history bringing TCPA actions or accusations regarding Plaintiff's character are inapposite because they are not relevant to any defense under the TCPA. (ECF No. 127 at 5).

HII contends that Plaintiff cannot satisfy typicality because he has "substantial baggage that renders him atypical of the class he seeks to represent." (ECF No. 117 at 15). HII asserts that Plaintiff has "serious credibility issues" destined to preoccupy him as the class representative to the detriment of the absent class members. *Id.* Specifically, HII cites:

> (1) [Plaintiff's] background as a professional TCPA plaintiff; (2) feigned interest in purchasing insurance; (3) lack of credibility; (4) willingness to commit insurance fraud in providing false identifies and false information in insurance applications; (5) background and experience in TCPA litigation; (6) deletion of browser history to prevent the detection of providing consent to receive telephone calls; (7) bitterness towards the telemarketing industry based on his prior loss of business to oversees telemarketers; and (8) failure to register any of his telephones on the Do Not Call list.

*Id.* at 17.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. Thus, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* (citing *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)). "[C]lass certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.*

In this case, Plaintiff and the class members are all alleged to have suffered the same injury: their phones were called in violation of the TCPA by Donisi Jax, Helping Hand, or one of their agents for the purpose of selling HII's medical insurance plans. *See Ellis*, 657 F.3d at n.9 ("Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality."). Plaintiff asserts that he will prove the case through phone records. Defendants may offer evidence of prior express written consent as an affirmative defense.[4] *See Van Patten*, 847 F.3d at 1045; 47 C.F.R. § 64.1200(f)(8). Plaintiff has a history of litigating TCPA actions, but the Court does not find that Plaintiff's familiarity with the TCPA makes him a less credible witness. Further, unlike the reliance-

---

[4] Plaintiff contends that Defendants must provide evidence of prior express written consent pursuant to 47 C.F.R. § 64.1200(a)(2) to state an affirmative defense. Defendants do not specifically address in their class certification briefing whether § 64.1200(a)(2)'s higher "written consent" requirement for "advertisement[s]" or "telemarketing" is applicable here, or whether the lower "prior express consent" standard should apply. Because Defendants did not present any evidence of either type of consent, the Court does not further address the issue in this Order.

1  on-the-market defense available to defendants in a securities action such as *Hanon*,
2  Defendants here have failed to explain how Plaintiff's history of litigating TCPA cases is
3  material to an established TCPA defense. *See Hanon*, 976 F.2d at 509.

4  Defendants extensively discuss in their oppositions to Plaintiff's Class Certification
5  Motion, their separate Motion to Deny Class Certification, and in NCE's Counterclaim
6  (ECF No. 70) Plaintiff's character and willingness to use names that are not his own to
7  learn the identity of the parties calling him, but Defendants again fail to link these character
8  and credibility accusations to any established TCPA defense.    Moreover, even if
9  Defendants' character allegations were true, they may not amount to a serious attack on
10  Plaintiff's credibility. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d
11  721, 728 (7th Cir. 2011) ("For an assault on the class representative's credibility to succeed,
12  the party mounting the assault must demonstrate that there exists admissible evidence so
13  severely undermining plaintiff's credibility that a fact finder might reasonably focus on
14  plaintiff's credibility, to the detriment of the absent class members' claims."). The Court
15  does not find that Plaintiff is likely to be preoccupied with defenses unique to him. *See*
16  *Hanon*, 976 F.2d at 508.

17  Plaintiff has satisfied typicality under Rule 23(a)(3).

18  ### v. Rule 23(a)(4)—Adequacy of Representation

19  Plaintiff contends adequacy is satisfied because Plaintiff "is a zealous advocate for
20  the class," he "does not have any interests that are antagonistic to the interests of the
21  proposed class," and is "a longtime TCPA advocate who has argued many TCPA cases in
22  small claims and knows this area of law well." (ECF No. 103-1 at 21–22). Plaintiff asserts
23  that Mr. Moser's history of settling TCPA claims "actually gives the class and the Court
24  greater assurance that he will obtain the most favorable settlement possible for the class."
25  *Id.*  Proposed class counsel Prato & Reichman, APC, asserts that they "have filed more
26  TCPA cases in federal and state courts in California than any other known law firm."
27  (Christopher Reichman Decl., ECF No. 103-3 ¶ 6).  Proposed class co-counsel Jeffrey B.

28

16

Cereghino has previously been appointed class counsel in multiple other consumer class actions, including under the TCPA. (Jeffrey B. Cereghino Decl., ECF No. 103-4 ¶ 10).

HII contends that Plaintiff is an inadequate class representative for substantially the same reasons HII cited in its opposition to typicality. Specifically, HII contends:

> Moser cannot be considered typical of the class and cannot adequately represent the class because a typical class member would not (1) lie on an insurance application by providing multiple fake names, (2) lie on an insurance applications after acknowledging that providing false information in an insurance application may constitute a felony, (3) purchase insurance for the sole purpose of finding out the name of the insurance agency who sold the insurance, (4) purchase insurance for the sole purpose of filing a TCPA complaint, (5) be a professional TCPA plaintiff, and (6) fail to file tax returns.

(ECF No. 117 at 19).

Rule 23(a)(4)'s adequacy requirement is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining this standard, the court asks: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

As described above, the core of Plaintiff's case will be proven or disproven with documents—not Plaintiff's testimony. Phone records will show whether Plaintiff was called by Helping Hand, Donisi Jax, or HIC. Evidence in Defendants' possession will show whether an automatic telephone dialing system or prerecorded voice was used. Defendants have the burden of establishing any prior consent defense. In the context of this TCPA case, the Court does not find that Plaintiff's willingness to use a name that was not his own to learn the identity of who was calling him amounts to a serious enough mark against his credibility to disqualify him as class representative. With respect to Plaintiff's failure to file tax returns, Plaintiff asserts that it stems from an incident when Plaintiff was the victim of identity theft. (ECF No. 127 at 7). Plaintiff's interest in this litigation is the

1 | same as each other class members' interest: to recover the maximum statutory penalty for
2 | each violative call. Plaintiff has vigorously prosecuted this action, as evidenced by the
3 | extensive discovery and class certification briefing in this case. Plaintiff has engaged
4 | counsel with experience in bringing both TCPA claims and class actions, and at least one
5 | previous TCPA class action. (Cereghino Decl., ECF No. 103-4 ¶ 10; Reichman Decl., ECF
6 | No. 103-3 ¶ 6).

Plaintiff has satisfied adequacy under Rule 23(a)(4).

### vi. Rule 23(b)(3)—Predominance

Plaintiff contends that predominance is satisfied because the case can be proven with common evidence. Plaintiff asserts that "[c]ommon evidence can be used to determine that the calls were transmitted for either sub-class because the Defendants and their agents have records showing the calls were made and transferred back to Defendants." (ECF No. 103-1 at 24). Class members can prove that their phones were residential or wireless with their phone bills, and "[c]ommon evidence can be used to determine that the calls were solicitations since the sole admitted purpose for all the calling is to sell HII's non-compliant insurance bundles." *Id.*

HII contends that Plaintiff fails to satisfy predominance because the question of consent "cannot be resolved on a class wide basis in one stroke . . . [because] facts and circumstances surrounding the phone calls and how the class members provided consent . . . are not common to the class." (ECF No. 117 at 23–24). HII asserts that there are multiple ways a class member could have provided consent to receiving one of Defendants' calls, such as "complet[ing] an insurance application online . . . agree[ing] to receive marketing, promotional or sales calls on the phone . . . complet[ing] an insurance application in person at an insurance agency . . . [or] provid[ing] his or her phone number through a website landing page . . . ." (ECF No. 117 at 24).

The putative subclasses include calls made by HIC that were transferred to Donisi Jax as live transfer leads, calls made by other lead generators and transferred to Donisi Jax as live transfer leads, outbound calls made directly by Donisi Jax, and any calls made

directly by Helping Hand or live transferred to Helping Hand.[5] Donisi Jax contends that individual issues predominate because mini-trials must be held to determine if each class member was called for the purpose of selling "short term non-ACA-Compliant medical insurance plans managed by HII." (ECF No. 121 at 23). Specifically, Donisi Jax asserts:

Donisi Jax sells a multitude of insurance products that are managed by several different entities—not just short term non-ACA-Compliant medical insurance plans managed by HII. . . . A simple list of Donisi Jax's inbound Live Transfer Leads will not provide this information. Instead, a mini-trial will need to be held to determine which consumers that were transferred to Donisi Jax via a Live Transfer Lead for the purposes of selling "short term non-ACA-Compliant medical insurance plans managed by HII," or some other kind of insurance product, or not managed by HII. It is utterly impossible to determine which consumer was contacted for which product.

*Id.* Plaintiff asserts that this issue can be resolved by cross-referencing outbound and live-transfer phone logs with data Donisi Jax's employees have entered into HII's online interface. (ECF No. 128 at 6). Plaintiff cites deposition testimony from a Donisi Jax employee who stated that Donisi Jax employees would enter the information of the person they were on the phone with into HII's online "quoting tool" in order to generate a price quote for the individual on the phone. (Cugini Dep., ECF No. 128-2 at 2–3). In the alternative, Plaintiff proposes determining class membership "by reference to the number of HII's policies sold as a percentage and applying that to calls." (ECF No. 128 at 6).

Under Rule 23(b)(3), Plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013). There is substantial overlap between the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests, but "the [Rule] 23(b)(3) test is 'far more

---

[5] Because Helping Hand has defaulted in this case, Plaintiff states that he does not have call information for Helping Hand. (Prato Decl., ECF No. 103-2 ¶ 42).

1   demanding.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.
2   2010) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).
3   Common questions must "present a significant aspect of the case" such that "there is clear
4   justification"—in terms of efficiency and judicial economy—for resolving those questions
5   in a single adjudication. *Hanlon*, 150 F.3d at 1022 (citation omitted); *see also Vinole v.*
6   *Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) ("[A] central concern
7   of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help
8   achieve judicial economy."); *Zinser v. Accufix Research Institute*, 253 F.3d 1180, 1189
9   (9th Cir. 2001) ("Implicit in the satisfaction of the predominance test is the notion that the
10  adjudication of common issues will help achieve judicial economy.")

11          "The Rule 23(b)(3) predominance inquiry asks the court to make a global
12  determination of whether common questions prevail over individualized ones.    For
13  purposes of this analysis, '[a]n individual question is one 'where members of a proposed
14  class will need to present evidence that varies from member to member,' while a common
15  question is one where 'the same evidence will suffice for each member to make a prima
16  facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Torres v.*
17  *Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods v.*
18  *Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class
19  Actions § 4:50, 196–97 (5th ed. 2012))). "Common questions do not predominate if the
20  resolution of an overarching common issue breaks down into an unmanageable variety of
21  individual legal and factual issues leading to an inordinate number of evidentiary hearings."
22  *Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014).

23          Assuming Plaintiff can establish an agency relationship between Donisi Jax or
24  Helping Hand and HII, HII contends that the Court will be forced to conduct mini-trials to
25  determine whether each class member gave prior consent to receive Defendants' phone
26  calls.   Courts in this Circuit have previously declined to certify TCPA classes after
27  defendants provided evidence that the court would be required to make individualized
28  consent determinations. *See, e.g.*, *True Health Chiropractic, Inc. v. McKesson Corp.*, 896

20

F.3d 923, 932 (9th Cir. 2018) (affirming denial of class certification for subclass because it would require individualized consent determinations); *Gannon v. Network Tel. Servs., Inc.*, 628 F. App'x 551, 552 (9th Cir. 2016) (same); *Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) (same); *Connelly v. Hilton Grand Vacations Co.*, LLC, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (same).

In this case, however, Defendants have provided no evidence that Plaintiff or members of the putative class provided consent to receive calls from the Defendants. Without evidence of consent, the Court cannot deny class certification because of the prospect of individualized consent determinations. *See McKesson Corp.*, 896 F.3d at 931–32 ("[W]e assess predominance by analyzing the consent defenses [defendant] has actually advanced and for which it has presented evidence. . . . But we do not consider the consent defenses that [defendant] might advance or for which it has presented no evidence."); *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 80 (2017) ("We are unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling[.]'" (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000))); *see, e.g.*, *Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.").

With respect to determining class membership, unlike cases in this Circuit that denied class certification because of the inevitability of individualized consent determinations, Donisi Jax argues that it is "utterly impossible" to make a threshold determination of class membership based on phone records. (ECF No. 121 at 23). The Ninth Circuit has previously rejected this type of ascertainability argument as a stand-alone rationale for denying class certification. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) ("In summary, the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite

21

1  to class certification, and the policy concerns that have motivated the Third Circuit to adopt
2  a separately articulated requirement are already addressed by the Rule.").

3        To the extent Donisi Jax's argument is geared toward the manageability prong of
4  Rule 23(b)(3)(D), Plaintiff asserts that class membership can be determined by cross-
5  referencing the outbound and live-transfer phone logs of Donisi Jax and Helping Hand with
6  data that Helping Hand and Donisi Jax employees have entered into HII's online interface
7  to generate insurance quotes. (ECF No. 128 at 6; Cugini Dep., ECF No. 128-2 at 2–3). If
8  the individual was both called by Donisi Jax, Helping Hand or a lead generator and their
9  information was entered into HII's website by a Donisi Jax or a Helping Hand employee,
10  it is likely to identify individuals to whom Defendants' "transmitted a call to sell short term
11  non-ACA-compliant medical insurance plans managed by HII." In the alternative, Plaintiff
12  proposes identifying class members statistically "by reference to the number of HII's
13  policies sold as a percentage and applying that to calls." (ECF No. 128 at 6). The Court
14  finds that Plaintiff has presented a reasonably manageable mechanism for identifying class
15  members.[6]

16        In sum, each class member suffered a similar injury when they were called by the
17  Defendants or one of the Defendants' alleged agents in violation of the TCPA. Plaintiff
18  proposes a reasonable mechanism to identify class members with reference to call logs and
19  information inputted into HII's website. Plaintiff will attempt to prove liability for each
20  Defendant by presenting evidence of agency for each Defendant, and the fact finder will
21  make individual agency determinations for each Defendant. Individual issues do not

---

25  [6] Moreover, were the Court to deny class certification on the grounds that identifying class members would
26  be too difficult because Donisi Jax and Helping Hand do not maintain sufficiently detailed call records, it
    would create an incentive for future telemarketers to avoid keeping records. *See, e.g.*, *Glob. Exch.*
27  *Vacation Club*, 320 F.R.D. at 61 ("Class certification cannot be defeated by Defendants' poor record-
    keeping or failure to establish performance data reporting mechanisms with their third-party vendors. This
28  would incentivize companies to not keep records, or not require that their vendors keep records, in an
    attempt to circumvent TCPA liability.").

22

1  predominate, and the interests of efficiency and judicial economy favor resolution as a class
2  action in this matter.

3      The Court finds that common issues predominate.

4          **vii.  Rule 23(b)(3)—Superiority**

5      Plaintiff contends that "[g]iven the large number of class members, the small dollar
6  value of their individual claims, and the multitude of common issues present, use of the
7  class action device is the most efficient and fair means of adjudicating the claims that arise
8  out of Defendants' unlawful telemarketing calls. . . . Additionally, it is likely that most
9  class members lack the resources necessary to seek individual legal redress for Defendants'
10 misconduct and, without class treatment, would have no effective remedy for their
11 injuries." (ECF No. 103-1 at 25).

12     HII contends that a class action is not superior to other available methods of
13 adjudicating Plaintiff's claims because Plaintiff's personal claims are significantly larger
14 than those of other class members. (ECF No. 117 at 25). Plaintiff seeks $500 in statutory
15 damages for each of the dozens of alleged calls to Plaintiff, with the potential for that
16 number to triple if the calls are found to have been willful and knowing. HII asserts that
17 "[w]hen damages sought by an individual plaintiff in a class action are large, like Moser's
18 claim in this case, there are other realistic avenues of redress and the superiority required
19 under of Rule 23(b)(3) is not present." *Id.* at 26.

20     Rule 23(b)(3) also requires plaintiffs to demonstrate "that a class action is superior
21 to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.
22 Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs
23 and promote greater efficiency, a class action may be superior to other methods of
24 litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter–*
25 *Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). "This determination necessarily
26 involves a comparative evaluation of alternative mechanisms of dispute resolution."
27 *Hanlon*, 150 F.3d at 1023. Considerations relevant to this inquiry include "the class
28 members' interest in individually controlling the prosecution or defense of separate

1   actions" and "the likely difficulties in managing a class action." Fed. R. Civ. P.
2   23(b)(3)(A)–(D).

3       In a TCPA action like this case, most class members will have relatively small
4   claims. While Plaintiff's potential recovery here may be large enough to make his claims
5   financially viable as a stand-alone suit, for most class members it is not. For class members
6   who were only called a single time, the costs of litigating a TCPA action likely outweigh
7   the potential benefits. That is especially true in this case, where Defendants allegedly used
8   multiple agents to make calls on their behalf. *See, e.g.*, *Bee, Denning, Inc. v. Capital All.*
9   *Grp.*, 310 F.R.D. 614, 629–30 (S.D. Cal. 2015) (finding superiority in TCPA class action
10  where "[d]efendants have allegedly concealed their role in the prohibited conduct through
11  use of nearly a dozen aliases and difficult to trace toll-free numbers" because "[u]nder these
12  circumstances, $500 (or even $1,500) for each violation is unlikely to incentivize the
13  average claimant to incur the opportunity costs of time, effort, and attention to pursue her
14  claim on an individual basis"). Under the facts of this case, a class action is superior to
15  other methods of adjudicating the alleged claims.

16      The Court finds that superiority is satisfied.

17      **e. Conclusion**

18      Plaintiff has met the requirements of Rule 23(a) and Rule 23(b)(3). Plaintiff's
19  Motion for Class Certification (ECF No. 103) is GRANTED and Defendants' Motion to
20  Deny Class Certification (ECF No. 104) is DENIED. IT IS FURTHER ORDERED that:

21      1. The following Rule 23(b)(3) classes are CERTIFIED:[7]

22  Subclass One:

23  All persons and entities located within the United States of America who claim
24  to be able to provide a phone bill or statement showing they had had a phone
    number subscribed to a cellular or wireless tariff and who claim Donisi Jax or
25

26

27  [7] Plaintiff has not specifically identified lead generators beyond HIC. Should further subclassing prove
28  advantageous for manageability or other reasons, this Order may be amended to modify the certified
    classes. *See* Fed. R. Civ. P. 23(c)(1)(C).

24

Helping Hand Health Group and/or their agents transmitted a call to sell short term non-ACA-compliant medical insurance plans managed by HII using an automatic telephone dialing system or prerecorded voice to said number without prior express written consent from the called party at any time from January 28, 2015 to the present, including up to and through trial; and,

Subclass Two:

All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a residential tariff and who claim Donisi Jax or Helping Hand Health Group and/or their agents transmitted a call to sell short term non-ACA-compliant medical insurance plans managed by HII using a prerecorded voice to said number without prior express written consent from the called party at any time from January 28, 2015 to the present, including up to and through trial;

2. Plaintiff Kenneth J. Moser is appointed class representative for both subclasses.

3. Pursuant to Federal Rule of Civil Procedure 23(g), the firms Prato & Reichman, APC and Rock Law LLP are appointed class counsel.

4. Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the parties shall meet and confer, and submit to the Court an agreed-upon form of class notice that will advise individual members of, among other things, the nature of the action, the relief sought, the right of class members to intervene or opt out, and the binding effect of a class judgment on members under Rule 23(c)(3). The parties shall also jointly submit a plan for dissemination of the proposed notice. The proposed notice and plan of dissemination shall be filed with the Court within sixty days from the entry of this Order.

## IV. Motion for Summary Judgment

### a. Background

On December 10, 2018, Companion filed a Motion for Summary Judgment. (ECF No. 111, 112). On December 31, 2018, Plaintiff filed an Opposition. (ECF No. 129). On January 7, 2019, Companion filed a Reply. (ECF No. 132).

### b. Contentions

Companion contends that Companion did not call Plaintiff directly and has not presented any evidence that Companion is vicariously liable for the calls allegedly made to Plaintiff by other parties. (ECF No. 111-1 at 4). Companion asserts that its contract with HII establishes that HII was an independent contractor and thus no agency relationship existed. (ECF No. 132 at 7). Companion contends that "there is no genuine issue of material fact that an agency relation did not exist between HII and Companion or that Companion did not ratify HII's conduct, [and] Companion is entitled to summary judgment as a matter of law with regard to Plaintiff's claim that Companion vicariously violated the TCPA." *Id.* Plaintiff issued fourteen requests for document production and four requests for interrogatories to Companion but never deposed a Companion corporate representative. *Id.*

Plaintiff contends that Companion's Motion for Summary Judgment is premature because "the case has not even entered the merits discovery phase, and as such, Plaintiff . . . has not had the opportunity to conduct any detailed discovery into the agency relationship between Companion and its sales agents." (ECF No. 129 at 2). Plaintiff requests that the Court deny or defer ruling on Companion's Summary Judgment Motion pursuant to Rule 56(d) until Plaintiff has an opportunity to conduct further discovery with regard to Companion. *Id.* Plaintiff provides the affidavit of Justin Prato, which states that in fact discovery he intends to depose J. Philip Gradham of Companion regarding Companion's relationship with HII. (Prato Aff., ECF No. 129-1 ¶¶ 3–4). Plaintiff also states that he intends to seek any formal and informal complaints or other documents which were provided to Companion from either consumers or government agencies for TCPA violations. *Id.* ¶ 6.

### c. Legal Standard

Federal Rule of Civil Procedure 56(d) states: "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to

1  obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

2  order." Fed. R. Civ. P. 56(d). If summary judgment is filed "before a party has had any

3  realistic opportunity to pursue discovery relating to its theory of the case, district courts

4  should grant any Rule 56[(d)] motion fairly freely." *Burlington N. Santa Fe R.R. Co. v.*

5  *Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

6  A district court should defer ruling on a motion for summary judgment when the

7  party opposing summary judgment "makes (a) a timely application which (b) specifically

8  identifies (c) relevant information, (d) where there is some basis for believing that the

9  information actually exists." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d

10  1472, 1475 (9th Cir. 1986). However, a Rule 56(d) motion may be denied when the party

11  seeking deferral has not diligently sought discovery or additional discovery would be futile

12  or irrelevant to the dispute. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir.

13  2002); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1436 (9th Cir. 1995).

14  **d. Discussion**

15  Plaintiff has provided the affidavit of Justin Prato, which describes Plaintiff's

16  intention to depose J. Philip Gradham of Companion regarding Companion's relationship

17  with HII and Plaintiff's plans to request any formal or informal complaints of TCPA

18  violations which were provided to Companion. (Prato Aff., ECF No. 129-1 ¶¶ 3–6). The

19  Court finds that these materials may contain information relevant to Plaintiff's allegation

20  that Companion is liable under a common law agency theory for any TCPA violations

21  committed by the other Defendants in this case. Accordingly, these materials are relevant

22  to Plaintiff's opposition to Companion's Motion for Summary Judgment and it does not

23  appear that further discovery would be futile. *See Nordstrom, Inc.*, 54 F.3d at 1436.

24  The scheduling order in this case stated that "[f]act and class discovery are not

25  bifurcated" and set a three-month cutoff for class discovery. (ECF No. 66). Plaintiff could

26  have been more diligent in obtaining the necessary discovery from Companion during the

27  initial three months of the discovery period, but the Court does not find that Plaintiff acted

28  in a dilatory manner given the number of defendants in this case, duration of the earlier

discovery period, scope of the issues, and focus on Donisi Jax, Helping Hand, HII, and the lead generators at the class certification stage. Plaintiff has been granted class certification in this Order and will have an opportunity to obtain further material from Companion in the fact discovery period.[8]

### e. Conclusion

Pursuant to Federal Rule of Civil Procedure 56(d)(1), Companion's Motion for Summary Judgment (ECF No. 111) is DENIED without prejudice.

## V.    Motions to Seal

On December 18, 2018 the Parties filed two joint motions to file documents under seal. (ECF Nos. 113, 115).

In connection with the Motion for Class Certification, the parties request to file three exhibits under seal. The first Motion seeks to file Exhibit 13 under seal, which the parties state is a contract between NCE and another party "relat[ing] to the contracting parties' business relationships, specifics of products and services to be offered, the service areas covered by the products, marketing information, and financial information." (ECF No. 113 at 3). The parties did not provide the Court with an unredacted copy of Exhibit 13.

The second Motion requests to file Exhibits 14 and 18 under seal. Exhibits 14 and 18 contain Donisi Jax's internal "do-not-call list" and a list of its live transfers from lead generators. (ECF No. 115). The parties contend that the list contains confidential commercial information, since it would reveal information about Donisi Jax's relationship with various lead generators, as well as identifying information for thousands of private individuals. *Id.* at 5.

---

[8] Additionally, after the Parties submitted their briefing and before the Court heard oral argument on the Motion, the Ninth Circuit Court of Appeals issued its decision in *Henderson v. United Student Aid Funds, Inc.*, which concerned a defendant's liability under a ratification theory for TCPA violations committed by debt collectors it did not have a contractual relationship with. 918 F.3d 1068 (9th Cir. 2019). The *Henderson* opinion is only the second appellate decision in this circuit concerning ratification in the TCPA context (the other being *Kristensen*, 879 F.3d at 1010). Consideration of Companion's liability after fact discovery allows the parties the added benefit of briefing the issue with *Henderson*.

28

1    A party must show "'good cause'" when a party seeks to file documents under seal
2   in connection with a nondispositive motion. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665,
3   678 (9th Cir. 2010). Unlike dispositive motions, nondispositive motions "are often
4   'unrelated, or only tangentially related, to the underlying cause of action,'" and, as a result,
5   the public's interest in accessing dispositive materials does "not apply with equal force" to
6   non-dispositive materials. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179
7   (9th Cir. 2006).

8    In this case, the exhibits at issue were attached to a motion for class certification,
9   which is non-dispositive in this matter. *See, e.g.*, *In re First American Home Buyers*
10  *Protection Corp.*, No. 13-cv-01585-BAS(JLB), 2015 WL 13688556, at *2 (S.D. Cal. May
11  26, 2015) ("Unless the denial of a motion for class certification would constitute the death
12  knell of a case, the vast majority of [ ]courts within this circuit treat motions for class
13  certification as non-dispositive motions to which the good cause sealing standard applies."
14  (internal quotations omitted) (citing *Dugan v. Lloyds TSB Bank, PLC*, No. 12-cv-02549-
15  WHA(NJV), 2013 WL 1435223, at *1 (N.D. Cal. Apr. 9, 2013)). With respect to Exhibit
16  13, the parties did not lodge an unredacted copy of Exhibit 13. The Court cannot assess its
17  contents. The first Joint Motion to File Documents Under Seal (ECF No. 113) is denied.
18  Exhibits 14 and 18 contain thousands of telephone numbers of private individuals who may
19  not be parties to this action. Good cause exists in this instance to protect the privacy of the
20  individuals whose phone numbers appear in Exhibits 14 and 18. The second Motion to
21  File Documents Under Seal (ECF No. 115) is granted.

22  //
23  //
24  //
25  //
26  //
27  //
28  //

17-cv-1127-WQH-KSC

**VI.    Conclusion**

IT IS HEREBY ORDERED that Plaintiff's Motion for Class Certification (ECF No. 103) is GRANTED and Defendants' Motion to Deny Class Certification (ECF No. 104) is DENIED. Two subclasses are certified, as described in Section III.e. Companion's Motion for Summary Judgment (ECF No. 111) is DENIED without prejudice. The first Motion to File Documents Under Seal (ECF No. 113) is DENIED.  The second Motion to File Documents Under Seal (ECF No. 115) is GRANTED.

Date: _____8/2/19_____

**William Q. Hayes**
United States District Judge